## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GARDEN RIDGE CORPORATION, *et al.*, | ) | Case No. 04-10324 (KJC) |
| | ) | |
| Debtors. | ) | |
| | ) | (Jointly Administered) |
| _____ | ) | |
| | ) | |
| GARDEN RIDGE, L.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06-516 (GMS) |
| | ) | |
| DANIEL FERGUSON, | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT'S ANSWERING BRIEF IN OPPOSITION TO
### PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

WILLIAM D. SULLIVAN, LLC
William D. Sullivan (Del. Bar No. 2820)
Elihu E. Allinson, III (Del. Bar No. 3476)
4 East 8th Street, Suite 400
Wilmington, DE 19801
Tel: (302) 428-8191
Fax: (302) 428-8195

*Attorneys for Daniel Ferguson*

Dated: December 7, 2006

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

NATURE AND STAGE OF PROCEEDINGS ............................................................... 1

SUMMARY OF ARGUMENT ......................................................................................... 2

STATEMENT OF FACTS ............................................................................................... 3

     I.  Background of the Notes. ......................................................................................... 3

     II. Background of Bankruptcy Pleadings ............................................................... 6

ARGUMENT ...................................................................................................................... 7

     I.  Standard of Review. ................................................................................................. 7

     II. Application of the Standard of Review ............................................................. 8

          A.  The Applicability of Mr. Ferguson's Affirmative Defenses, Including
          the Defense of Setoff Currently Under Appeal, Raises Genuine Issues of
          Material Fact that Preclude Disposition of Counts III and IV of the
          Complaint by Way of Partial Summary Judgment. .................................................. 9

          B.  Attorneys' Fees Incurred by the Plaintiff and Its Affiliates in Their
          Bankruptcy Cases with Respect to the Setoff Motion are Not Recoverable
          Pursuant to the Notes. ............................................................................................. 10

          C.  Plaintiff's Request for Attorneys' Fees is Premature ...................................... 16

          D.  Attorneys' Fees Limited Under the Notes ....................................................... 16

CONCLUSION .................................................................................................................. 17

# TABLE OF AUTHORITIES

**Cases**

Agassi v. Planet Hollywood International
269 B.R. 543 (D. Del. 2001).........................................................................................11

Coffman v. Federal Laboratories
171 F.2d 94 (3d Cir. 1948)...........................................................................................8

Collingwood Grain, Inc. v. Coast Trading Co. (In re Coast Trading Co.)
744 F.2d 686 (9th Cir. 1984) ..................................................................................12, 14

In re Garden Ridge Corporation
338 B.R. 627 (Bankr. D. Del. 2006) ...........................................................................7

Lee v. Schweiker
739 F.2d 870 (3d Cir. 1984).......................................................................................13

Minority Police Officers Assn. of South Bend v. City of South Bend
721 F2d 197 (7th Cir. 1983) .......................................................................................7

Patrick Schaumburg Automobiles, Inc. v. Hanover Insurance Company
452 F.Supp.2d 857 (N.D. Ill. 2006) ......................................................................7, 8, 9

In re Protarga, Inc.
329 B.R. 451 (Bankr. D. Del. 2005) ..........................................................................11

In re Sokolowski
205 F.3d 532 (2d Cir. 2000)...............................................................................11, 12, 14

Sussex Drug Products v. Kanasco, Ltd.
920 F.2d 1150 (3d Cir. 1990)....................................................................................8, 9

United States Internal Revenue Service v. Norton
717 F.2d 767 (3d Cir. 1983).......................................................................................12

**Statutes**

11 U.S.C. § 365................................................................................................................14

11 U.S.C. § 506................................................................................................12, 13, 14, 15

11 U.S.C. § 521................................................................................................................14

11 U.S.C. § 546................................................................................................................14

11 U.S.C. § 553................................................................................................6, 10, 13, 15

**Rules**

Federal Rule of Civil Procedure 56(b)..............................................................................8

Federal Rule of Civil Procedure 56(d).........................................................................7, 9

**Secondary Authorities**

10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2737 at 322 (3d ed. 1998) ..........................................................................8

4 *Collier on Bankruptcy* ¶ 553.02 at 553-11 (5th ed. 1983) ........................................12

## NATURE AND STAGE OF PROCEEDINGS

Plaintiff's Complaint in this matter was filed on March 7, 2006. The Complaint seeks recovery on a series of promissory notes issued by Defendant Daniel Ferguson ("Defendant" or "Mr. Ferguson") to the Plaintiff in connection with a loan issued to him by the Plaintiff in the amount of $250,000.00. The original note ("First Note") was subsequently replaced by two different replacement notes ("Second Note" and "Third Note"), each issued on essentially the same terms as the original. The Second and Third Notes served as an extension of the term of the loan evidenced by the First Note. The loan became due when Mr. Ferguson was terminated by the Plaintiff on September 12, 2003.

The four counts of the Complaint seek recovery of principal, interest, and attorneys' fees alleged to arise under the original and replacement notes, each of which relates to one and the same loan of $250,000.00 from the Plaintiff to Defendant. Specifically, Count I and Count II of the Complaint seek the recovery of $11,735.24 and $6,875.00 allegedly owed under the First and Second Notes after they were replaced by the Second and Third Notes, respectively. [Complaint, ¶¶ 16 and 20, Pl. Ex. C]. Defendant disputes that any amounts remain unpaid under the First and Second Notes, as the obligations under each were eliminated when the obligations under the subsequent notes were created. As to these counts, Defendant has raised, *inter alia,* the defense of accord and satisfaction. [See Answer, Third Affirmative Defense, Pl. Ex. D].

Count III of the Complaint seeks recovery under the Third Note in the principal amount of $250,000.00, plus interest at 2.75% per annum from January 1, 2003. To this

claim, Defendant has raised, *inter alia*, the defense of setoff. [Answer, First Affirmative Defense, Pl. Ex. D]. Count IV seeks attorneys' fees and costs in the collection of the note, for which Defendant has denied liability. [Answer, ¶40; Pl. Ex. D].

Plaintiff's Motion for Partial Summary Judgment and Opening Brief were filed on November 17, 2006. The Motion for Partial Summary Judgment seeks summary judgment on Counts III and IV of the Complaint. This is Defendant's Answering Brief in Opposition to Plaintiff's Motion for Summary Judgment.

As noted in Plaintiff's Opening Brief, Mr. Ferguson's right to set off his liability to the Plaintiff with the Debtors' liability to him on his severance claim was litigated in the Bankruptcy Court and is currently on appeal. The asserted setoff right on appeal (the "Setoff Right") is relevant to Count's III and IV of the Complaint, as it serves as an affirmative defense to those claims.

## SUMMARY OF ARGUMENT

1.      Plaintiff is not entitled to summary judgment on a portion of its claim for recovery pursuant to the promissory notes as set forth in the four counts of the Complaint. Rather, to the extent there may be undisputed factual issues as to a specific portion of Plaintiff's claim, Plaintiff may be entitled to entry of an order narrowing the issues for trial.

2.      Plaintiff is not entitled to recover its attorneys' fees incurred in litigating Mr. Ferguson's right of setoff under the Bankruptcy Code in the jointly administered bankruptcy cases of Plaintiff and its affiliates. Litigation regarding the Setoff Right is a bankruptcy issue triggered by the filing of the Plaintiff's Plan of Reorganization and the treatment the Plan would afford to Mr. Ferguson's claim for severance benefits. It does

2

not involve collection of any of the notes.

**STATEMENT OF FACTS**

**I.  Background of the Notes.**

Defendant Dan Ferguson was hired on or about January 26, 2001 to become the Senior Vice-President – Supply Chain for the Garden Ridge Entities[1] (hereinafter "Garden Ridge").  [See Employment Agreement, Def. Ex. 1].  As a result of his hiring by Garden Ridge, Mr. Ferguson was required to relocate to Houston, Texas.  To facilitate his relocation, Garden Ridge LP provided him with a loan in the amount of $250,000.00 so that he could immediately purchase a home in the Houston area.  [See Loan Agreement, Def. Ex. 2].  As set forth in the terms of the notes, the notes were repayable under several conditions, including the sale of his prior residence.  [See First Note, Pl. Ex. G ("the principal of this note and all accrued and unpaid interest on the principal of this note shall be due and payable on the earlier of (i) thirty (30) days after the closing of the sale of all or any portion of Maker's interest in the real property or improvements thereon located at 3510 Vineyard Hill Drive in Rochester Michigan")].

The First Note expired on December 31, 2001.  As Mr. Ferguson had not sold his Michigan residence as of that date, the parties entered into the Second Note, which was intended to replace the First Note and which included the same terms and conditions, except that the interest rate was lowered from 5.75% to 2.75%.  [See Second Note, Pl. Ex. H].  The Second Note became due on December 31, 2002.  Id.  Again, because Mr.

---

[1] The Garden Ridge Entities are:  Garden Ridge Corporation, Garden Ridge Investments, Inc., Garden Ridge Management, Inc., Garden Ridge Finance Corporation, Garden Ridge, L.P., and Garden Holdings, Inc.  Each filed a petition in bankruptcy on or about February 2 through February 4, 2004.  Their respective bankruptcy estates were jointly administered, and pursuant to the confirmation order entered on April 28, 2005, their bankruptcy estates were substantively consolidated.

3

Ferguson's prior residence in Michigan remained unsold as of December 31, 2002, the parties renewed the $250,000.00 loan to Mr. Ferguson with the Third Note, which replaced the Second Note upon its expiration. [Third Note, Pl. Ex. I]. The terms and conditions of the Third Note mirrored those of the Second Note.

Mr. Ferguson's employment with the Garden Ridge Entities terminated on September 12, 2003. As of his termination date, his prior residence in Michigan remained unsold. Nevertheless, the Third Note became due by virtue of subsection (ii) of the "due and payable" provision of the Third Note, which states that principal and unpaid interest are due on the Note on, "… (ii) the date of the termination of Maker's employment with Payee or any of Payee's affiliates for any reason or no reason, regardless of whether such termination occurs by action of Maker or Payee." [Pl. Ex. I]. No demand for collection of the amounts due under the Third Note was made to Mr. Ferguson until the filing of the instant Complaint on March 7, 2006.

Mr. Ferguson's Loan Agreement with Garden Ridge included a bonus provision by which he was reimbursed for interest he paid under the notes. The bonus provision states:

> The Company hereby agrees, as additional consideration for your employment by the Company, that immediately upon payment in full of the principal of and all accrued and unpaid interest on the Note to the holder of the Note, the Company shall pay to you, in addition to any other compensation paid or paybable to you in respect of your employment by the Company, a bonus equal to the Bonus Amount (as hereinafter defined).

> As used in this letter, the term "Bonus Amount" means an amount equal to the aggregate of the interest on the principal of the Note paid by you, divided by 0.6.

[Loan Agreement, Def. Ex. 2].

4

Mr. Ferguson received the prescribed bonus amount as part of his annual compensation in 2001, when the First Note was paid off and replaced by the Second Note. He received a similar bonus amount in 2002 when the Second Note was repaid and replaced by the Third Note. Contrary to the assertion in the Plaintiff's Opening Brief, Mr. Ferguson has not breached his obligations under the First and Second Notes [Op. Br., p. 3]; those obligations each were satisfied at the time the replacement notes were issued. Mr. Ferguson's termination triggered payment obligations pursuant to the Third Note alone.

Following his termination, Mr. Ferguson filed suit against Garden Ridge LP and Garden Ridge Management in Harris County, Texas (the "Texas Action"), to recover the severance benefit owed to him under his Employment Agreement with the Garden Ridge Entities. That agreement provides simply, "if released without cause, you will receive one year of base salary." [Employment Agreement, Def. Ex. 1]. Mr. Ferguson's base salary was $250,000.00. Id. The Texas Action was stayed by the filing of the bankruptcy cases of the Garden Ridge Entities.

Mr. Ferguson filed a claim for $310,000 in the bankruptcy cases of the Garden Ridge Entities, which consisted of his claim for $250,000 in severance benefits and his claim for $60,000.00 in unreimbursed relocation expenses. [Proof of Claim, Pl. Ex. J; a copy of First Amended Petition in Texas Action is Exhibit B to the Proof of Claim]. The Proof of Claim contains the following acknowledgement: "These claims are also subject to a setoff of $250,000.00 owed to Garden Ridge pursuant to a promissory note dated January 1, 2003." [Pl. Ex. J].

## II. Background of the Bankruptcy Pleadings.

On April 13, 2005, Mr. Ferguson filed his *Motion for Relief from Stay to the Extent Necessary to Set Off Mutual Debts* (the "Setoff Motion"). It was originally set for a hearing on April 28, 2005.[2]   [Pl. Ex. A]. The filing of the Setoff Motion was necessitated by a provision in the Debtor's First Amended Plan of Reorganization which proposed to eliminate setoff rights. The Plan's "Injunction" provision provides, in part:

> Except as otherwise expressly provided in the Plan, the Confirmation Order, or a separate order of the Court, all entities who have held, hold, or may hold Claims against the Debtors that arose before or were held as of the Effective Date, are permanently enjoined, on and after the Effective Date, from....(d) asserting any right of *setoff*, or subrogation of any kind against any obligation due from the Debtors or the Reorganized Debtors or against the property or interests in property of the Debtors on account of any such Claim.

[Plan, at Section VIII. E. (emphasis supplied)]. Given this provision in the Plan, the filing of the Setoff Motion acted to prevent Mr. Ferguson from losing his setoff rights by virtue of the entry of the confirmation order.

For convenience, the parties agreed to adjourn the Setoff Motion until after the confirmation hearing. Debtors filed their Objection, and Mr. Ferguson filed his Reply. The Debtors' Objection contended that in order for Mr. Ferguson to preserve his setoff rights under Section 553 of the Bankruptcy Code, he needed to prove that there was, *inter alia*, a mutuality of obligation between the two debts sought to be set off. Debtors contended that no mutuality existed in Mr. Ferguson's case because the loan to Mr. Ferguson was made by Garden Ridge Management while the notes were owed to Garden Ridge LP. [See Debtors' Objection, pp. 7-10, Def. Ex. 4]. A number of bankruptcy

---

[2] April 28, 2005 was the day the Debtor's First Amended Plan of Reorganization was confirmed.

cases were cited in support of Debtors' argument that, based on the facts as presented by

the Debtors, setoff was impermissible.

A hearing was eventually held on the Setoff Motion on November 16, 2005, and

following the submission of additional briefs, a decision was entered by the Bankruptcy

Court on February 10, 2006. In re Garden Ridge Corporation, 338 B.R. 627 (Bankr. D.

Del. 2006). This decision is currently on appeal.

## ARGUMENT

### I. Standard of Review.

Plaintiff's Motion for Partial Summary Judgment is governed by Rule 56(d) of the

Federal Rules of Civil Procedure. Rule 56(d) provides, in part:

> If on motion under this rule judgment is not rendered upon the
> whole case or for all the relief asked and a trial is necessary, the court at
> the hearing of the motion, by examining the pleadings and the evidence
> before it and by interrogating counsel, shall if practicable ascertain what
> material facts exist without substantial controversy and what material facts
> are actually and in good faith controverted. It shall thereupon make an
> order specifying the facts that appear without substantial controversy,
> including the extent to which the amount of damages or other relief is not
> in controversy, and directing such further proceedings in the action as are
> just.

The effect of a motion for partial summary judgment is to narrow the issues for trial. See

Patrick Schaumburg Automobiles, Inc. v. Hanover Insurance Company, 452 F.Supp.2d

857 (N.D. Ill. 2006) ("[F]ederal practice does not provide for "partial" summary

judgment. Although courts occasionally refer to "partial summary judgment," the use of

this term is discouraged because of its potential to cause confusion," citing Minority

Police Officers Assn. of South Bend v. City of South Bend, 721 F.2d 197, 200 (7th Cir.

1983) (stating that "[t]he word 'judgment' in the term partial summary judgment is a

misnomer"); 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal*

7

*Practice and Procedure* § 2737 at 322 (3d ed. 1998)).  Short of granting summary

judgment, a court may enter an order under Fed.R.Civ.P. 56(d) narrowing the triable

issues.  <u>Schaumburg</u>, *supra,* at 167.

A complaint asserting only one legal right, even if seeking multiple remedies for

the alleged violation of that right, states a single claim for relief.  <u>Sussex Drug Products</u>

<u>v. Kanasco, Ltd.</u>, 920 F.2d 1150, 1154 (3d Cir. 1990).  The partial adjudication of a

single claim does not provide the basis for a final judgment under Rule 54(b).  <u>Id.</u>, at

1154; see also <u>Coffman v. Federal Laboratories</u>, 171 F.2d 94 (3d Cir. 1948) ("It is clear,

however, that there must be differing occurrences or transactions which form the bases of

separate units of judicial action before such judgment can be entered under [Rule

54(b)].").

## II.  Application of the Standard of Review.

The Complaint contends that due to the application of the proceeds of the

replacement notes (the Second Note and the Third Note), principal is still owing on the

First Note in the amount of $11,735.24 [Complaint, ¶16; Pl. Ex. C] and principal remains

owing on the Second Note in the amount of $6,875.00 [Complaint, ¶20; Pl. Ex. C].  Mr.

Ferguson disputes that these amounts are owed.[3]  [Answer, ¶¶30-35; Pl. Ex. D].

Plaintiff's Motion for Partial Summary Judgment does not seek judgment on the

amounts claimed owing under the First and Second Notes (Counts I and II of the

Complaint).  However, given that all of the counts for relief set forth in Plaintiff's

Complaint stem from the collection of amounts allegedly due under the original and

replacement notes issued in connection with a single loan of $250,000.00 by the Debtors

---

[3] This paragraph does not attempt to set forth all of the disputes between the parties.

to Mr. Ferguson, "partial" summary judgment is not available to the Plaintiff. Sussex

Drug Products, *supra*, at 1154. Summary judgment may not be based on partial

adjudication of a claim. Id. Rather, an order narrowing the issues for trial may be

entered by the Court pursuant to Rule 56(d). Schaumburg, *supra*.

> **A.     The Applicability of Mr. Ferguson's Affirmative Defenses,
> Including the Defense of Setoff Currently Under Appeal,
> Raises Genuine Issues of Material Fact that Preclude
> Disposition of Counts III and IV of the Complaint by Way of
> Partial Summary Judgment.**

Mr. Ferguson does not dispute the validity of the Third Note. He concedes that it

is payable to Garden Ridge LP in the amount of $250,000.00, plus interest at the rate of

2.75% per annum from January 1, 2003. This Court need not hold further proceedings

with respect to the Third Note itself, the rate of interest due on it, or the date from which

interest must be calculated. In this regard, Mr. Ferguson would not oppose the Court's

issuance of an appropriate order pursuant to Fed.R.Civ.P. 56(d) narrowing the issues for

trial.

Mr. Ferguson does dispute, however, the Debtors' ability to *collect* on the Third

Note in light of the affirmative defenses raised in his Answer to the Complaint. As a

practical matter, this issue will not be resolved until the appeals process has run its course

with regard to Mr. Ferguson's Setoff Motion. Mr. Ferguson submits that this reason

alone establishes a sufficient basis for the Court to deny Plaintiff's Motion. Judicial

economy would not be served if this Court were to grant the Plaintiff's Motion, only to

later overturn the Bankruptcy Court's decision in connection with the Setoff Motion.[4]

---

[4] Mr. Ferguson has also asserted additional affirmative defenses to Counts III and IV of
the Complaint, including estoppel and unclean hands, which may present genuine issues
of material fact. [See Answer, Pl. Ex. D].

9

Additionally, Mr. Ferguson disputes Plaintiff's threshold contention that it is entitled to an award of fees incurred in responding to Defendant's Setoff Motion, currently on appeal, as any such fees were not incurred in connection with a challenge to the Third Note's validity or an effort to collect on it. Rather they were incurred in connection with resolution of the pure bankruptcy issue of whether the Court would recognize Mr. Ferguson's setoff right under Section 553 of the Bankruptcy Code. [Op. Br., p.10]. These fees were incurred in Plaintiff's pending bankruptcy cases with respect to issues raised by Debtors' Plan of Reorganization, prior to the instant effort to collect on the notes, and are not the subject of attorneys' fee collection rights under the Third Note.

**B.     Attorneys' Fees Incurred by the Plaintiff and Its Affiliates in Their Bankruptcy Cases with Respect to the Setoff Motion Are Not Recoverable Pursuant to the Notes.**

Plaintiff is not entitled to recover attorneys' fees incurred in the Debtors' main bankruptcy case in connection with the Setoff Motion because such fees were not incurred in the collection or defense of any of the notes.

The scope of the attorneys' fee rights under the note is twofold. Fees are payable: "(1) to collect, enforce or defend this note ... in any lawsuit ... reorganization, bankruptcy, or other proceeding; and (2) if Maker sues any holder in connection with this note ... and does not prevail." [See Notes, Pl. Ex. G, H, and I]. Neither provision is applicable to the fees incurred by the Debtors with respect to issues arising in their bankruptcy cases.

First, Mr. Ferguson's Setoff Motion was not a suit challenging the *bona fides* of any of the notes; rather, it was necessitated by the Injunction provision of the Plaintiff's Plan of Reorganization. Mr. Ferguson was required to file his motion in order to preserve

10

his Setoff Right, or such right would have been eliminated.  In re Protarga, Inc., 329 B.R. 451, 475 (Bankr. D. Del. 2005) (creditor must assert right of setoff prior to plan confirmation or right is extinguished).  As framed by the Debtors' Objection, the central issue joined in the Setoff Motion was not related to any of the notes themselves, but whether the obligation owed by Mr. Ferguson under the notes and the severance pay obligation owed to him were obligations that belonged to different Garden Ridge Entities and -- in the wake of the substantive consolidation of the Debtors under the Plan -- whether those entities remained distinct for purposes of defeating a right of setoff.  [See Debtors' Objection, pp. 7-10; Def. Ex. 4].[5]

Even under the case law cited by the Plaintiff, these bankruptcy-related fees are not recoverable.  The Agassi case cited by Plaintiff holds that a plaintiff's fees incurred in litigating "bankruptcy issues" are not recoverable.  Agassi v. Planet Hollywood International, 269 B.R. 543 (D. Del. 2001).  The fees related to the Setoff Motion are plainly fees incurred with respect to a bankruptcy issue.

The general standard set out in Agassi and its progeny is that attorney's fees are not independently recoverable under the Bankruptcy Code, but they may be recovered in bankruptcy proceedings under state law if the parties' contractual arrangement calls for the recovery of attorneys' fees.  Agassi, supra, at 552, citing In re Sokolowski, 205 F.3d 532, 535 (2d Cir. 2000).  The case law draws a distinction between the enforcement of contractual rights in a bankruptcy case and the applicability of bankruptcy laws to

---

[5] Mr. Ferguson asserted in briefing before the Bankruptcy Court on the Setoff Motion that he was employed by all of the Garden Ridge Entities, not just Garden Ridge Management, and that the requisite mutuality existed.  Among other evidence submitted, the Loan Agreement entered by Garden Ridge LP states that, "you are currently serving as an employee of the Company" and defines the Company as Garden Ridge LP, not Garden Ridge Management.  [See Def. Ex. 2].  This issue remains on appeal.

11

particular contracts. The applicability of bankruptcy laws to particular contracts is not a question of the enforceability of a contract but rather involves a unique, separate area of federal law. Sokolowski, *supra*, at 535, citing Collingwood Grain, Inc. v. Coast Trading Co. (In re Coast Trading Co.), 744 F.2d 686, 693 (9th Cir. 1984). Absent bad faith or harassment, attorneys' fees are not available for the litigation of federal bankruptcy issues under a contract which provides for attorneys' fees for enforcement of the contract. Coast Trading, *supra*.

Plaintiff contends that since setoff is available under Texas law the issues raised in the Setoff Motion are not "bankruptcy issues" as were the issues in the Agassi case. [Op. Br., pp. 11-12]. But the issue raised by the Setoff Motion is the pure bankruptcy issue of whether Mr. Ferguson's severance claim would be afforded secured status, by virtue of his asserted Setoff Rights, or whether his severance claim would remain unsecured. No such issue could ever arise under a state law setoff claim.

Setoff as asserted by a creditor in a bankruptcy case is governed by Section 553 of the Bankruptcy Code. While Section 553 acts to preserve rights of setoff which exist under non-bankruptcy law, it is the province of the bankruptcy court to determine the scope of its application. See United States Internal Revenue Service v. Norton, 717 F.2d 767 (3d Cir. 1983) ("Its application, when properly invoked before a court, rests in the discretion of that court, which exercises such discretion under the general principles of equality," citing 4 *Collier on Bankruptcy* ¶ 553.02 at 553-11 (5th ed. 1983)).

Moreover, the applicability of state law setoff rights in a bankruptcy proceeding is a bankruptcy issue because section 553 elevates a claim from general unsecured status to secured status. The Third Circuit states:

12

> In bankruptcy, however, setoff and recoupment play a role very different
> from their original role as rules of pleading. Setoff, in effect, elevates an
> unsecured claim to secured status, to the extent that the debtor has a
> mutual, pre-petition claim against a creditor. See 11 U.S.C. § 506(a).
> Setoff is limited, however, by the provisions of 11 U.S.C. § 553.

Lee v. Schweiker, 739 F.2d 870, 875 (3d Cir. 1984). Section 506(a)(1) of the

Bankruptcy Code provides as follows:

> An allowed claim of a creditor secured by a lien on property in which the
> estate has an interest, or that is subject to setoff under section 553 of this
> title, is a secured claim to the extent of the value of such creditor's interest
> in the estate's interest in such property ....

11 U.S.C. § 506.

Plaintiff's contention that the assertion of setoff is a state law action is also

without merit because Mr. Ferguson had no need for the remedy of setoff except and until

the Garden Ridge Entities bankruptcy filings. Pre-bankruptcy, Mr. Ferguson filed a

wrongful termination lawsuit in Texas to recover the $250,000 in severance pay he was

owed under his employment agreement with the Debtors. No action was pending against

him in Texas with respect to any of the notes. [Indeed, no such action was filed until the

Complaint in this matter was filed in March, 2006].

Had the Plaintiff and the other Garden Ridge Entities not filed for bankruptcy,

Mr. Ferguson would have had viable defendants to collect from if he prevailed in his

lawsuit in Texas. When those defendants filed bankruptcy, however, Mr. Ferguson was

precluded from collecting against them except through the Debtor's Plan of

Reorganization. Given the unsecured status of Mr. Ferguson's severance claim, the

Debtors were no longer obligated to pay Mr. Ferguson's claim in full. In fact, under the

Disclosure Statement, the Debtors estimated the recovery to unsecured creditors such as

Mr. Ferguson at "8.5% to 9.6%." [Disclosure Statement, p. 8; Def. Ex. 3]. Yet nothing

impaired the Debtors from attempting to collect on the notes in full, other than if Mr.

Ferguson exercised his right of setoff.

Thus, Mr. Ferguson's Setoff Motion was not an exercise of state law rights, but a

valid and proper effort to establish his severance claim as a secured claim to the extent of

the amounts he owed the Debtors, pursuant to Section 506(a)(1) of the Bankruptcy Code.

The Setoff Motion was a means of preventing an inequity arising as a result of the

Debtors' bankruptcy in that Mr. Ferguson could have ended up owing 100% on his

obligation to the Debtors but receiving less than 10% on the Debtors' obligation to him in

the identical amount.  The determination of whether a claimant meets the elements of

setoff to establish his claim as a secured claim, as opposed to a general unsecured claim,

is plainly a bankruptcy issue.

Courts reviewing attorneys' fee claims in a similar context have reached the same

result.  In Agassi, litigation pertaining to the debtors' effort to assume personal service

contracts under Section 365 of the Bankruptcy Code was held to be a bankruptcy issue,

and the attorneys' fee provisions under those contracts held inapplicable.  Likewise, in

Coast Trading, supra, litigation over whether the seller of grain was entitled to exercise

reclamation rights, a common law right preserved by Section 546 of the Bankruptcy

Code, did not involve the enforcement of the contracts at issue, and no attorneys' fees

were awarded.  Finally, in Sokolowski, supra, attorneys' fees were not awarded in a

dispute over whether Section 521(2) of the Bankruptcy Code permitted a debtor to retain

loan-secured property if she remained current on the payments, despite her filing

bankruptcy.  These cases amply demonstrate that attorneys' fees are not allowable,

despite a provision in a contract awarding them, for litigation of bankruptcy issues

14

relating to these contracts. Plaintiff's Opening Brief cites no cases where fees were permitted in similar circumstances.

To get around this problem, Plaintiff attempts to misconstrue the plain language of the notes by arguing that the defense of the Setoff Motion was a defense of the notes.[6] But Mr. Ferguson has never sued on or contested any of the notes.[7] This is made amply clear in the Plaintiff's Opening Brief, which refers to Mr. Ferguson's deposition testimony and court pleadings acknowledging that he owes the debt. [Op. Br., pp. 7-8]. Thus, it is simply inaccurate for the Plaintiff to contend that in contesting the Setoff Motion it is defending the notes.

Debtors' Objection to the Setoff Motion confirms that the issues raised in the Setoff Motion are bankruptcy issues. [Debtors' Objection, Def. Ex. 4]. No reference is made to Texas law; all of the cases cited are bankruptcy cases. [See Debtors' Objection, pp. 7-10; Def. Ex. 4,]. As previously noted, this is because setoff in the state law arena does not address the bankruptcy issue of whether the non-debtor party's ultimate recovery will be as a secured creditor by operation of Sections 553 and 506(a)(1) of the Bankruptcy Code.

---

[6] Plaintiff also attempts to argue that to not permit the recovery of its bankruptcy-related fees would render portions of the notes meaningless. Such is not the case. Where the notes provide for attorneys' fees in the collection or defense of the notes in a bankruptcy, the notes are referring to a bankruptcy of Mr. Ferguson, as the maker of the notes, not the Debtors filing of their own bankruptcy. The Debtors' *own* bankruptcy can not create a right to attorneys' fees from Mr. Ferguson where they would not otherwise arise. The bankruptcy had no effect on the Debtors' ability to recover under the notes.

[7] It should also be noted that all of the attorneys' fees incurred in connection with the Setoff Motion (except those on the Appeal), were incurred before the Plaintiff commenced this action to recover on the notes.

### C.    Plaintiff's Request for Attorneys' Fees is Premature.

Even if the litigation surrounding the Setoff Motion was deemed to be in defense of the notes within the scope of the attorneys' fee provision cited by Plaintiff, which it was not, any award of attorneys' fees before the appeal is resolved would be premature. The attorneys' fee provision is applicable, "if Maker sues any holder in connection with this note or any such papers and does not prevail …." [Pl. Ex. G, H, and I]. To the extent that the Setoff Motion constitutes a suit on the notes (which Mr. Ferguson disputes), then any attorneys' fee award is dependent on the resolution of the appeal. If the Bankruptcy Court's decision is reversed on appeal, Mr. Ferguson will have "prevailed" in his alleged litigation on the notes, and no attorneys' fees will be recoverable.

### D.    Attorneys' Fees Limited Under the Notes.

Notwithstanding the foregoing, any recovery of attorneys' fees under the notes is subject to the stipulated cap on fees set forth in the notes. The notes provide:

> An amount equal to ten percent (10%) of the unpaid principal and accrued interest owing on this note when and if this note is placed in the hands of an attorney for collection after default is stipulated to be reasonable attorneys' fees unless a holder or any maker of this note timely pleads otherwise to a court of competent jurisdiction.

The ten percent cap limits fees recoverable in connection with the note to $25,000.00.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, Defendant Daniel Ferguson

respectfully requests that Plaintiff's Motion for Partial Summary Judgment be denied,

and that this Honorable Court grant him such other and further relief as is just and proper.


Dated:   December 7, 2006          WILLIAM D. SULLIVAN, LLC
         Wilmington, Delaware

                                    William D. Sullivan (Del. Bar No. 2820)
                                    Elihu E. Allinson, III (Del. Bar No. 3476)
                                    4 East 8th Street, Suite 400
                                    Wilmington, DE 19801
                                    Tel: (302) 428-8191
                                    Fax: (302) 428-8195

                                    *Attorneys for Daniel Ferguson*

17

**<u>Appendix of Exhibits to Defendant's Answering Brief</u>**

1. Employment Agreement, dated January 26, 2001

2. Loan Agreement, dated February 28, 2001

3. First Amended and Corrected Disclosure Statement for Debtors' First Amended Plan of Reorganization, filed March 29, 2005

4. Reorganized Debtors' Objection to Motion of Daniel Ferguson for Relief from the Automatic Stay Under § 362(d)(1) of the Bankruptcy Code to the Extent Necessary to Set Off Mutual Debts, filed June 10, 2005

# Exhibit 1

# Garden Ridge®
## THE HOME DECOR & CRAFT MARKETPLACE

January 26, 2001

Dear Dan,

It is with great pleasure that I extend to you our offer to join Garden Ridge's Executive Committee as **Senior Vice President – Supply Chain**. You will report directly to Richard Nawrot, EVP – Information Technology & Logistics. We have a tremendous personal and financial opportunity for you here at Garden Ridge and feel that you will make an excellent addition to our management team.

The details of your offer include:

**SALARY**
- Your initial **base salary will be $240,000 per year**, payable bi-weekly. Your first consideration for salary review will take place in March 2002.

**Bonus**
- You will be eligible for our FY 2002 (2/1/01 – 1/31/02) bonus plan.
- You will be eligible to earn a **bonus target of 50% on your base salary** based on the total company meeting its financial plans. If we exceed plan, the **bonus is uncapped** and you could make up to 100% of your base salary. Bonus payments normally occur in April of each year.

**Stock Options**
- Upon hire, we will recommend that the Stock Option Committee of the Board of Directors grant you a **stock option of 25,000 shares** of Garden Ridge Stock. One-third of these shares vest after one year of employment and the remaining two-thirds vest evenly on the second and third anniversary of your initial grant, with ten years being the life of the plan. The stock option strike price will be set no later than our June Board Meeting. However, your vesting will commence on the first of the month following your date of hire.
- Since we are private, our stock will be valued annually. The valuation will approximate the public price of the stock as if it were on the open market.
- Three unique features of our stock plan that differentiate us are:
  1. Stock can be sold at any time. **No blackout periods.**
  2. Employee sales of stock are offered to other plan participants first. That is, **you can buy more stock than granted** if others sell their shares. The company will buy back shares not acquired by employees not to exceed 3% annually.
  3. If we **meet our financial plans** the options have an **acceleration of vesting** change. The options vest 6 months earlier for meeting plan. If we meet plan 2 years in a row, all options are vested in 2 years versus the 3 years as granted.

GR376

# Exhibit 2

**GARDEN RIDGE, L.P.**
**19411 Atrium Place, Suite 170**
**Houston, Texas  77084**

Mr. Dan Ferguson
Garden Ridge, L.P.
19411 Atrium Place, Suite 170
Houston, Texas  77084

Re:   Note of Dan Ferguson payable to Garden Ridge, L.P. in the original principal
amount of $250,000.00, dated as of March 8, 2001 (the "Note")

Dear Dan:

Contemporaneously with the execution of this letter, you are executing the Note, and
Garden Ridge, L.P. (the "Company") is making the loan to you evidenced by the Note.  You
currently are serving as an employee of the Company.

The Company hereby agrees, as additional consideration for your employment by the
Company, that immediately upon payment in full of the principal of and all accrued and unpaid
interest on the Note to the holder of the Note, the Company shall pay to you, in addition to any
other compensation paid or payable to you in respect of your employment by the Company, a
bonus equal to the Bonus Amount (as hereinafter defined).

As used in this letter, the term "Bonus Amount" means an amount equal to the aggregate
of the interest on the principal of the Note paid by you, divided by 0.6.  For example, if the
interest on the principal of the Note paid by you to the Company is $6,000.00, the Company will
pay to you a bonus equal to $10,000.00 (i.e., $6,000.00 divided by 0.6).  The payment of the
Bonus Amount will be in accordance with the Company's normal payroll procedures and will be
subject to all applicable federal, state and other withholding requirements.

If you are willing to agree to and accept the terms of this letter, please so indicate by
signing this letter below.

Sincerely,

GARDEN RIDGE, L.P.

By:   Garden Management, Inc.,
General Partner

By: _____
Name: _____
Title: _____

HOUSTON 001000/00000 477473v2

GR472

ACCEPTED AND AGREED TO THIS

28th DAY OF Feb , ~~1999:~~ 2001

DAN FERGUSON

**GR473**

# Exhibit 3

ORIGINAL

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 Cases |
| | ) | |
| GARDEN RIDGE CORPORATION, | ) | Case No. 04-10324 (DDS) |
| GARDEN RIDGE INVESTMENTS, INC., | ) | Case No. 04-10325 (DDS) |
| GARDEN RIDGE MANAGEMENT, INC., | ) | Case No. 04-10323 (DDS) |
| GARDEN RIDGE FINANCE | ) | |
| CORPORATION, | ) | Case No. 04-10326 (DDS) |
| GARDEN RIDGE, L.P., and | ) | Case No. 04-10327 (DDS) |
| GARDEN HOLDINGS, INC., | ) | Case No. 04-10365 (DDS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

**FIRST AMENDED AND CORRECTED DISCLOSURE STATEMENT FOR
DEBTORS' FIRST AMENDED JOINT PLAN OF REORGANIZATION
(CORRECTED) UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Alan W. Kornberg
Curtis J. Weidler
Justin G. Brass
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

-and-

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Pauline K. Morgan
Joseph M. Barry
Sean T. Greecher
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19899-0391
(302) 571-6600

Counsel to the Debtors and Debtors in Possession

Dated: Wilmington, Delaware
March 29, 2005

TABLE OF CONTENTS

                                                                                    Page

I. INTRODUCTION ............................................................................................ 2
    A.    Holders of Claims Entitled to Vote ....................................................4
    B.    Voting Procedures ...............................................................................5
    C.    Confirmation Hearing ..........................................................................6

II. OVERVIEW OF THE PLAN ........................................................................... 6

III. OVERVIEW OF CHAPTER 11 ....................................................................10

IV. COMPANY BACKGROUND .........................................................................11
    A.    General Background ..........................................................................11
    B.    The Debtors .......................................................................................11
    C.    Garden Holdings' Shareholders ........................................................11
    D.    Debtors' Prepetition Capital Structure ..............................................12

V. EVENTS LEADING TO COMMENCEMENT OF THE CHAPTER 11 CASES ......12

VI. STEPS TAKEN TO STRENGTHEN THE DEBTORS'
FINANCIAL PERFORMANCE AND OPERATIONS .............................................13
    A.    New Management ..............................................................................13
    B.    Focus on Core Markets .....................................................................14

VII. THE CHAPTER 11 CASE ...........................................................................14
    A.    Significant "First Day" Motions .........................................................14
    B.    DIP Credit Facility and Exit Facility ..................................................15
    C.    The Official Committee of Unsecured Creditors ................................16
    D.    Other Professionals Retained by Debtors .........................................16
    E.    Store Closings ...................................................................................16
    F.    Last Date to File Proofs of Claim ......................................................17
    G.    Assumption/Rejection of Leases and Executory Contracts ...............17
    H.    Solicitation of Equity Investors .........................................................17
    I.    Disclosure Statement/Plan Confirmation Hearings ..........................18

VIII. ...............................................................................................................18
    A.    Management ......................................................................................18
    B.    Management Incentive Plan ..............................................................18
    C.    Board of Directors .............................................................................19

IX. SUMMARY OF THE PLAN ..........................................................................19
    A.    Introduction .......................................................................................19
    B.    Classification and Treatment of Administrative Claims, Claims and Equity
Interests Under the Plan .............................................................................19
        1.    Unclassified — Administrative Claims ...................................21

| | | | |
|---|---|---|---|
| | 2. | Unclassified — Fee Claims | 22 |
| | 3. | Unclassified — Priority Tax Claims | 23 |
| | 4. | Unclassified — DIP Financing Claims | 23 |
| | 5 | Class 1 — Other Priority Claims | 23 |
| | 6. | Class 2 — Other Secured Claims | 24 |
| | 7. | Class 3 — Convenience Claims | 24 |
| | 8. | Class 4 — Allied Claims | 25 |
| | 9. | Class 5 — General Unsecured Claims | 25 |
| | 10. | Class 6 — Reclamation Claims | 26 |
| | 11 | Class 7 — Garden Holdings Claims | 27 |
| | 12. | Class 8 — GR Corporation Equity Interests | 27 |
| | 13. | Class 9 — GR Investments Equity Interests | 27 |
| | 14. | Class 10 — GR Management Equity Interests | 27 |
| | 15 | Class 11 — GR Finance Equity Interests | 28 |
| | 16. | Class 12 — GR L P. Equity Interests | 28 |
| | 17 | Class 13 — Garden Holdings Equity Interests | 28 |
| C. | | Provisions Regarding Corporate Governance of the Reorganized Garden Ridge Corporation, Inc | 28 |
| | 1. | Amendments to Certificates of Incorporation | 28 |
| | 2. | Securities to be Issued Pursuant to the Plan | 29 |
| D. | | Substantive Consolidation | 29 |
| E. | | Provisions Regarding Means of Implementation, Voting, Distributions and Treatment of Disputed, Contingent and Unliquidated Claims | 31 |
| | 1. | Equity Investment by Three Cities | 31 |
| | 2. | Exit Financing and Satisfaction of DIP Claims | 31 |
| | 3. | Voting of Claims | 32 |
| | 4. | Distributions | 32 |
| | 5. | Reserves for Certain Disputed and Unliquidated Claims | 34 |
| | 6. | Allocation of Consideration | 36 |
| | 7. | Cancellation and Surrender of Existing Securities and Agreements | 36 |
| F. | | Disputed and Unliquidated Personal Injury Tort and Wrongful Death Claims | 36 |
| G. | | Estimation | 37 |
| H. | | Nonconsensual Confirmation | 38 |
| I. | | Effect of Confirmation of the Plan | 38 |
| | 1. | Continued Corporate Existence | 38 |
| | 2. | Dissolution of Creditors Committee; Post-Effective Date Committee | 38 |
| | 3. | Vesting of Property | 40 |
| | 4. | Discharge of the Debtors | 40 |
| | 5 | Injunction | 40 |
| | 6. | Preservation of Causes of Action | 41 |
| | 7. | Votes Solicited in Good Faith | 41 |
| | 8. | Administrative Claims Incurred as of the Effective Date | 41 |
| | 9 | Releases by the Debtors | 42 |

ii

|  | 10. | Releases by non-Debtors | 42 |
|  | 11 | Exculpation and Injunction in Respect of Released Parties | 43 |
|  | 12. | Term of Bankruptcy Injunction or Stays | 44 |
|  | 13 | Preservation of Insurance | 44 |
|  | 14. | Officers' and Directors' Indemnification Rights and Insurance | 44 |
| J. |  | Retention of Jurisdiction | 44 |
| K. |  | Miscellaneous Provisions | 44 |
|  | 1. | Payment of Statutory Fees | 44 |
|  | 2. | Modification of the Plan | 45 |
|  | 3. | Governing Law | 45 |
|  | 4. | Filing or Execution of Additional Documents | 45 |
|  | 5. | Withholding and Reporting Requirements | 45 |
|  | 6. | Exemption From Transfer Taxes | 46 |
|  | 7. | Section 1145 Exemption | 46 |
|  | 8. | Waiver of Federal Rule of Civil Procedure 62(a) | 46 |
|  | 9. | Exhibits/Schedules | 46 |
|  | 10 | Plan Supplement | 46 |
|  | 11. | Conflict | 47 |
|  | 12. | Setoff by the United States | 47 |
| L. |  | Executory Contracts and Unexpired Leases | 47 |
|  | 1. | Assumption and Rejection of Executory Contracts and Unexpired Leases | 47 |
|  | 2. | Cure | 47 |
|  | 3. | Rejection Damage Claims | 48 |
| M. |  | Benefit Plans | 48 |
| N. |  | Effectiveness of the Plan | 48 |
|  | 1. | Conditions Precedent to Effectiveness | 48 |
|  | 2. | Waiver of Conditions | 50 |
|  | 3. | Effect of Failure of Conditions | 50 |
|  | 4 | Vacatur of Confirmation Order | 51 |
| O |  | Revocation, Withdrawal, or Non-Consummation | 51 |
|  | 1. | Right to Revoke or Withdraw | 51 |
|  | 2. | Effect of Withdrawal, Revocation, or Non-Consummation | 51 |

| X. PROJECTIONS AND VALUATION |  | | 52 |
| A. | Projections | | 52 |
| B. | Valuation of Preferred Shares Issued to General Unsecured Claims | | 53 |

| XI. CERTAIN RISK FACTORS TO BE CONSIDERED |  | | 55 |
| A. | Projected Financial Information | | 56 |
| B. | Ability to Refinance Certain Indebtedness and Restrictions Imposed by Indebtedness | | 56 |
| C. | Competitive Conditions | | 56 |
| D. | Certain Bankruptcy Law Considerations | | 57 |
|  | 1. | Risk of Non-Confirmation of the Plan | 57 |
|  | 2. | Risk of Non-Occurrence of the Effective Date | 57 |

iii

XII  CONFIRMATION PROCEDURE ....................................................... 57
    A.    Solicitation of Votes ............................................................... 57
    B.    The Confirmation Hearing ..................................................... 58
    C.    Confirmation ........................................................................ 59
        1.    Acceptance ............................................................... 59
        2.    Unfair Discrimination and Fair and Equitable Tests .... 59
        3.    Feasibility ................................................................. 60
        4.    Best Interests Test ...................................................... 61

XIII. ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE
PLAN ................................................................................................. 62
    A.    Liquidation Under Chapter 7 ................................................. 63
    B.    Alternative Plan of Reorganization ........................................ 63

XIV. CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ......... 63
    A.    Consequences to Creditors ..................................................... 64
        1.    Tax Securities ............................................................ 64
        2.    Claims and Consideration Constituting Tax Securities ... 65
        3.    Claims Not Constituting Tax Securities ...................... 65
    B.    Additional Tax Considerations for All Claim Holders ............. 66
        1.    Distributions in Discharge of Accrued Interest ........... 66
        3.    Subsequent Sale of New Allied Notes and Preferred Shares .... 66
        4.    Market Discount ........................................................ 67
        5.    Withholding .............................................................. 67
    C.    Consequences to the Debtors-- Cancellation of Debt ............... 67
    D.    Section 382 ........................................................................... 68

XV. CONCLUSION ................................................................................. 72
    A.    Accounts Receivable ............................................................. xvi
    B.    Inventory .............................................................................. xvi
    C.    Property Plant and Equipment ("PP&E") ................................ xvi
    D.    Chapter 7 Trustee Fees .......................................................... xvi
    E.    Professional Services ............................................................. xvi
    F.    Wind-Down Costs ................................................................. xvi
    G.    General Unsecured Claims ..................................................... xvii

ALL CREDITORS ARE ADVISED AND ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT, INCLUDING THE FOLLOWING SUMMARY, ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN, EXHIBITS ANNEXED TO THE PLAN, THIS DISCLOSURE STATEMENT AND ALL EXHIBITS TO THIS DISCLOSURE STATEMENT. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF UNLESS OTHERWISE SPECIFIED, AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER SUCH DATE. **ALL CREDITORS SHOULD READ CAREFULLY THE "RISK FACTORS" SECTION HEREOF BEFORE VOTING FOR OR AGAINST THE PLAN. <u>SEE</u> SECTION X OF THIS DISCLOSURE STATEMENT, "CERTAIN RISK FACTORS TO BE CONSIDERED."**

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND RULE 3016 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE LAW. THIS DISCLOSURE STATEMENT HAS BEEN NEITHER APPROVED NOR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION (THE "<u>SEC</u>") NOR HAS THE SEC PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN. PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING, OR TRANSFERRING DEBT OF THE DEBTORS SHOULD EVALUATE THIS DISCLOSURE STATEMENT AND THE PLAN IN LIGHT OF THE PURPOSES FOR WHICH THEY WERE PREPARED.

THE INFORMATION IN THIS DISCLOSURE STATEMENT IS BEING PROVIDED SOLELY FOR PURPOSES OF VOTING TO ACCEPT OR REJECT THE PLAN. NOTHING IN THIS DISCLOSURE STATEMENT MAY BE USED BY ANY ENTITY FOR ANY OTHER PURPOSE.

THE TERMS OF THE PLAN GOVERN IN THE EVENT OF ANY INCONSISTENCY WITH THE SUMMARIES IN THIS DISCLOSURE STATEMENT. ALL EXHIBITS TO THIS DISCLOSURE STATEMENT ARE INCORPORATED INTO AND ARE A PART OF THIS DISCLOSURE STATEMENT AS IF SET FORTH IN FULL HEREIN.

AS TO CONTESTED MATTERS, EXISTING LITIGATION INVOLVING, OR POSSIBLE ADDITIONAL LITIGATION TO BE BROUGHT BY, OR AGAINST, THE DEBTORS, ADVERSARY PROCEEDINGS, AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION, OR WAIVER, BUT RATHER AS A

1

STATEMENT MADE WITHOUT PREJUDICE SOLELY FOR SETTLEMENT
PURPOSES, WITH FULL RESERVATION OF RIGHTS, AND IS NOT TO BE USED
FOR ANY LITIGATION PURPOSE WHATSOEVER BY ANY PERSON, PARTY OR
ENTITY. AS SUCH, THIS DISCLOSURE STATEMENT SHALL NOT BE
ADMISSIBLE IN ANY NONBANKRUPTCY PROCEEDING INVOLVING THE
DEBTORS, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, OR ANY
OTHER PARTY IN INTEREST, NOR SHALL IT BE CONSTRUED TO BE
CONCLUSIVE ADVICE ON THE TAX, SECURITIES, FINANCIAL OR OTHER
EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST OR EQUITY
INTERESTS IN THE DEBTORS.

I.

**INTRODUCTION**

On February 2, 2004 (the "Petition Date"), Garden Ridge Corporation,
("GR Corporation") Garden Ridge Investments, Inc. ("GR Investments"), Garden Ridge
Management, Inc. ("GR Management"), Garden Ridge Finance Corporation ("GR
Finance") and Garden Ridge L.P. ("GR L.P.") filed their petitions for relief under chapter
11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of
Delaware (the "Court"). On February 4, 2004, Garden Holdings, Inc. ("Garden
Holdings," and collectively with GR Corporation, GR Investments, GR Management, GR
Finance and GR L.P., the "Debtors" or "Garden Ridge") filed a petition for relief under
chapter 11 of the Bankruptcy Code with the Court.[1]

On February 9, 2005, the Debtors filed their proposed joint plan of
reorganization, dated February 9, 2005 (as amended on March 28, 2005, the "Plan"),
which sets forth the manner in which Claims against and Equity Interests in the Debtors
will be treated. This Disclosure Statement (the "Disclosure Statement") describes certain
aspects of the Plan, the Debtors' business and related matters.

After a long and careful review of the Debtors' business and its prospects
as a going concern, the Debtors, in consultation with their legal and financial advisors
and the official committee of unsecured creditors appointed by the United States Trustee
in these chapter 11 cases (the "Creditors Committee") and the Creditors Committee's
legal and financial advisors, concluded that recoveries to creditors and equity holders
would be maximized by the Debtors' continued operation as a going concern under the
terms of the Plan. In other words, the Debtors are worth more to their creditors and
equity holders as a going concern than upon liquidation.

To achieve that higher value, the Plan contemplates: (i) payment in full of
(a) Administrative Claims, (b) Priority Tax Claims, (c) DIP Financing Claims, (d) Other
Priority Claims, and (d) Other Secured Claims; (ii) a Cash payment to each holder of an

---

[1]    All capitalized terms not defined herein shall have the meaning ascribed to them in
the Plan.

2

Allowed Convenience Claim in an amount equal to such holder's pro rata distribution of eight-hundred thousand dollars ($800,000.00); (iii) issuance of the New Allied Note and New Allied Security Interests to the holder of the Allied Secured Claims; (iv) distribution to holders of Allowed General Unsecured Claims of Preferred Shares; (v) a Cash payment to each holder of an Allowed Eligible Reclamation Claim (defined in Section VIII.B.10) in an amount equal to such holder's pro rata distribution of two hundred thousand dollars ($200,000 00); and (vi) holders of Equity Interests in each of the Debtors shall retain such interests.

This Disclosure Statement is submitted pursuant to section 1125 of the Bankruptcy Code to holders of Claims against the Debtors and the Debtors' Equity Holders in connection with (i) the solicitation of acceptances of the Debtors' Plan and (ii) the hearing to consider confirmation of the Plan (the "Confirmation Hearing") scheduled for _____, 2005, at _____ a.m., Eastern Time.

Attached as Exhibits to this Disclosure Statement are copies of the following:

- The Plan (Exhibit A);

- An Order of the Court (excluding the exhibits thereto) dated _____, 2005 (the "Disclosure Statement Order"), among other things, approving the Disclosure Statement and establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan (Exhibit B);

- Garden Ridge's Projected Financial Information (Exhibit C); and

- Garden Ridge's Liquidation Analysis (Exhibit D).

- Letter from the Creditors Committee Supporting the Plan (Exhibit E).

In addition, a Ballot for the acceptance or rejection of the Plan is enclosed with the Disclosure Statement submitted to the holders of Claims that are entitled to vote to accept or reject the Plan.

By order dated _____, 2005, after notice and a hearing, the Bankruptcy Court signed the Disclosure Statement Order, determining that the Disclosure Statement contains "adequate information" as that term is defined in section 1125 of the Bankruptcy Code. Section 1125(a)(1) of the Bankruptcy Code defines "adequate information" as "information of a kind and in sufficient detail, as far as is reasonably practicable in light of the nature and the history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan." NO STATEMENTS OR INFORMATION CONCERNING THE PLAN AND THE TRANSACTIONS CONTEMPLATED THEREBY HAVE BEEN AUTHORIZED,

Doc #:NY6:724952 17
WP3:1098016 3

62883 1001

OTHER THAN THE STATEMENTS AND INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT <u>AND</u> THE INFORMATION ACCOMPANYING THIS DISCLOSURE STATEMENT. ALL OTHER STATEMENTS REGARDING THE PLAN AND THE TRANSACTIONS CONTEMPLATED THEREBY, WHETHER WRITTEN OR ORAL, ARE UNAUTHORIZED.

**APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT, HOWEVER, CONSTITUTE A DETERMINATION BY THE COURT AS TO THE FAIRNESS OR MERITS OF THE PLAN.**

The Disclosure Statement Order sets forth in detail the deadlines, procedures and instructions for voting to accept or reject the Plan and for filing objections to confirmation of the Plan, the Record Date for voting purposes, and the applicable standards for tabulating Ballots. In addition, detailed voting instructions accompany each Ballot. Each holder of a Claim entitled to vote on the Plan should read in their entirety the Disclosure Statement, the Plan, the Disclosure Statement Order and the instructions accompanying the Ballots before voting on the Plan. These documents contain, among other things, important information concerning the classification of Claims and Equity Interests for voting purposes and the tabulation of votes. No solicitation of votes to accept the Plan may be made except pursuant to section 1125 of the Bankruptcy Code.

A.    **Holders of Claims Entitled to Vote**

Pursuant to the provisions of the Bankruptcy Code, only holders of allowed claims or equity interests in classes of claims or equity interests that are impaired are entitled to vote to accept or reject a proposed chapter 11 plan. Classes of claims or equity interests in which the holders of claims or equity interests are unimpaired under a chapter 11 plan are deemed to have accepted the plan and are not entitled to vote to accept or reject the plan.

Classes 3 (Convenience Claims), 4 (Allied Secured Claims), 5 (General Unsecured Claims) and 6 (Reclamation Claims) of the Plan are impaired. To the extent Claims in Classes 3, 4, 5 and 6 are Allowed Claims, the holders of such Claims are entitled to vote to accept or reject the Plan. Classes 7 and 13 will receive no distribution pursuant to the Plan, and, accordingly, such holders are deemed to reject the Plan. Holders of Equity Interests in Classes 8, 9, 10, 11 and 12 shall retain their Equity Interests under the Plan, are unimpaired, and pursuant to section 1126(f) of the Bankruptcy Code are therefore deemed to have accepted the Plan. Classes 1 and 2 of the Plan are also unimpaired. Pursuant to section 1126(f) of the Bankruptcy Code, holders of Claims in Classes 1 and 2 are conclusively deemed to have accepted the Plan. ACCORDINGLY, A BALLOT TO ACCEPT OR REJECT THE PLAN IS BEING PROVIDED ONLY TO HOLDERS OF CLAIMS IN CLASSES 3, 4, 5 and 6.

The Bankruptcy Code defines "acceptance" of a plan by a class of claims as acceptance by creditors in that class that hold at least two-thirds in dollar amount and more than one-half in number of the claims that cast ballots for acceptance or rejection of

Doc #:NY6:724952 17
WP3:1098016 3

62883 1001

the plan. For a more detailed description of the requirements for confirmation of the Plan, see Section XI, "Confirmation Procedure."

If one or more Classes of Claims entitled to vote on the Plan votes to reject the Plan, the Debtors currently intend to request confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code. Section 1129(b) permits the Court to confirm a plan of reorganization notwithstanding the nonacceptance of a plan by one or more impaired classes of claims or equity interests. Under that section, a plan may be confirmed by a bankruptcy court if it does not "discriminate unfairly" and is "fair and equitable" with respect to each nonaccepting class. The final determination as to whether to seek confirmation of the Plan under such circumstances will be announced before or at the Confirmation Hearing. For a more detailed description of the requirements for confirmation of a nonconsensual plan, see Section XI.C, "Confirmation Procedure" and "Unfair Discrimination and Fair and Equitable Tests."

For a summary of the treatment of each class of Claims and Interests, see Section II, "Overview of the Plan."

**B.    Voting Procedures**

If you are entitled to vote to accept or reject the Plan, a Ballot is enclosed for the purpose of voting on the Plan. If you hold a Claim in more than one Class and you are entitled to vote Claims in more than one Class, you will receive separate Ballots that must be used for each separate Class of Claims. Please vote and return your Ballot(s).

If you received a Ballot from a broker, bank or other institution, return the completed Ballot to such broker, bank or institution promptly so that it can be forwarded to the Debtor's tabulation agent, The Altman Group. If you received Ballot(s) from the Debtors, please vote and return your Ballot(s) directly to the following address:

> The Altman Group
> 60 East 42nd Street
> Suite 405
> New York, NY 10165
> Attn:   Garden Ridge
> Balloting Center

DO NOT RETURN YOUR NOTES OR ANY OTHER INSTRUMENTS OR AGREEMENTS THAT YOU MAY HAVE WITH YOUR BALLOT

TO BE COUNTED, YOUR BALLOT INDICATING ACCEPTANCE OR REJECTION OF THE PLAN MUST BE ACTUALLY RECEIVED NO LATER THAN 5:00 P.M., EASTERN STANDARD TIME, ON _____, 2005.

Any Claim in Class 3, 4, 5 or 6 as to which an objection or request for estimation is pending or which is scheduled by the Debtor as unliquidated, disputed or

contingent is not entitled to vote unless the holder of such Claim has obtained an order of the Court temporarily allowing such Claim for the purpose of voting on the Plan

Pursuant to the Disclosure Statement Order, the Court set _____, 2005 as the Record Date for voting on the Plan. Accordingly, only holders of record as of _____, 2005 that are otherwise entitled to vote under the Plan will receive a Ballot and may vote on the Plan.

If you are a holder of a Claim entitled to vote on the Plan and did not receive a Ballot, received a damaged Ballot or lost your Ballot, or if you have any questions concerning the Disclosure Statement, the Plan or the procedures for voting on the Plan, please call The Altman Group at (212) 681-9600 from 10:00 a.m. to 4:00 p.m., Monday through Friday.

C.    **Confirmation Hearing**

Pursuant to section 1128 of the Bankruptcy Code, the Bankruptcy Court scheduled the hearing to consider confirmation of the Plan for [April __, 2005 at ____ a.m. Eastern Time] before the Honorable Donal D. Sullivan, United States Bankruptcy Court, 824 North Market Street, 6th Floor, Wilmington, Delaware 19801 (the "Confirmation Hearing"). The Court has directed that objections, if any, to confirmation of the Plan be served and filed so that they are received on or before April __, 2005 at 4:00 p.m., Eastern Time, in the manner described below in Section XI.B, "The Confirmation Hearing." The Confirmation Hearing may be adjourned from time to time by the Court without further notice except for the announcement of the adjournment date made at the Confirmation Hearing or at any subsequent adjourned Confirmation Hearing.

THE DEBTORS BELIEVE THAT THE PLAN WILL ENABLE THEM TO REORGANIZE SUCCESSFULLY AND TO ACCOMPLISH THE OBJECTIVES OF CHAPTER 11 AND THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTERESTS OF THE DEBTORS AND THEIR CREDITORS. THE DEBTORS URGE CREDITORS TO VOTE TO ACCEPT THE PLAN.

AS DESCRIBED IN THE ENCLOSED LETTER, THE CREDITORS COMMITTEE SUPPORTS THE PLAN AND RECOMMENDS THAT UNSECURED CREDITORS VOTE TO ACCEPT THE PLAN.

II.

OVERVIEW OF THE PLAN

The following table briefly summarizes the classification and treatment of Claims and Equity Interests under the Plan and the estimated distributions to be received by the holders of such Claims and Interests thereunder.

6

SUMMARY OF CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY
INTERESTS UNDER THE PLAN.[2]

| Class | Type of Claim or Equity Interest | Treatment | Estimated Amount of Allowed Claims | Estimated Recovery |
|---|---|---|---|---|
| -- | Administrative Claims | Unimpaired; each holder of an Allowed Administrative Claim shall (a) be paid in full, in Cash on the Effective Date, (b) with respect to Consenting Professionals, such treatment as specified in Article XIV of the Plan, or (c) such other treatment as the Debtors and such holder shall have agreed upon in writing. | $12,900,000.00 | 100% |
| -- | Priority Tax Claims | Unimpaired; at the option of the Debtors either (i) paid in full, in Cash on the Effective Date, or (ii) paid over a six-year period from the date of assessment as provided in section 1129(a)(9)(c) of the Bankruptcy Code with interest at the statutory rate provided for under applicable federal, state or local law. | $1,344,000.00 | 100% |
| -- | DIP Financing Claims | Unimpaired; paid in full, in Cash, on the Effective Date. | $43,685,000.00 | 100% |
| 1 | Other Priority Claims | Unimpaired; paid in full, in Cash, on the Effective Date except to the extent the holder has agreed, in writing, to a different treatment. | $0 | 100% |
| 2 | Other Secured Claims | Unimpaired; at the option of the Debtors either (i) reinstated by curing all outstanding defaults with all legal, equitable and | $0 | 100% |

---

[2]  This table is only a summary of the classification and treatment of Claims and Equity
Interests under the Plan.  Reference should be made to the entire Disclosure
Statement and the Plan for a complete description of the classification and treatment
of Claims and Equity Interests.

7

| Class | Type of Claim or Equity Interest | Treatment | Estimated Amount of Allowed Claims | Estimated Recovery |
|---|---|---|---|---|
| | | contractual rights remaining unaltered, (ii) paid in full, in Cash, plus any interest required to be paid pursuant to section 506(b) of the Bankruptcy Code, on the Effective Date, or (iii) fully and completely satisfied by delivery or retention of the collateral securing the Other Secured Claim and payment of any interest required to be paid pursuant to section 506(b) of the Bankruptcy Code. | | |
| 3 | Convenience Claims | Impaired; each holder of an Allowed Convenience Claim shall receive, in full and final satisfaction of such claim, a pro rata distribution of eight hundred thousand dollars ($800,000.00) in Cash. | $8,000,000.00 | 10% |
| 4 | Allied Claims | Impaired; in full and final satisfaction of the Allied Claims and all interests securing such claim, the holder of the Allied Claims shall reduce such Claims to $22,500,000.00 and receive the New Allied Note, the New Allied Security Interests and the New Allied Guaranties pursuant to a settlement incorporated into the Plan. | $22,500,000.00 | 85% |
| 5 | General Unsecured Claims | Impaired; each holder of an Allowed General Unsecured Claim shall receive a pro rata | $52,044,00.00 -- $62,044,000.00[3] | 8.05% -9.6% |

---

[3] The Debtors provide a range of the estimated amount of General Unsecured Claims to reflect the possibility that the amount of certain General Unsecured Claims, such as landlord rejection claims, will be determined at a later date through the claims resolution process.

8

| Class | Type of Claim or Equity Interest | Treatment | Estimated Amount of Allowed Claims | Estimated Recovery |
|---|---|---|---|---|
| | | interest in the Preferred Shares. | | |
| 6A | Allowed Eligible Reclamation Claims | Impaired; each holder of an Allowed Eligible Claim shall receive, in full and final satisfaction of such claim, a pro rata distribution of two hundred thousand ($200,000.00) in Cash and an Allowed General Unsecured Claim equal to the positive difference between (x) such holder's Allowed Eligible Reclamation Claim and (y) the Cash paid to such holder or account of such holder's Allowed Eligible Reclamation Claim. | $2,000,000.00 | 18% - 19% |
| 6B | Allowed Ineligible Reclamation Claims | Impaired; each holder of an Allowed Ineligible Reclamation Claim shall be entitled to file a motion with the Court seeking a lien or administrative claim. The Debtors and the Reorganized Debtors, as the case may be, reserve the right to oppose any such motion. | $1,000,000.00 | To be determined by the Court. |
| 7 | Garden Holdings Claims | Impaired; holders of Allowed Garden Holdings Claims shall receive no distributions. | $108,073,000.00 | 0% |
| 8 | GR Corporation Equity Interests | Unimpaired; each holder of an equity security interest in GR Corporation shall retain such interest. | N/A | 100% |
| 9 | GR Investments Equity Interests | Unimpaired; each holder of an equity security interest in GR Investments shall retain such interest. | N/A | 100% |
| 10 | GR Management Equity Interests | Unimpaired; each holder of an equity security interest in GR Management, shall retain such interest. | N/A | 100% |

9

| Class | Type of Claim or Equity Interest | Treatment | Estimated Amount of Allowed Claims | Estimated Recovery |
|---|---|---|---|---|
| 11 | GR Finance Equity Interests | Unimpaired; each holder of an equity security interest in GR Finance shall retain such interest. | N/A | 100% |
| 12 | GR L.P. Equity Interests | Unimpaired; each holder of an equity security interest in GR L.P. shall retain such interest. | N/A | 100% |
| 13 | Garden Holdings Equity Interests | Impaired; each holder of an equity security interest in Garden Holdings shall have such interest extinguished. | N/A | 0% |

## III.

## OVERVIEW OF CHAPTER 11

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. Under chapter 11, a debtor is authorized to reorganize its business for the benefit of itself, its creditors and equity interest holders. In addition to permitting rehabilitation of a debtor, another goal of chapter 11 is to promote equality of treatment for similarly situated creditors and equity interest holders with respect to the distribution of a debtor's assets.

The commencement of a chapter 11 case creates an estate that is comprised of all of the legal and equitable interests of the debtor as of the filing date. The Bankruptcy Code provides that the debtor may continue to operate its business and remain in possession of its property as a "debtor in possession."

The consummation of a plan of reorganization is the principal objective of a chapter 11 reorganization case. A plan of reorganization sets forth the means for satisfying claims against and interests in the debtor. Confirmation of a plan of reorganization by the bankruptcy court makes the plan binding upon a debtor, any issuer of securities under the plan, any person acquiring property under the plan and any creditor or equity interest holder of a debtor. Subject to certain limited exceptions, the confirmation order discharges a debtor from any debt that arose prior to the date of confirmation of the plan and substitutes therefor the obligations specified under the confirmed plan.

After a plan of reorganization has been filed, the holders of claims against or interests in a debtor are generally permitted to vote to accept or reject the plan. Before soliciting acceptances of the proposed plan, however, section 1125 of the Bankruptcy Code requires a debtor to prepare a disclosure statement containing adequate information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an

10

informed judgment about the plan. The Debtor is submitting this Disclosure Statement to holders of Claims against the Debtor to satisfy the requirements of section 1125 of the Bankruptcy Code.

## IV.

## COMPANY BACKGROUND

### A.    General Background

On the Petition Date, all of the Debtors except GR L.P. were holding companies with no independent operations

As of the Petition Date, the Debtors' books and records indicated approximately $319 million in assets and outstanding liabilities of approximately $431 million, which included approximately $58 5 million of secured debt. Approximately 1300 parties have asserted claims against the Debtors in the aggregate amount of approximately $110.7 million, which includes duplicative or otherwise objectionable claims.

The Debtors' primary secured obligations to Bank of America totaled approximately $32 million as of the Petition Date. The Debtors' other secured obligations were to Allied Capital Corporation, which totaled approximately $26.8 million as of the Petition Date.

### B.    The Debtors

GR Corporation is a Delaware corporation that holds 100% of the equity interests in GR Investments, GR Finance and GR Management, all of which are Delaware corporations. Garden Holdings is a Delaware corporation that holds 100% of the equity interests in GR Corporation.

GR L.P. is a Texas limited partnership. GR Investments holds a 99% ownership in GR L.P. as the sole limited partner, and GR Management holds a 1% ownership interest in GR L.P. as the sole general partner. The Debtors' operations are primarily conducted at the level of the GR L.P., which is the lessee under the store leases and the entity that pays the expenses and collects the receipts generated from daily store operations.

Garden Ridge had net sales of approximately $415 million for its fiscal year ending January 29, 2005

### C.    Garden Holdings' Shareholders

The shareholder of Garden Holdings, the parent of GR corporation and its subsidiaries, is GRDG Holdings LLC. Funds and individuals associated with Three Cities collectively constitute the principal indirect interest holders in the Debtors. As a

11

result of this ownership interest, Three Cities should be considered an "insider" pursuant to section 101(31) of the Bankruptcy Code

**D.    Debtors' Prepetition Capital Structure**

Before the Petition Date, the Debtors' working and other capital financing needs were met through a revolving credit facility (the "Bank Facility") with a maximum revolving availability of either $65 million or $75 million (depending on the time of year) with Bank of America, as agent for the lenders thereunder. GR L.P. was the borrower and the remaining Debtors (except Garden Holdings) were guarantors under the Bank Facility. The Debtors' obligations in respect of the Bank Facility were secured by first priority security interests in substantially all of the Debtors' assets. As noted above, the Debtors' obligations under the Bank Facility as of the Petition Date amounted to approximately $32 million (the "Prepetition Bank Debt").

The Debtors also met their financing needs through a $25 million junior secured note (the "Allied Note") payable to Allied Capital Corporation ("Allied"). GR Corporation is the borrower and the remaining Debtors are guarantors of the Allied Note. Pursuant to a Subordination Agreement between the Debtors, Bank of America and Allied, the Debtors' obligations in respect of the Allied Note are subordinate to their obligations to the Lenders in respect of the Bank Facility or any replacement facility. The Debtors' obligations in respect of the Allied Note are secured by (a) a second priority security interest in substantially all of the Debtors' assets, and (b) a pledge of 18,000,000 shares of common stock in GR Corporation owned by Garden Holdings. As of the Petition Date, the Debtors' obligations under the Allied Note totaled approximately $25.3 million.

The Debtors further met their financing needs through a certain 12% Subordinated Note (the "Subordinated Note" and together with the Allied Note, the "Allied Notes") issued by Garden Holdings in favor of Allied in the original principal amount of approximately $1.5 million.

**V.**

**EVENTS LEADING TO COMMENCEMENT
OF THE CHAPTER 11 CASES**

In 1999, Garden Ridge adopted a strategy designed to increase profitability and sales by improving store operations and increasing customer traffic. In implementing this operations-driven strategy, Garden Ridge reduced its stock keeping unit ("SKU") count by 30% — in large part by eliminating merchandise at higher and lower price points — and de-emphasized the role of buyers by implementing automatic replenishment programs. To increase customer traffic and accommodate a narrower assortment of merchandise, Garden Ridge expanded by opening smaller stores in high-traffic areas. The leases for the new, smaller stores provided for higher rents in comparison to other Garden Ridge stores.

12

This strategy did not bring about the intended sales and profit growth. Rather, the increased overhead resulting from the expansion into higher priced leases reduced margins, and comparable store sales decreased on account of customers' negative reaction to the reduced variety of merchandise. As a result, comparable store sales decreased by 16% from 1999 to 2002, and EBITDA fell from $24.8 million to a negative $18.3 million. As the Debtors' EBITDA decreased, their vendors retracted trade credit on inventory purchases, which in turn reduced the Debtors' borrowing base under their Bank Facility, as the borrowing base was largely a function of the value of the Debtors' inventory.

By April 2003, Garden Ridge recognized that action had to be taken and began to institute changes designed to restore the profitability enjoyed before 1999. Central to those changes was a return to the original merchant-driven strategy emphasizing a wide variety of merchandise, a breadth of selection within each category of merchandise, fashionable design and value. Due to constraints associated with the shift from an operations-driven approach to a merchant-driven approach — namely, the long lead times for buying new inventory and the time needed to retrain buyers — it took the Debtors some time to achieve positive results.

Lingering liquidity constraints, the resulting reduction in vendor credit and unprofitable leases continued to impair the Debtors' EBITDA to a point that, in order to preserve the Debtors' value and maximize the return for all creditors, the Debtors were forced to consider more formal restructuring alternatives. Without the benefit of debtor-in-possession financing available through a chapter 11 case, the Debtors lacked sufficient liquidity to continue implementing the operational restructuring set in motion in April 2003. Accordingly, to improve Garden Ridge's overall liquidity, salvage and improve vendor relations, and to reject leases that are unprofitable or that cover stores where the size, format, or location is not compatible with the Debtors' strategy, Garden Ridge determined that commencement of these chapter 11 cases was in their best interests and the best interests of their creditors.

## VI.

## STEPS TAKEN TO STRENGTHEN THE DEBTORS' FINANCIAL PERFORMANCE AND OPERATIONS

In April 2003, Garden Ridge's management developed and began to implement several strategic initiatives designed to improve its sales and financial performance.

### A.    New Management

Garden Ridge retained a new management team headed by Jack Lewis, who until 1998 had served as Garden Ridge's President and Chief Operating Officer. Under Mr. Lewis, Garden Ridge has recruited a new team of buyers, increased average SKU count, and renewed emphasis on design, selection and value.

13

To assist Mr. Lewis in restoring Garden Ridge to profitability, Garden Ridge retained Steve Higgins as the Debtors' Senior Vice President and General Merchandise Manager. The General Merchandise Manager plays a central role in the Debtors' operations. The General Merchandise Manager's principal role is to translate the President's vision into an assortment of merchandise for all of the Garden Ridge stores. Steve Higgins' involvement in the retail industry began in 1972, and he has been employed as a Merchandise Manager for 19 of the last 32 years. Mr. Higgins is well known to Garden Ridge trade vendors and throughout the retail industry, and has a reputation for success, leadership and growth. In late 2004, Mr. Lewis decided to step down from his management role to focus on product design, selection and value. Mr. Higgins subsequently became Garden Ridge's President and Chief Operating Officer.

**B.        Focus on Core Markets**

To optimize store performance, Garden Ridge is focusing on markets where its stores have been most successful. Concentrating in these select markets will allow Garden Ridge to benefit from its existing brand image and core customer base in these areas, and to target its advertising spending on enhancing awareness in such markets.

To this end, during the Chapter 11 Case Garden Ridge closed 9 non-core stores and conducted going out of business sales at each location. Garden Ridge continues to operate some profitable stores in non-core markets and the company currently plans to retain these profitable locations.

## VII.

## THE CHAPTER 11 CASE

**A.        Significant "First Day" Motions**

On the Petition Date and during the first few weeks of the Chapter 11 Case, the Court entered several orders authorizing the Debtors to pay various prepetition claims. These orders were designed to ease the strain on the Debtors' relationships with customers, employees and vendors as a consequence of the filings. The Court entered orders authorizing the Debtors to, among other things, (i) pay prepetition compensation, benefits and employee reimbursement to employees; (ii) honor certain prepetition obligations to customers, including obligations relating to the Debtors' return and exchange policy, gift certificates and coupon programs; (iii) grant administrative expense status to the Debtors' obligations arising from the postpetition delivery of goods and services based on prepetition orders and authorizing the Debtors to pay such expenses in the ordinary course of business; and (iv) pay certain prepetition customs and shipping charges and related liens.

In addition, the Debtors filed several applications seeking orders authorizing the Debtors' retention of professionals. Specifically, the Debtors filed applications to retain (i) Paul, Weiss, Rifkind, Wharton & Garrison LLP and Young,

Disclosure Statement Pages 15 to End Omitted for Brevity

# Exhibit 4

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GARDEN RIDGE CORPORATION, | ) | Case No. 04-10324 (RB) |
| *et al.,* | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | **Hearing Date: To be determined** |
| | | **Re: Docket No. 1518** |

### REORGANIZED DEBTORS' OBJECTION TO MOTION OF DANIEL FERGUSON FOR RELIEF FROM THE AUTOMATIC STAY UNDER § 362(d)(1) OF THE BANKRUPTCY CODE TO THE EXTENT NECESSARY TO SET OFF MUTUAL DEBTS

Garden Ridge, L.P., Garden Ridge Corporation, Garden Ridge Management, Inc., Garden Ridge Finance Corporation, Garden Ridge Investments, Inc., and Garden Holdings, Inc. (collectively, prior to the Effective Date (as defined below), the "Debtors," and after the Effective Date, the "Reorganized Debtors"), through their undersigned counsel, submit this objection (the "Objection") to the *Motion of Daniel Ferguson for Relief from the Automatic Stay Under § 362(d)(1) of the Bankruptcy Code to the Extent Necessary to Set Off Mutual Debts* filed on April 14, 2005 by Daniel Ferguson (the "Motion") [*see* Docket No. 1518]. In support of this Objection, the Reorganized Debtors state as follows:

### PRELIMINARY STATEMENT

1.       By his Motion, Mr. Ferguson seeks authority to set off a debt allegedly owed to him by Garden Ridge Management, Inc. with a liability Mr. Ferguson owes to Garden Ridge, L.P. As set forth more fully *infra*, section 553 of the Bankruptcy

Code (as defined below) does not contemplate such "triangular" setoffs and, indeed, the case law interpreting section 553 of the Bankruptcy Code clearly prohibits such setoffs. Consequently, the Court should deny the Motion.

## GENERAL BACKGROUND

2.       On February 2, 2004 (the "Petition Date"), all of the Debtors other than Garden Holdings, Inc. filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware. Garden Holdings, Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on February 4, 2004.

3.       The Reorganized Debtors own and operate a leading home décor retailer with 35 stores in 13 states throughout the South, Midwest and Mid Atlantic regions. Garden Ridge stores offer a vast selection of home décor, with merchandise that includes silk floral and greenery, pottery, crafts, housewares, candles, baskets, party supplies, wall decorations, home textiles, and a wide variety of seasonal and holiday decorations. Most Garden Ridge stores exceed 100,000 sq. ft. and offer in excess of 70,000 stock keeping units.

4.       On March 29, 2005, the Debtors filed their (i) *First Amended and Corrected Disclosure Statement for Debtors' First Amended Joint Plan of Reorganization (Corrected) Under Chapter 11 of the Bankruptcy Code* (the "Disclosure Statement") and (ii) the *Debtors' First Amended Joint Plan of Reorganization (Corrected) Under Chapter 11 of the Bankruptcy Code* (the "Plan"). After a hearing held on the same date, the Court entered an order approving the Disclosure Statement and

2

scheduling a hearing to consider confirmation of the Plan for April 28, 2005 at 11:30 a.m. (ET).

       5.       By order dated April 28, 2005, the Court confirmed the Plan. The effective date of the Plan was May 12, 2005 (the "Effective Date").

**MR. FERGUSON'S ASSERTED SETOFF CLAIM**

       6.       On or about January 28, 2001, Mr. Ferguson executed an employment agreement (the "Agreement") whereby he was to become an employee of Garden Ridge Management, Inc. and the Senior Vice President – Supply Chain for the Debtors. The provision of the Agreement titled "Severance" states, in its entirety: "If released without cause, you will receive one year of base salary." The Agreement further provides for the payment of certain relocation costs including "customary real estate commissions up to 6% maximum on the sale of your existing home." A copy of the Agreement is annexed hereto as Exhibit A.

       7.       Mr. Ferguson was, at all times, an employee of Garden Ridge Management, Inc. Mr. Ferguson was never employed by any other debtor-entity, including, but not limited to, Garden Ridge, L.P. A copy of Mr. Ferguson's paycheck from Garden Ridge Management, Inc. for the period September 15, 2003 through September 28, 2003 evidencing his employment with Garden Ridge Management, Inc. is attached hereto as Exhibit B.[1]

       8.       On or about January 1, 2003, Mr. Ferguson executed a promissory note in favor of Garden Ridge, L.P. in the principal amount of $250,000 (the "Note").

---

[1] For the protection of Mr. Ferguson's privacy, certain information has been redacted from this exhibit.

3

The Note became due and payable upon the earlier to occur of (i) thirty (30) days after

the closing of the sale of Mr. Ferguson's real property in Michigan, (ii) the date of

Mr. Ferguson's termination of employment <u>with</u> or <u>without</u> cause, and (iii) December 31,

2003. A copy of the Note is annexed hereto as Exhibit C.

      9.      The Debtors believe that it is undisputed that one or more (if not

all) of these events has occurred. Thus, the final maturity date of the Note has passed.

      10.      Mr. Ferguson has made no payments in satisfaction of the Note.

Indeed, in both the Motion and the Ferguson Claim (as defined below), Mr. Ferguson

concedes that the full amount of the Note is due. *See* Motion, at ¶ 7 ("As of the Petition

Date, Mr. Ferguson was indebted to the Debtors in the sum of $250,000"); *id.* at ¶ 17

(characterizing the Debtors' Note claim as "valid" and "enforceable"); Ferguson Claim,

at 3 ("$250,000 [is] owed to Garden Ridge pursuant to a promissory note dated January

1, 2003.").

      11.      In September 2003, Garden Ridge Management, Inc. terminated

Mr. Ferguson for cause. Because Mr. Ferguson was terminated for cause, Garden Ridge

Management, Inc. determined that he was ineligible for the severance payments offered

in the Agreement.[2]

      12.      On or about September 25, 2003, Mr. Ferguson filed suit (the

"State Court Action") in the District Court of Harris County, Texas, 189th Judicial

District against Garden Ridge Management, Inc. and Garden Ridge, L.P. (together, the

"State Court Defendants"). In the State Court Action, Mr. Ferguson alleges that he was

---

[2] The parties have agreed to brief and argue only the issue of Mr. Ferguson's right to set off his
employment-related claims against Garden Ridge Management, Inc. with the claim of Garden Ridge, L.P.
based on the maturity of the Note. The merits of Mr. Ferguson's severance and relocation claims will be
addressed by the parties separately.

                                                     

terminated "[w]ithout cause and in breach of its contract..." and that the State Court

Defendants

> have failed and refused to honor its [*sic*] contract with
> Plaintiff Daniel Ferguson, and continue to fail and refuse to
> pay the termination benefits and real estate commission as
> promised.
>
> Plaintiff Daniel Ferguson sues Defendants for the $250,000
> termination benefits wrongfully withheld, the $50,000 to
> $60,000 real estate commission that was never paid,
> attorneys' fees and pre-judgment and post-judgment
> interest."

A copy of the complaint in the State Court Action is annexed hereto as Exhibit D.

13.    On November 4, 2003, the State Court Defendants filed an answer

in the State Court Action asserting general denials.

14.    On February 2, 2004, the Debtors filed for protection under chapter

11 of the Bankruptcy Code in this Court. A suggestion of bankruptcy on behalf of the

State Court Defendants was filed in the State Court Action on February 5, 2004.

15.    On or about February 16, 2004, Garden Ridge Management, Inc.

filed its Schedules of Assets and Liabilities as of the Petition Date in these bankruptcy

cases (the "Management Schedules"). Listed on Schedule E of the Management

Schedules was the unliquidated claim of Mr. Ferguson related to the State Court Action.

A copy of the relevant pages of the Management Schedules is annexed hereto as Exhibit

E. No accounts receivable from Mr. Ferguson were listed on the Management Schedules.

16.    On or about February 16, 2004, Garden Ridge, L.P. filed its

Schedules of Assets and Liabilities as of the Petition Date in these bankruptcy cases (the

"L.P. Schedules"). Listed on Schedule B-15 of the L.P. Schedules is the Note payable

from Mr. Ferguson to Garden Ridge, L.P. Because Garden Ridge, L.P. is one of the State

5

Court Defendants, Mr. Ferguson's claims related thereto were also listed on the L.P.

Schedules. A copy of the relevant pages of the L.P. Schedules is annexed hereto as

Exhibit F.

          17.     On or about April 16, 2004, Mr. Ferguson filed an unsecured, non-

priority claim in these cases in the amount of $310,000 (the "Ferguson Claim"). In the

Ferguson Claim, Mr. Ferguson asserts that it is

> [B]ased on the breach of written contract of
> employment...existing between Mr. Ferguson and Garden
> Ridge. The Contract provides for the payment of one year
> of base salary, $250,000.00, if Mr. Ferguson is terminated
> without cause. Mr. Ferguson was terminated without
> cause. Garden Ridge has failed to make any severance
> payments as required under the contract...
>
> The Contract further provides for the payment of relocation
> costs, including real estate commissions, under the
> Contract's relocation provision. Garden Ridge has failed to
> pay relocation costs as provided. The amount owed is
> approximately $60,000.00.
>
> These claims are the subject of a lawsuit pending in Harris
> County, TX...
>
> These claims are also subject to a setoff of $250,000 owed
> to Garden Ridge pursuant to a promissory note dated
> January 1, 2003.

A copy of the Ferguson Claim is annexed hereto as Exhibit G.

          18.     On or about April 13, 2005, Mr. Ferguson filed the instant Motion.

By the Motion, Mr. Ferguson seeks, first, a determination that the Ferguson Claim is

valid and enforceable, and, second, a finding that the Ferguson Claim should be setoff

against the Note.

## ARGUMENT

19.    Pursuant to section 553 of the Bankruptcy Code, the Bankruptcy Code, with certain enumerated exceptions, "does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case…against a claim of such creditor against the debtor that arose before the commencement of the case…" 11 U.S.C. § 553(a). "The right of setoff (also called 'offset') allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.' " *Citizens Bank v. Strumpf*, 516 U.S. 16, 18 (1995)(citation omitted), *as quoted in Anes v. Dehart (In re Anes)*, 195 F.3d 177, 182 (3d Cir. 1999); *see also In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 896 F.2d 54, 57 (3d Cir. 1990)(The right of setoff "allows parties that owe mutual debts to state the accounts between them, subtract one from the other and pay only the balance.").

20.    As a general rule, section 553 of the Bankruptcy Code will recognize and preserve a creditor's otherwise valid right of setoff where (1) such creditor holds a prepetition claim against the estate; (2) such creditor owes a prepetition debt to the estate; (3) there is mutuality of debts; and (4) each such debt is valid and enforceable.[3]  *See* 3 LAWRENCE P. KING, COLLIER ON BANKRUPTCY ¶ 355.01[1], at 553-7 (15th ed. rev. 2001); *see generally In re APF Co.*, 264 B.R. 344, 354 (Bankr. D. Del 2001)(Walsh, J.).  The proponent of the asserted setoff bears the burden of establishing each of these elements. *See In re Westchester Structures*, 181 B.R. 730, 739 (S.D.N.Y. 1995).

7

21.    As a threshold matter, before a creditor will be entitled to setoff a claim against a debtor with a debt owed to a debtor, there must exist mutuality of debt or "the debt[s] must be owed by and to the same two parties."[4]  *In re Telephone Warehouse, Inc.*, 259 B.R. 64, 69 (Bankr. D. Del. 2001)(Walrath, J.); *BEA Systems, Inc. v. Shubert (In re Winstar Communications, Inc.)*, 315 B.R. 660 (D. Del. 2004) (Farnan, J.) ("To establish its right to setoff under section 553 of the Bankruptcy Code, the creditor must show mutuality of obligation.  To be mutual, the debts must be in the same right and between the same parties, standing in the same capacity.)(quotation omitted).

22.    The mutuality of debts requirement is intended, in part, to prevent impermissible "triangular setoffs," that is, where one creditor attempts to offset an obligation it owes to the debtor against a debt that the debtor owes to a second creditor.  *See* 3 LAWRENCE P. KING, COLLIER ON BANKRUPTCY ¶ 355.03[3][b], at 553-28 (15th ed. rev. 2001).  Thus, section 553 of the Bankruptcy Code may not be employed by two related entities seeking to aggregate their debts and claims for the purpose of obtaining a setoff from a common debtor.  *See* 3 LAWRENCE P. KING, COLLIER ON BANKRUPTCY ¶ 355.03[3][b], at 553-29 (15th ed. rev. 2001)(footnotes omitted).  This is so even in the context of one corporate subsidiary seeking to setoff an obligation owed to it with an obligation owed by a related corporate subsidiary to the same debtor or where a parent corporation seeks to similarly offset the claims and/or debts of one of its subsidiaries.

---

[3] As stated above, the parties have agreed to separately brief and argue the validity and enforceability of Mr. Ferguson's claim.

[4] It should be noted that the right to setoff preserved in section 553 of the Bankruptcy Code is necessarily limited by the automatic stay.  *See* 11 U.S.C. § 362.  In this regard, section 362(a)(7) provides that a debtor's petition in bankruptcy "operates as a stay…of…the setoff of any debt owing to the debtor that arose before the commencement of the case…"  11 U.S.C. § 362(a)(7).  Thus, a creditor seeking to effectuate such a setoff must first obtain relief from the automatic stay.

*See id.* Simply put, "a subsidiary's debt may <u>not</u> be set off against the credit of a parent

or other subsidiary, or *vice versa*, because no mutuality exists under the circumstances."

*Packaging Indus. Group v. Dennison Mfg. Co. (In re Sentinel Products Corp., P.I., Inc.),*

192 B.R. 41, 46 (N.D.N.Y. 1996) (emphasis added), *citing MNC Commercial Corp. v.*

*Joseph T. Ryerson & Son, Inc.,* 882 F.2d 615, 618 n.2 (2d Cir. 1989); *see also, United*

*States National Bank v. Custom Coals Laurel (In re Custom Coals Laurel),* 258 B.R. 597

(Bankr. W.D. Pa. 2001)(Setoff of obligation of wholly-owned subsidiary creditor with

debt owed to parent corporation is a prohibited triangular setoff); *Depositors Trust Co. v.*

*Frati Enterprises, Inc.,* 590 F.2d 377 (1st Cir. 1979)(offset of debt owed by debtor to

noteholder with funds held by noteholder's "sister banking corporation" who provided

debtor's inventory financing prohibited under Bankruptcy Act even though two creditors

are "basically the same bank").

       23.    *In re Lang Machinery Corporation* is instructive. *See In re Lang*

*Machinery Corporation,* 1988 Bankr. LEXIS 1667 (Bankr. W.D. Pa. 1988). The debtor

in that case, Lang Machinery Corporation ("LMC"), leased certain real property from an

individual named Charles R. Lang. *See id.* at 3-4. As of the date of the filing of its

petition, LMC was delinquent on its outstanding lease obligations to Charles R. Lang.

*See id.* at 4. At that time, Charles R. Lang was also president of Lang Machinery

Company, Inc. a company unrelated in corporate structure to LMC. *See id.* Lang

Machinery Company, Inc. was the co-owner, with LMC, of certain heavy machinery that

LMC paid to hold in storage and invoiced Lang Machinery Company, Inc. for one-half of

the costs associated with such storage. *See id.* at 8. As of the LMC's petition date, Lang

Machinery Company, Inc. was several thousand dollars delinquent in outstanding

9

                                        

invoices for storage costs. *See id.* Both Lang Machinery Company, Inc. and LMC

sought to setoff the amounts owed in delinquent storage costs, with the delinquent lease

payments owed by LMC to its president Charles R. Lang. *See id.* at 5-6.

        24.     The court held, *inter alia*, that the setoff sought was a prohibited

triangular setoff due to lack of mutuality. *See In re Lang Machinery Corporation*, 1988

Bankr. LEXIS 1667, at *12.  The court opined that "[m]utuality requires that 'each party

must own his own claim in his own right severally, with the right to collect it in his own

name against the debtor in his own right and severally.'" *Id. citing In re Virginia Block

Co.*, 16 B.R. 771, 774 (Bankr. W. Va. 1982).  The court reasoned that because Lang

Machinery Company, Inc.'s "business dealings with [LMC] were unrelated to [LMC's]

rental of its operating facilities" that gave rise to Charles R. Lang's claim, there existed

no right of setoff by Lang Machinery Company, Inc. *In re Lang Machinery Corporation*,

1988 Bankr. LEXIS 1667, at *12.

        25.     The Motion must be denied because Mr. Ferguson has not alleged

and cannot meet the mutuality of debts element necessary for a valid setoff.[5]  Garden

Ridge Management, Inc.'s prepetition severance obligations under the Agreement bear

no relationship to the obligations of Ferguson to Garden Ridge, L.P. on the Note.  As

such, a setoff of the obligations owed to Garden Ridge, L.P. on the Note with the

prepetition severance obligations of Garden Ridge Management, Inc. (to the extent they

---

[5] The Debtors reserve the right to contest the validity and enforceability of Mr. Ferguson's severance and relocation costs claims by agreement of the parties.

                

exist) would constitute an impermissible triangular offset.[6] As a result, the Motion must be denied.

## CONCLUSION

WHEREFORE, the Reorganized Debtors respectfully request that the Court enter an order (i) denying the Motion in its entirety, (ii) finding that the remedy of

---

[6] It should be noted that substantive consolidation of the Debtors' cases does not alter parties' rights to set off under section 553 of the Bankruptcy Code. *In re Sentinel Products Corp.* is instructive on this point. *See Packaging Indus. Group v. Dennison Mfg. Co. (In re Sentinel Products Corp., P.I., Inc.),* 192 B.R. 41 (N.D.N.Y. 1996). There, the bankruptcy cases of the parent and its subsidiaries were substantively consolidated. The creditor attempted to setoff the money it owed the parent company against money owed it by the parent's subsidiary. The court held that setoff was impermissible due to lack of "mutuality." In so doing, the court found "a subsidiary's debt may not be set off against the credit of a parent or other subsidiary, or *vice versa,* because no mutuality exists under the circumstances." *Id.* at 46. In so holding, the court did not find the fact that the cases were substantively consolidated material as it related to the "same parties" requirement of mutuality.

11

setoff is not available to Mr. Ferguson, and (iii) granting the Reorganized Debtors such

other and further relief as is just and proper under the circumstances.

Dated: June 10, 2005
       Wilmington, Delaware

                              YOUNG CONAWAY STARGATT &
                              TAYLOR, LLP

                              Pauline K. Morgan (No. 3650)
                              Joseph M. Barry (No. 4221)
                              Sean T. Greecher (No. 4484
                              1000 West Street, 17th Floor
                              Wilmington, Delaware 19801
                              Telephone: (302) 571-6600
                              Facsimile: (302) 571-1253

                              – and –

                              PAUL, WEISS, RIFKIND, WHARTON &
                              GARRISON LLP
                              Alan W. Kornberg
                              Curtis J. Weidler
                              Justin G. Brass
                              1285 Avenue of the Americas
                              New York, New York  10019-6064
                              Telephone: (212) 373-3000
                              Facsimile: (212) 757-3990


                              Counsel for the Reorganized Debtors

12

**Exhibit A**



January 26, 2001

Dear Dan,

It is with great pleasure that I extend to you our offer to join Garden Ridge's Executive Committee as **Senior Vice President – Supply Chain**. You will report directly to Richard Nawrot, EVP – Information Technology & Logistics. We have a tremendous personal and financial opportunity for you here at Garden Ridge and feel that you will make an excellent addition to our management team.

The details of your offer include:

**SALARY**
- Your initial **base salary will be $240,000 per year**, payable bi-weekly. Your first consideration for salary review will take place in March 2002.

**Bonus**
- You will be eligible for our FY 2002 (2/1/01 – 1/31/02) bonus plan.
- You will be eligible to earn a **bonus target of 50% on your base salary** based on the total company meeting its financial plans. If we exceed plan, the **bonus is uncapped and you could make up to 100% of your base salary.** Bonus payments normally occur in April of each year.

**Stock Options**
- Upon hire, we will recommend that the Stock Option Committee of the Board of Directors grant you a **stock option of 25,000 shares of Garden Ridge Stock.** One-third of these shares vest after one year of employment and the remaining two-thirds vest evenly on the second and third anniversary of your initial grant, with ten years being the life of the plan. The stock option strike price will be set no later than our June Board Meeting. However, your vesting will commence on the first of the month following your date of hire.
- Since we are private, our stock will be valued annually. The valuation will approximate the public price of the stock as if it were on the open market.
- Three unique features of our stock plan that differentiate us are:
  1. Stock can be sold at any time. **No blackout periods.**
  2. Employee sales of stock are offered to other plan participants first. That is, **you can buy more stock than granted** if others sell their shares. The company will buy back shares not acquired by employees not to exceed 3% annually.
  3. If we meet our **financial plans** the options have an **acceleration of vesting** change. The options vest 6 months earlier for meeting plan. If we meet plan 2 years in a row, all options are vested in 2 years versus the 3 years as granted.

19411 Atrium Place, Suite 170    Houston, TX 77084-6099    (281) 579-7901

## RELOCATION
- Garden Ridge will arrange for and cover the costs of the **packing and transporting and reasonable storage time,** if necessary, of your household goods.
- We will **cover closing costs,** including customary real estate commissions up to **6% maximum on the sale of your existing home.** We will also **cover closing costs on the purchase of your new home;** however, hazard insurance, deposits and other prepaid expenses associated with the sale of your existing home and the purchase of your new home are excluded.
  (Policy details attached)
- If necessary, you will also be provided with **interim living assistance for up to 90 days.**
- Garden Ridge will **cover travel expenses** incurred for the relocation to Houston prior to the moving of household goods, and will allow up to two weekend trips, with airfare, motel and rental car expenses covered to search for permanent housing.
- Garden Ridge will **gross up applicable non-deductible relocation expenses.**

## VACATION
- You will be eligible for **3 weeks of vacation** your first year.

## HEALTH INSURANCE
- You and your eligible dependents will be **eligible to participate in Garden Ridge's Group Health Plan** (including basic term life insurance) **after 90 days of service.** Coverage will not begin until Corporate Benefits and Compensation receives the appropriate completed enrollment forms.

## EXECUTIVE BENEFITS
- You will also be eligible for a **supplemental executive medical plan that covers** up to **$10,000 annually.** It will cover expenses that are not generally covered in the basic plan, such as co-pays, eyeglasses, etc.
- You will have the **opportunity to purchase additional executive life insurance** beyond the basic plan.

## OTHER BENEFITS
- Dental Insurance
- Vision Insurance
- 401K Plan (After eligibility requirements are met)

- Long Term Disability
- Short Term Disability
- Paid Holidays
- Associate Discount

## SEVERENCE
- If released without cause, you will receive one year of base salary.

**PLEASE NOTE**
- In accordance with company policy, an officer who voluntarily terminates employment with the company for any reason within 24 months of the date of employment or transfer will be required to repay to the company within 30 days following such termination, the costs associated with relocation.

This is an exciting time in our business.  You would be "coming in on the ground floor".  We are certain you will find that Garden Ridge will live up to your expectations and provide a rewarding and challenging step in your career.

Sincerely,

Paul T. Davies
President & Chief Executive Officer

Richard Nawrot
EVP -- Information Technology & Logistics

[Please indicate your agreement to the above by signing and dating below and returning this to me via fax at (281) 646-0818 or by mail at 19411 Atrium Place, Suite 170, Houston, Texas 77084. Contact me at (281) 579-7901 ext. 204 confidentially prior to sending a fax.]

**AGREED AND ACCEPTED:**

Name

Date  1/28/01

**<u>Exhibit B</u>**

Jun 09 05 10:37a     Garden Ridge          281-846-0818          p.3

Note to financial institutions: This electronic representation of Daniel Ferguson's paycheck was provided from Garden Ridge Management Inc.'s ProBusiness Payroll WorkCenter system on 6/9/2005.

**Garden Ridge Management Inc.**                    09/19/03                    00012671

19411 Atrium Place Suite 170
Houston TX 77084-

PAY          TEN THOUSAND EIGHT HUNDRED NINETY SIX AND 64/100 DOLLARS

          DANIEL FERGUSON

                                                      **NON-NEGOTIABLE**

| Employee DANIEL FERGUSON | Id 021043 | Social Security | Status Married | Exemptions / Allowances US-23.00% TX-0/0 | | Number 00012671 |
|---|---|---|---|---|---|---|
| Code GARDENRC | Paygroup 1 | | Division 999 | Department 360 | Hire Date 02/13/01 | Period Start 09/15/03 |

| | | | | | Period End 09/28/03 | Pay Date 09/19/03 |
|---|---|---|---|---|---|---|

| Earnings | Rate | Units | Current | YTD | | Current | YTD |
|---|---|---|---|---|---|---|---|
| Salary | • | • | • | 182692.41 | W2 Gross Wages | 14423.09 | 235455.06 |
| Vacation | 120.1924 | 120.00 | 14423.09 | 14423.09 | | | |
| Executive Medical Gross-Up | • | • | • | 15329.23 | | | |
| Group Term Life > $50000 | • | • | • | 992.40 | | | |
| Bonus Dollars | • | • | • | 25000.00 | | | |
| Total Gross | | | 14423.09 | 238437.13 | | | |

| Taxes | | | |
|---|---|---|---|
| Federal Income Tax | | 3317.31 | 55532.02 |
| Social Security (FICA) | | • | 5394.00 |
| Federal Medicare | | 209.14 | 3414.10 |
| Total | | 3526.45 | 64340.12 |

| PreTax Deductions | | | |
|---|---|---|---|
| Premium Pretax Medical | | • | 2982.07 |
| Total | | 0.00 | 2982.07 |

| AfterTax Deductions | | | |
|---|---|---|---|
| Group Term Life>$50000 Offset | | • | 992.40 |
| Total | | 0.00 | 992.40 |

| Net Pay | | 10896.64 | |
|---|---|---|---|

Garden Ridge Management Inc. - 19411 Atrium Place Houston, TX 77084                    **ProBusiness**

**Exhibit C**

$250,000.00            Houston, Texas          January 1, 2003

     FOR VALUE RECEIVED, DAN FERGUSON, ("Maker") promises to pay to the order of GARDEN RIDGE, L.P. ("Payee"), at 19411 Atrium Place, Suite 170, Houston, Harris County, Texas 77084, or at such other place as the holder of this note may hereafter designate in writing, in immediately available funds and in lawful money of the United States of America, the principal sum of TWO HUNDRED FIFTY THOUSAND AND NO/100($250,000.00). Interest shall accrue on such obligation at [2.75%], per annum. Interest on this obligation shall be computed for the actual number of days elapsed in a year consisting of 365 or 366 days, as the case may be.

     The principal of this note and all accrued and unpaid interest on the principal of this note shall be due and payable on the earlier of (i) thirty (30) days after the closing of the sale of all or any portion of Maker's interest in the real property or improvements thereon located at 3510 Vineyard Hill Drive in Rochester, Michigan; (ii) the date of the termination of Maker's employment with Payee or any of Payee's affiliates for any reason or no reason, regardless of whether such termination occurs by action of Maker or Payee; or (iii) December 31,2003, the earlier of such dates being the final maturity of this note.

     Maker may at any time pay the full amount or any part of this note without payment of any premium or fee. All prepayments shall be applied first to accrued interest, the balance to principal.

     Maker's failure to pay any principal or accrued interest owing on this note when due or the occurrence of any default under any writing related to this note shall constitute default under this note, whereupon the holder of this note may elect to exercise any or all rights, powers and remedies afforded (a) under all writings related to this note and (b) by law, including the right to accelerate the maturity of this entire note.

     If any holder of this note retains an attorney in connection with any such default or to collect, enforce or defend this note or any papers intended to secure or guarantee it in any lawsuit or in any probate, reorganization, bankruptcy or other proceeding, or if Maker sues any holder in connection with this note or any such papers and does not prevail, then Maker agrees to pay to each such holder, in addition to principal and interest, all reasonable costs and expenses incurred by such holder in trying to collect this note or in any such suit or proceeding, including reasonable attorneys' fees. An amount equal to ten percent (10%) of the unpaid principal and accrued interest owing on this note when and if this note is placed in the hands of an attorney for collection after default is stipulated to be reasonable attorneys' fees unless a holder or any maker of this note timely pleads otherwise to a court of competent jurisdiction.

     Maker and any and all co-makers, endorsers, guarantors and sureties severally waive notice (including, but not limited to, notice of intent to accelerate and notice of acceleration,

HOUSTON 914015/00000 477397v3

INITIALLED FOR
INDETIFICATION

Page 1 of 3 Pages

notice of protest and notice of dishonor), demand, presentment for payment, protest, diligence in collecting and the filing of suit for the purpose of fixing liability and consent that the time of payment hereof may be extended and re-extended from time to time without notice to any of them. Each such person agrees that his, her or its liability on or with respect to this note shall not be affected by any release of or change in any guaranty or security at any time existing or by any failure to perfect or maintain perfection of any lien against or security interest in any such security or the partial or complete unenforceability of any guaranty or other surety obligation, in each case in whole or in part, with or without notice and before or after maturity.

Notwithstanding any provision to the contrary contained in this note or any other writing relating to this note, it is expressly provided that in no case or event shall the aggregate of (i) all interest on the unpaid balance of this note, accrued or paid from the date hereof and (ii) the aggregate of any other amounts accrued or paid pursuant to this note or any other writing relating to this note, which under applicable laws are or may be deemed to constitute interest upon the indebtedness evidenced by this note from the date hereof, ever exceed the Ceiling Rate (as hereinafter defined). In this connection, Maker and Payee stipulate and agree that it is their common and overriding intent to contract in strict compliance with applicable usury laws. In furtherance thereof, none of the terms of this note or any other writing relating to this note shall ever be construed to create a contract to pay, as consideration for the use, forbearance or detention of money, interest at a rate in excess of the Ceiling Rate. Maker or other parties now or hereafter becoming liable for payment of the indebtedness evidenced by this note shall never be liable for interest in excess of the Ceiling Rate. If, for any reason whatever, the interest paid or received on this note during its full term produces a rate which exceeds the Ceiling Rate, the holder of this note shall credit against the principal of this note (or, if such indebtedness shall have been paid in full, shall refund to the payor of such interest) such portion of said interest as shall be necessary to cause the interest paid on this note to produce a rate equal to the Ceiling Rate. All sums paid or agreed to be paid to the holder of this note for the use, forbearance or detention of the indebtedness evidenced hereby shall, to the extent permitted by applicable law, be amortized, prorated, allocated and spread in equal parts throughout the full term of this note, so that the interest rate is uniform throughout the full term of this note. The provisions of this paragraph shall control all agreements, whether now or hereafter existing and whether written or oral, between Maker and Payee. As used herein, the term "Ceiling Rate" means, on any day, the maximum nonusurious rate of interest permitted for that day by whichever of applicable federal or Texas laws permits the higher interest rate, stated as a rate per annum. On each day, if any, that applicable Texas law establishes the Ceiling Rate, the Ceiling Rate shall be the "weekly ceiling" (as defined in §303 of the Texas Finance Code — the "*Texas Finance Code*" — and Chapter 1D of Title 79, Texas Rev. Civ. Stats. 1925 — "*Chapter 1D*", as amended, respectively) for that day. Payee may from time to time, as to current and future balances, implement any other ceiling under the Texas Finance Code or Chapter 1D by notice to Maker if and to the extent permitted by the Texas Finance Code or Chapter 1D. Without notice to Maker or any other person or entity, the Ceiling Rate shall automatically fluctuate upward and downward as and in the amount by which such maximum nonusurious rate of interest permitted by applicable law fluctuates. Maker warrants and represents to Payee and all other holders of this note that all loans evidenced by this note are and will be for business, commercial, investment or other similar purpose and not primarily for personal, family, household or agricultural use, as such terms are used in Chapter 1D or the Texas Finance Code.

INITIALLED FOR
INDEFTIFICATION

HOUSTON 01-60|5R0000 4773597v3

This note shall be governed by and construed in accordance with the laws of the State of Texas and the United States of America from time to time in effect. Harris County, Texas shall be a proper place of venue for suit hereon. Maker and any and all co-makers, endorsers, guarantors and sureties irrevocably agree that any legal proceedings in respect of this note or any loan agreement, security agreement, guaranty or other writing relating hereto shall be brought in the district courts of Harris County, Texas, or the United States District Court for the Southern District of Texas, Houston Division.

MAKER

DAN FERGUSON

HOUSTON 0140\500000 477397v0

Page 3 of 3 Pages

INITIALLED FOR
INDETIFICATION

# Exhibit D

NO. 2003-32259

| | | |
|---|---|---|
| ROBERT RANDALL ONSTEAD, JR. | § | IN THE DISTRICT COURT OF |
| AND REBECCA NASH | § | |
| | § | |
| VS. | § | HARRIS COUNTY, T E X A S |
| | § | |
| GARDEN RIDGE MANAGEMENT, INC. | § | |
| AND GARDEN RIDGE, L.P. | § | 189ᵗʰ   JUDICIAL   DISTRICT |

## PLAINTIFFS' FIRST AMENDED ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES ROBERT RANDALL ONSTEAD, JR., REBECCA NASH and DANIEL

FERGUSON hereinafter referred to as Plaintiffs, complaining of GARDEN RIDGE

MANAGEMENT, INC. and GARDEN RIDGE, L.P., hereinafter referred to as Defendants, and for

cause of action would respectfully show unto the Court as follows:

I.

Plaintiff ROBERT RANDALL ONSTEAD, JR. is an individual residing in Houston, Harris

County, Texas.

Plaintiff REBECCA NASH is an individual residing in Fredericksburg, Gillespie County,

Texas.

Plaintiff DANIEL FERGUSON is an individual residing in Katy, Harris County, Texas.

Defendants GARDEN RIDGE MANAGEMENT, INC. and GARDEN RIDGE, L.P. have

been served with process and have filed answers herein.

Discovery should be conducted in accordance with a discovery control plan under Civil

Procedure Rule 190.3.

II.

Venue is proper in this Court pursuant to the Texas Civil Practices and Remedies Code, Section 15.001, in that the entire cause of action accrued in Harris County, Texas.

III.

On the 17th day of October 2003, Plaintiff ROBERT RANDALL ONSTEAD, JR. was formerly offered the position of CEO of Defendants herein and a seat on the Board of Directors. The official offer included a salary of $475,000.00 per year, a signing bonus of $100,000.00 and a termination provision that provides for one year's salary, if terminated other than for cause. This formal offer was accepted and work was commenced pursuant thereto and Plaintiff herein commenced work in October 2002. Plaintiff was terminated without cause in April 2003. The termination of Plaintiff was consistent with the habit or routine practice of Defendants. Plaintiff would show that CEO Paul Davies was terminated in May 2002, CEO John Rice was terminated in October 2002, and CEO ROBERT RANDALL ONSTEAD, JR. was terminated in April 2003.

IV.

The Defendants in the case at bar breached the terms of the employment contract and terminated Plaintiff ROBERT RANDALL ONSTEAD, JR., without cause, and failed and refused, and continue to fail and refuse, to honor the termination provisions of the employment contract made the subject of this suit.

V.

Plaintiff ROBERT RANDALL ONSTEAD, JR. sues for the $100,000.00 signing bonus, which was never paid, $475,000.00 termination payment, which was never paid, and attorneys' fees,

-2-

which were brought about and made necessary as a result of the refusal of the Defendants to honor its agreement.

## VI.

Additionally, Plaintiff ROBERT RANDALL ONSTEAD, JR. alleges that he was fraudulently induced into the contractual arrangement above-referenced and that the Defendants never intended to live up to its representations, but nevertheless represented the terms of the contract as above referenced knowing full well that Plaintiff would rely upon those representations and rely upon them to his detriment, all of which was, in fact, done. Plaintiff herein, therefore, sues, in addition to the compensatory damages above set forth as well as attorneys' fees, for exemplary or punitive damages as an example to others who might be tempted to defraud others.

## VII.

Plaintiff REBECCA NASH was extended an offer to join Defendants' Executive Committee as Senior Vice-President - Marketing. The proffered salary to Plaintiff was $250,000.00 per year together with a $25,000.00 signing bonus. The employment contract also called for a termination provision equal to one year's salary.

## VIII.

Without cause and in breach of its contract with REBECCA NASH, Plaintiff was terminated.

## IX.

Defendants have failed and refused to honor its contract with Plaintiff REBECCA NASH, and continue to fail and refuse to pay the termination benefits promised. As a result thereof, Plaintiff has found it necessary to hire the undersigned attorney to represent her in her controversy with Defendants.

-3-

## X.

Plaintiff REBECCA NASH sues Defendants for the $250,000.00 termination benefits wrongfully withheld together with attorneys' fees and pre-judgment and post-judgment interest.

## XI.

Plaintiff DANIEL FERGUSON was extended an offer to join Defendants' Executive Committee as Senior Vice-President - Supply Chain. The extended offer included a salary of $250,000.00 per year, a relocation provision which included a real estate commission on the sale of his existing home, at the time the offer was accepted, in the amount of $50,000.00 to $60,000.00, and a termination provision equal to one year's salary.

## XII.

Without cause and in breach of its contract with DANIEL FERGUSON, Plaintiff was terminated.

## XIII.

Defendants have failed and refused to honor its contract with Plaintiff DANIEL FERGUSON, and continue to fail and refuse to pay the termination benefits and real estate commission as promised. As a result thereof, Plaintiff has found it necessary to hire the undersigned attorney to represent him in his controversy with Defendants.

## XIV.

Plaintiff DANIEL FERGUSON sues Defendants for the $250,000.00 termination benefits wrongfully withheld, the $50,000.00 to $60,000.00 real estate commission that was never paid, attorneys' fees and pre-judgment and post-judgment interest.

-4-

XV.

It is alleged that the Defendants and its officers conspired to deprive the Plaintiffs herein of their contractual rights and accordingly terminated them without cause.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that upon final trial or hearing of this case, that they have judgment against the Defendants for their actual damages in an amount far in excess of the minimum jurisdictional limits of this Court, exemplary damages, attorneys' fees, costs of Court, pre-judgment and post-judgment interest as allowed by law, and such other and further relief to which Plaintiffs may be justly entitled.

Respectfully submitted,

THE KRIST LAW FIRM, P.C.

By: _____
RONALD D. KRIST
State Bar No. 11727000
One Corporate Plaza
2525 Bay Area Blvd., Suite 410

Houston, Texas 77058
Phone: (281)283-8500
Fax: (281)488-3489

ATTORNEYS FOR PLAINTIFFS

-5-

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served upon Defendants' counsel via certified mail, return receipt requested, on this the 25th day of September, 2003.

Edward L. Friedman
Locke Liddell & Sapp LLP
600 Travis Street, Suite 3400
Houston, Texas 77002

RONALD D. KRIST

-6-

**<u>Exhibit E</u>**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| | ) | |
| Garden Ridge Management, Inc., | ) | Case No. 04-10323 (LHK) |
| | ) | |
| Debtor. | ) | |
| | ) | |

### DECLARATION CONCERNING DEBTOR'S SCHEDULES

I, Armand Shapiro, Chief Executive Officer of Garden Ridge Management, Inc., a Delaware corporation, declare under penalty of perjury that I have read the foregoing summary of schedules consisting of _68_ sheets, and that they are true and correct to the best of my knowledge, information and belief.

This _16_ day of February, 2004.          GARDEN RIDGE MANAGEMENT, INC.,
a Delaware corporation


Armand Shapiro
Chief Executive Officer
19411 Atrium Place, Suite 170
Houston, TX 77084

# SCHEDULE E
## CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

### See Schedule E attached

**Note: Pursuant to an order of the United States Bankruptcy Court dated February 4, 2006, the Debtor was authorized to pay all amounts listed on the attached Schedule E in the ordinary course of business. As of February 6, 2004, all such amounts have been paid.**

| Name | Address | Suite | City | State | Zip | Amount |
|---|---|---|---|---|---|---|
| FELAN, ERIC | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 328.52 |
| FELICE, DONNA | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 1,008.26 |
| FELICE, LOIS | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 310.89 |
| FELLINGER, CHRISTINA | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 358.44 |
| FELTON, ROBERT | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 82.88 |
| FEREGRINO, CARMEN | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 301.37 |
| FERGUSON, CARLA | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 340.66 |
| FERGUSON, DANIEL | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | UNKNOWN |
| FERNANDEZ, CRISTIAN | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 221.79 |
| FERNANDEZ, HUGO | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 130.48 |
| FERNANDEZ, JOSE | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 16.00 |
| FERNANDEZ, JUDITH | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 674.23 |
| FERNANDEZ, MARILYN | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 218.47 |
| FERNANDO, DAMIEN | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 772.38 |
| FERRARA, REBECCA | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 164.88 |
| FERREA, ALFIO | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 885.58 |
| FERRELL, CHRISTOPHER | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 137.97 |
| FERRELL, KRISTIE | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 169.88 |
| FETHERSON, PERNELL | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 76.28 |
| FICKLIN, CANDACE | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 88.57 |
| FIELD, JOEY | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 103.39 |
| FIELDS, MICHELLE | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 768.31 |
| FIELDS, TAMMY | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 93.90 |
| FIFE, REBECCA | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 25.33 |
| FINCHER, CINDY | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 418.29 |
| FINE, MICHAEL | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 13.86 |
| FINNEY, ARMO | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 266.18 |
| FINNEY, KAREN | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 387.20 |
| FISHER, DAPHINE | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 417.73 |
| FISHER, DONNA | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 783.46 |
| FISHER, KIMBERLY | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 143.37 |
| FISHER, THOMAS | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 1,371.00 |
| FITCH, RICKY | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 136.28 |
| FITZMAURICE, JANET | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 282.44 |
| FIUTEM, JENNIFER | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 149.70 |
| FLAUM, ELLIOT | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 1,449.85 |
| FLETCHER, LOUISA | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 621.07 |
| FLORENCE, KAYLA | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 107.65 |
| FLORES, BERTHA | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 495.25 |
| FLORES, JOE | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 67.98 |
| FLORES, NORMA | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 472.29 |
| FLORES, OSCAR | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 481.28 |
| FLORES, PABLO | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 328.52 |
| FLORES, ROSA | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 647.50 |
| FLORES, SANDRA | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 292.19 |
| FLORES, SHERRY | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 1,457.46 |
| FLORES, TONY | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 149.91 |
| FLORES, VERONICA | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 351.19 |
| FLOWE, KRISTEN | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 239.96 |
| FLOWE, SHERRY | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 750.06 |
| FLOWERS, TERRANCE | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 61.35 |
| FLYNN, KENNETH | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 150.49 |
| FOLTZ, JAMES | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 330.81 |
| FONTENOT, JENNIFER | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 104.61 |
| FORBUS, JERRY | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 267.13 |
| FORD, MICHAEL | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 372.28 |
| FORNIAS, ADRIAN | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 268.95 |
| FORSHEY, KAREN | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 415.31 |
| FOSTER, DELTRA | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 29.13 |
| FOSTER, DEVON | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 168.36 |
| FOSTER, MARIE | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 137.38 |
| FOSTER, RONALD | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 520.77 |
| FOURNIER, JAMES | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 111.23 |
| FOUSER, JUSTIN | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 186.15 |
| FOX, DANNA | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 312.17 |
| FOX, SASHA | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 162.70 |
| FRAIRE, SANDRA | 19411 Atrium Placu | Suite 170 | HOUSTON | TX | 77084 | 124.39 |
| FRANCAVILLA, SANDRA | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 186.60 |
| FRANK, STRATTON | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 208.05 |
| FRANKLIN, BONNIE | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 663.66 |
| FRANKLIN, ELIZABETH | 19411 Atrium Place | Suite 170 | HOUSTON | TX | 77084 | 64.73 |

**<u>Exhibit F</u>**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| | ) | |
| Garden Ridge, L.P., | ) | Case No. 04-10327 (LHK) |
| | ) | |
| Debtor. | ) | |
| | ) | |

## DECLARATION CONCERNING DEBTOR'S SCHEDULES

I, Armand Shapiro, Chief Executive Officer of Garden Ridge Management, Inc., the General Partner of Garden Ridge, L.P., a Texas limited partnership, declare under penalty of perjury that I have read the foregoing summary of schedules consisting of _80_ sheets, and that they are true and correct to the best of my knowledge, information and belief.

This _16_ day of February, 2004.

GARDEN RIDGE, L.P.
a Texas Limited Partnership

Armand Shapiro
Chief Executive Officer
Garden Ridge Management, Inc.
19411 Atrium Place, Suite 170
Houston, TX 77084

WP3:973553 1                                                62883 1001

| | Type Of Property | Description And Location of Property | Husband, Wife, Joint Or Community | Current Market Value of Debtor's Interest In Property Without Deducting Any Secured Claim Or Exemption |
|---|---|---|---|---|
| 14. | Government and corporate bonds and other negotiable and non-negotiable instruments. | None | - | -0- |
| 15. | Accounts Receivable. | See attached Schedule B-15 | - | $3,145,585 |
| 16 | Alimony, maintenance, support and property settlements to which the debtor is or may be entitled. Give particulars. | None | - | -0- |
| 17. | Other liquidated debts owing debtor including tax refunds. Give details. | None | - | -0- |
| 18. | Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in the Schedule of Real Property. | None | - | -0- |
| 19 | Contingent and non-contingent interest in estate of a decedent, death benefit plan, life insurance policy, or trust. | None | - | -0- |
| 20. | Other contingent and unliquidated claims of any nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | None | - | -0- |
| 21 | Patents, copyrights, and other intellectual property. Give estimated value of each. | None | | -0- |
| 22 | Licenses, franchises, and other general intangibles. Give particulars. | None | | -0- |
| 23. | Automobiles, trucks, trailers, and other vehicles and accessories. | None | | -0- |
| 24. | Boats, motors, and accessories. | None | | -0- |
| 25. | Aircraft and accessories. | None | | -0- |
| 26. | Office equipment, furnishings, and supplies | Computers, printers, copiers, registers, office furniture located at 44 stores, 2 dist centers and corp office, net of accumulated depreciation, but excluding any reserves related to store/DC closings. | | $19,735,519 |

**Sched B-16**
**Accounts Receivable**

| | | |
|---|---:|---|
| Amex | 129,595.00 | * |
| Discover | 984,669.00 | * |
| Mastercard/Visa | 591,839.00 | * |
| Garden Ridge Card | 163,312.00 | * |
| Employee Advance | 74,728.00 | |
| Armand Shapiro | 750,000.00 | |
| Dan Ferguson | 250,000.00 | |
| BA Framer | 162,000.00 | |
| Bad Check Debt Receivable | 3,000.00 | |
| Allegaert/AIG | 20,144.07 | |
| American Rug | 16,197.60 | |
| Wilton Overpament | 99.98 | |
| | 3,145,584.55 | |

*Amounts represent credit card sales for the days 1/22/04 thru 1/24/04
which were settled 1/26/04–1/28/04



Schedule F-2
Creditors Holding Unsecured Non-priority Claims

| Vendor | Address 1 | Address 2 | City | State | Zip | Contingent Unliquidated Disputed ("C"/"U"/"D") | Amount Owed |
|---|---|---|---|---|---|---|---|
| **Employment Contracts** | | | | | | | |
| Jane Adsulhook | 13912 Heston | | Heston | TX | 77016 | CUD | $312,761.00 |
| Harold Colby | 28618 Laguna Edge Dr | | Katy | TX | 77494 | CUD | $134,516.27 |
| Paul Damon | 2165 Golf of Mexico Dr | | Longboat Key | FL | 34228 | CUD | $0.00 |
| Charles Dancy | 18019 Yukon CT | | Katy | TX | 77084 | CUD | $230,854.57 |
| Calvin Elder | 3319 Rosette Dr | | Sugarland | TX | 72479 | CUD | $0.00 |
| Daniel Ferguson | 4282 Casey Isle CT | | Katy | TX | 77450 | CUD | $240,207.62 |
| Barbara Horn | 311 South Gate Stone | | Houston | TX | 77007 | CUD | $200,787.62 |
| David Handley | 14223 Summer Rose Ln | | Houston | TX | 77007 | CUD | $110,274.71 |
| Jack Lewis | 74 Solar Falcon Ln | | Houston | TX | 77007 | CUD | $235,290.57 |
| Jose Maclin | 6805 Red Motorway Way | | Dublin | OH | 43016 | CUD | $163,652.35 |
| Jerry McBissett | 2405 S. Mason Rd | | Houston | TX | 77450 | CUD | $584,228.38 |
| Rebecca Neal | 5070 Old Kerr Rd | | Fredericksburg | TX | 78624 | CUD | $240,207.62 |
| Richard Nemard | 1618 Warrior Pk Dr | | Houston | TX | 77094 | CUD | $252,218.00 |
| R Randall Olmstead | 11641 Bianca Ln | | Houston | TX | 77008 | CUD | $552,477.53 |
| John Pits | 24 La Jolla Circle | | Montgomery | TX | 77355 | CUD | $0.00 |
| Joe Rollins | 11711 Glade River Lane | | Tomball | TX | 77377 | CUD | $0.00 |
| H Glenn Rutherford | 19123 Foxbow LN | | Houston | TX | 77094 | CUD | $27,594.94 |
| Renae Scott | 889 Wilke Run Ct | | Rowell | GA | 30075 | CUD | $0.00 |
| Susan Weiker | 1111 Creston Blvd | | Key Biscayne | FL | 33149 | CUD | $0.00 |
| | | | | | | | 3,672,023.59 |

**Exhibit G**

B10 (Official)

| ... ... ... of Delaware | PROOF OF CLAIM |
|---|---|

In re: **Garden Ridge, Corp.**     Case Number: **04-10324**

NOTE: This claim  ... ould not be used to make a claim for an administrative expense arising after the commencement of the case.
A "request" for payme  of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| Creditor Name (Person or entity to whom debtor owes) | **Daniel Ferguson** |
|---|---|
| Address Line 1 | c/o William D. Sullivan, Esq. |
| Address Line 2 | 300 Delaware Ave, Suite 1700 |
| Address Line 3 | P.O. Box 1630 |
| City, ST ZIP | Wilmington, DE 19899-1630 |

☐ Check box if you  re aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

THIS SPACE IS FOR COURT USE ONLY

ACCOUNT OR OTHER NUMBER BY WHICH CREDITOR IDENTIFIES DEBTOR:

Check here if this claim ☐ replaces   ☐ amends   a previously filed claim dated:

**1. BASIS FOR CLAIM**
☐ Goods sold
☐ Services performed
☐ Money loaned
☐ Personal injury/wrongful death
☐ Taxes
☒ Other (Describe briefly) **Breach of Contract**
☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensation (Fill out below)
Your social security No.
Unpaid compensation for service  s performed
from _____ (date) to _____ (date)

2. Date Debt Incurred (MM/DD/YY)

3. If Court Judgment, Date Obtained:

**4. CLASSIFICATION OF CLAIM.** Under the Bankruptcy Code all claims are classified as one or more of the following: (1) Unsecured nonpriority, (2) Unsecured Priority, (3) Secured. It is possible for part of a claim to be in one category and part in another. CHECK THE APPROPRIATE BOX OR BOXES  that best describe your claim and STATE THE AMOUNT OF THE CLAIM AT TIME  ASE FILED.

☐ SECURED CLAIM
Attach evidence of perfection of security interest.
Brief Description of Collateral:
☐ Real Estate   ☐ Motor Vehicle   ☐ Other (Describe briefly)
Amount of arrearage  and other charges as their case filed included in secured claim above, if any

☒ UNSECURED NONPRIORITY CLAIM
A claim is unsecured if there is no collateral or lien on property of the debtor securing the claim or to the extent that the value of such property is less than the amount of the claim.

☐ UNSECURED PRIORITY CLAIM - Specify the priority of the claim.
☐ Wages, salaries, or commissions (up to $4,650), earned not more than 90 days before the filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3)
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4)
☐ Up to $4,650 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6)
☐ Taxes or penalties of governmental units - 11 U.S.C. § 507 (a)(7)
☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)

**5. AMOUNT OF CLAIM AT TIME CASE FILED:**

| (Secured) | (Unsecured Nonpriority) | (Unsecured Priority) |
|---|---|---|
|  | $ 3 1 0 0 0 0 0 0 |  |

☐ Check this box if claim includes charges in addition to the principal amount of the claim. Attach itemized statement of all additional charges.

6. CREDITS AND SETOFFS: The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. In filing this  laim, claimant has deducted all amounts that claimant owes to debtor.

7. SUPPORTING DOCUMENTS: Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, or evidence of security interests. If the documents are not available, explain. If the documents are voluminous, attach a summary.     **See summary**

8. TIME-STAMPED COPY: To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

Date: **4/12/04**     Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any)     **Daniel Ferguson**     _[signature]_

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both, 18 U.S.C. §§ 152 and 3571.

RECEIVED   APR  6

THE ALTMAN GROUP, INC.

GARDEN RIDGE CORPORATION, ET AL.
Case No. 04-10324 (LHK)
Claim 01068

# ELZUFON AUSTIN REARDON
# TARLOV & MONDELL, P.A. _____ ATTORNEYS & COUNSELORS AT LAW

JOHN A. ELZUFON    ROGER L. TRUEMPER
JEFFREY M. AUSTIN    CHARLES J. BROWN, III
MARK L. REARDON    SCOTT A. SIMPSON
EDWARD A. TARLOV    CHRISTIAN G. MCGARRY
SCOTT R. MONDELL    DIANE M. ANDREWS
WILLIAM D. SULLIVAN    JOSEPH F. GULA, III
H. GARRETT BAKER    KATHRYN E. LEE
ROBERT H. RICHTER    DANIEL F. TYRRELL, JR.
COLLEEN D. SHIELDS    JENNIFER A. KAPES

300 DELAWARE AVENUE
SUITE 1700, P.O. BOX 1630
WILMINGTON, DELAWARE, 19899-1630
PHONE: 302.428.3181
FACSIMILE: 302.428.3180
INTERNET: WWW.ELZUFON.COM
WRITERS E-MAIL:MYOUNG@ELZUFON.COM

April 15, 2004

Garden Ridge Corporation
c/o The Altman Group
60 East 42nd Street
Suite 405
New York, NY  10165

> RE:   **GARDEN RIDGE**
>       **(Various Claims)**
>       **EART&M File No.: 221056-14404**

Dear Sir/Madam:

Enclosed you will find four Proofs of Claim for the above-referenced matter. Please forward a stamped copy of each claim in the self-addressed stamped envelope provided for your convenience.

Very truly yours,

Michael P. Young

MPY/dmg
Enclosure

122748.DOC

## SUMMARY OF THE PROOF OF CLAIM OF DANIEL FERGUSON

Daniel Ferguson files this proof of claim based on the breach of a written contract of employment (the "Contract") existing between Mr. Ferguson and Garden Ridge. The Contract provides for the payment of one year of base salary, $250,000.00, if Mr. Ferguson is terminated without cause. Mr. Ferguson was terminated without cause. Garden Ridge has failed to make any severance payments as required under the contract, attached as Exhibit A.

The Contract further provides for the payment of relocation costs, including real estate commissions, under the Contract's relocation provision. Garden Ridge has failed to pay relocation costs as provided. The amount owed is approximately $60,000.00.

These claims are the subject of a lawsuit pending in Harris County, TX, attached as Exhibit B.

These claims are also subject to a setoff of $250,000.00 owed to Garden Ridge pursuant to a promissory note dated January 1, 2003.

# EXHIBIT A



January 26, 2001

Dear Dan,

It is with great pleasure that I extend to you our offer to join Garden Ridge's Executive Committee as **Senior Vice President – Supply Chain.** You will report directly to Richard Nawrot, EVP – Information Technology & Logistics. We have a tremendous personal and financial opportunity for you here at Garden Ridge and feel that you will make an excellent addition to our management team.

The details of your offer include:

**SALARY**
- Your initial **base salary will be $240,000 per year,** payable bi-weekly. Your first consideration for salary review will take place in March 2002.

**Bonus**
- You will be eligible for our FY 2002 (2/1/01 – 1/31/02) bonus plan.
- You will be eligible to earn a **bonus target of 50% on your base salary** based on the total company meeting its financial plans. If we exceed plan, the **bonus is uncapped** and you could make up to 100% of your base salary. Bonus payments normally occur in April of each year.

**Stock Options**
- Upon hire, we will recommend that the Stock Option Committee of the Board of Directors grant you a **stock option of 25,000 shares of Garden Ridge Stock.** One-third of these shares vest after one year of employment and the remaining two-thirds vest evenly on the second and third anniversary of your initial grant, with ten years being the life of the plan. The stock option strike price will be set no later than our June Board Meeting. However, your vesting will commence on the first of the month following your date of hire.
- Since we are private, our stock will be valued annually. The valuation will approximate the public price of the stock as if it were on the open market.
- Three unique features of our stock plan that differentiate us are:
  1. Stock can be sold at any time. **No blackout periods.**
  2. Employee sales of stock are offered to other plan participants first. That is, **you can buy more stock than granted if others sell their shares.** The company will buy back shares not acquired by employees not to exceed 3% annually.
  3. If we meet our **financial plans** the options have an **acceleration of vesting** change. The options vest 6 months earlier for meeting plan. If we meet plan 2 years in a row, all options are vested in 2 years versus the 3 years as granted.

19411 Atrium Place, Suite 170     Houston, TX 77084-6099     (281) 579-7901

## RELOCATION

- Garden Ridge will arrange for and cover the costs of the packing and transporting and reasonable storage time, if necessary, of your household goods.
- We will cover closing costs, including customary real estate commissions up to 6% maximum on the sale of your existing home. We will also cover closing costs on the purchase of your new home; however, hazard insurance, deposits and other prepaid expenses associated with the sale of your existing home and the purchase of your new home are excluded.
  (Policy details attached)
- If necessary, you will also be provided with interim living assistance for up to 90 days.
- Garden Ridge will cover travel expenses incurred for the relocation to Houston prior to the moving of household goods, and will allow up to two weekend trips, with airfare, motel and rental car expenses covered to search for permanent housing.
- Garden Ridge will gross up applicable non-deductible relocation expenses.

## VACATION

- You will be eligible for 3 weeks of vacation your first year.

## HEALTH INSURANCE

- You and your eligible dependents will be eligible to participate in Garden Ridge's Group Health Plan (including basic term life insurance) after 90 days of service. Coverage will not begin until Corporate Benefits and Compensation receives the appropriate completed enrollment forms.

## EXECUTIVE BENEFITS

- You will also be eligible for a supplemental executive medical plan that covers up to $10,000 annually. It will cover expenses that are not generally covered in the basic plan, such as co-pays, eyeglasses, etc.
- You will have the opportunity to purchase additional executive life insurance beyond the basic plan.

## OTHER BENEFITS

- Dental Insurance
- Vision Insurance
- 401K Plan (After eligibility requirements are met)

- Long Term Disability
- Short Term Disability
- Paid Holidays
- Associate Discount

## SEVERENCE

- If released without cause, you will receive one year of base salary.

**PLEASE NOTE**
- In accordance with company policy, an officer who voluntarily terminates employment with the company for any reason within 24 months of the date of employment or transfer will be required to repay to the company within 30 days following such termination, the costs associated with relocation.

This is an exciting time in our business. You would be "coming in on the ground floor". We are certain you will find that Garden Ridge will live up to your expectations and provide a rewarding and challenging step in your career.

Sincerely,

Paul T. Davies
President & Chief Executive Officer

Richard Nawrot
EVP – Information Technology & Logistics

[Please indicate your agreement to the above by signing and dating below and returning this to me via fax at (281) 646-0818 or by mail at 19411 Atrium Place, Suite 170, Houston, Texas 77084. Contact me at (281) 579-7901 ext. 204 confidentially prior to sending a fax.]

**AGREED AND ACCEPTED:**

_____
Name

1/28/01
_____
Date

# **EXHIBIT B**

NO. 2003-32259

| | | |
|---|---|---|
| ROBERT RANDALL ONSTEAD, JR. | § | IN THE DISTRICT COURT OF |
| AND REBECCA NASH | § | |
| | § | |
| VS. | § | HARRIS COUNTY, T E X A S |
| | § | |
| GARDEN RIDGE MANAGEMENT, INC. | § | |
| AND GARDEN RIDGE, L.P. | § | 189th   JUDICIAL   DISTRICT |

## PLAINTIFFS' FIRST AMENDED ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES ROBERT RANDALL ONSTEAD, JR., REBECCA NASH and DANIEL FERGUSON hereinafter referred to as Plaintiffs, complaining of GARDEN RIDGE MANAGEMENT, INC. and GARDEN RIDGE, L.P., hereinafter referred to as Defendants, and for cause of action would respectfully show unto the Court as follows:

I.

Plaintiff ROBERT RANDALL ONSTEAD, JR. is an individual residing in Houston, Harris County, Texas.

Plaintiff REBECCA NASH is an individual residing in Fredericksburg, Gillespie County, Texas.

Plaintiff DANIEL FERGUSON is an individual residing in Katy, Harris County, Texas.

Defendants GARDEN RIDGE MANAGEMENT, INC. and GARDEN RIDGE, L.P. have been served with process and have filed answers herein.

Discovery should be conducted in accordance with a discovery control plan under Civil Procedure Rule 190.3.

II.

Venue is proper in this Court pursuant to the Texas Civil Practices and Remedies Code, Section 15.001, in that the entire cause of action accrued in Harris County, Texas.

III.

On the 17th day of October 2003, Plaintiff ROBERT RANDALL ONSTEAD, JR. was formerly offered the position of CEO of Defendants herein and a seat on the Board of Directors. The official offer included a salary of $475,000.00 per year, a signing bonus of $100,000.00 and a termination provision that provides for one year's salary, if terminated other than for cause. This formal offer was accepted and work was commenced pursuant thereto and Plaintiff herein commenced work in October 2002. Plaintiff was terminated without cause in April 2003. The termination of Plaintiff was consistent with the habit or routine practice of Defendants. Plaintiff would show that CEO Paul Davies was terminated in May 2002, CEO John Rice was terminated in October 2002, and CEO ROBERT RANDALL ONSTEAD, JR. was terminated in April 2003.

IV.

The Defendants in the case at bar breached the terms of the employment contract and terminated Plaintiff ROBERT RANDALL ONSTEAD, JR., without cause, and failed and refused, and continue to fail and refuse, to honor the termination provisions of the employment contract made the subject of this suit.

V.

Plaintiff ROBERT RANDALL ONSTEAD, JR. sues for the $100,000.00 signing bonus, which was never paid, $475,000.00 termination payment, which was never paid, and attorneys' fees,

which were brought about and made necessary as a result of the refusal of the Defendants to honor its agreement.

## VI.

Additionally, Plaintiff ROBERT RANDALL ONSTEAD, JR. alleges that he was fraudulently induced into the contractual arrangement above-referenced and that the Defendants never intended to live up to its representations, but nevertheless represented the terms of the contract as above referenced knowing full well that Plaintiff would rely upon those representations and rely upon them to his detriment, all of which was, in fact, done. Plaintiff herein, therefore, sues, in addition to the compensatory damages above set forth as well as attorneys' fees, for exemplary or punitive damages as an example to others who might be tempted to defraud others.

## VII.

Plaintiff REBECCA NASH was extended an offer to join Defendants' Executive Committee as Senior Vice-President - Marketing. The proffered salary to Plaintiff was $250,000.00 per year together with a $25,000.00 signing bonus. The employment contract also called for a termination provision equal to one year's salary.

## VIII.

Without cause and in breach of its contract with REBECCA NASH, Plaintiff was terminated.

## IX.

Defendants have failed and refused to honor its contract with Plaintiff REBECCA NASH, and continue to fail and refuse to pay the termination benefits promised. As a result thereof, Plaintiff has found it necessary to hire the undersigned attorney to represent her in her controversy with Defendants.

-3-

**X.**

Plaintiff REBECCA NASH sues Defendants for the $250,000.00 termination benefits wrongfully withheld together with attorneys' fees and pre-judgment and post-judgment interest.

**XI.**

Plaintiff DANIEL FERGUSON was extended an offer to join Defendants' Executive Committee as Senior Vice-President - Supply Chain. The extended offer included a salary of $250,000.00 per year, a relocation provision which included a real estate commission on the sale of his existing home, at the time the offer was accepted, in the amount of $50,000.00 to $60,000.00, and a termination provision equal to one year's salary.

**XII.**

Without cause and in breach of its contract with DANIEL FERGUSON, Plaintiff was terminated.

**XIII.**

Defendants have failed and refused to honor its contract with Plaintiff DANIEL FERGUSON, and continue to fail and refuse to pay the termination benefits and real estate commission as promised. As a result thereof, Plaintiff has found it necessary to hire the undersigned attorney to represent him in his controversy with Defendants.

**XIV.**

Plaintiff DANIEL FERGUSON sues Defendants for the $250,000.00 termination benefits wrongfully withheld, the $50,000.00 to $60,000.00 real estate commission that was never paid, attorneys' fees and pre-judgment and post-judgment interest.

-4-

---

## XV.

It is alleged that the Defendants and its officers conspired to deprive the Plaintiffs herein of their contractual rights and accordingly terminated them without cause.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that upon final trial or hearing of this case, that they have judgment against the Defendants for their actual damages in an amount far in excess of the minimum jurisdictional limits of this Court, exemplary damages, attorneys' fees, costs of Court, pre-judgment and post-judgment interest as allowed by law, and, such other and further relief to which Plaintiffs may be justly entitled.

Respectfully submitted,

THE KRIST LAW FIRM, P.C.

By: _____
RONALD D. KRIST
State Bar No. 11727000
One Corporate Plaza
2525 Bay Area Blvd., Suite 410

Houston, Texas 77058
Phone: (281)283-8500
Fax: (281)488-3489

ATTORNEYS FOR PLAINTIFFS

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GARDEN RIDGE CORPORATION, | ) | Case No. 04-10324 (RB) |
| *et al.,* | ) | |
| Debtors. | ) | (Jointly Administered) |

### AFFIDAVIT OF SERVICE

| | |
|---|---|
| STATE OF DELAWARE | ) |
| | ) SS |
| NEW CASTLE COUNTY | ) |

       Thomas J. Hartzell, being duly sworn according to law, deposes and says that he is employed by the law firm of Young Conaway Stargatt & Taylor, LLP, attorneys for the Debtors in the within captioned matter, and that on the 10th day of June 2005, he caused a copy of the attached pleading to be served, as indicated, on the parties on the attached service list.

                                              Thomas J. Hartzell

SWORN TO AND SUBSCRIBED before me this _10th_ day of June 2005.

                                  Notary Public

ANGELA M. COLSON
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires Aug. 31, 2007

**SERVICE LIST**
**Garden Ridge Corporation**
**6/10/2005**

Jenette Barrow-Bosshart, Esq.
Scott Hazan, Esq.
Otterbourg Steindler Houston & Rosen, P.C.
230 Park Avenue
New York, NY 10169
(Co-counsel for the Unsecured Creditors' Committee)
*First Class Mail*

Richard S. Cobb, Esq.
Jamie L. Edmonson, Esq.
Landis Rath & Cobb LLP
919 Market Street, Suite 600
P.O. Box 2087
Wilmington, DE 19899
Co-counsel for Bank of America, N.A.
*Hand Delivery*

Garden Ridge Corporation
Attn: Donald Martin, CFO
19411 Atrium Place, Suite 170
Houston, TX 77084
(Debtor)
*First Class Mail*

Alan W. Kornberg, Esq.
Diane Meyers, Esq.
Paul Weiss Rifkind Wharton & Garrison
1285 Avenue of the Americas
New York, NY 10019-6064
(Co-counsel for the Debtors)
*First Class Mail*

Thomas G. Macauley, Esq.
Zuckerman Spaeder LLP
919 Market Street, Suite 1705
PO Box 1028
Wilmington, DE 19899
(Co-counsel to Allied Capital Corporation)
*Hand Delivery*

Office of the United States Trustee
Attn: David Klauder, Esq.
844 King Street, Suite 2313
Lock Box 35
Wilmington, DE 19801
*Hand Delivery*

George R. Pitts, Esq.
Emanuel Faust, Jr., Esq.
George R. Pitts, Esq.
Dickstein Shapiro Morin & Oshinsky
2101 L Street, N.W.
Washington, DC 20037-1526
(Co-counsel for Allied Capital)
*First Class Mail*

David B. Stratton, Esq.
James Carignan, Esq.
Pepper Hamilton LLP
1313 Market Street, Hercules Plaza, Suite 5100
PO Box 1709
Wilmington, DE 19899-1709
(Co-counsel for the Unsecured Creditors' Committee)
*Hand Delivery*

William D. Sullivan, Esq.
Buchanan Ingersoll, P.C.
The Nemours Building
1007 N. Orange Street, Suite 1110
Wilmington, DE 19801
(Counsel for Daniel Ferguson)
*Hand Delivery*

Vernon Teofan, Esq.
Larry Chek, Esq.
Jenkens & Gilchrist
1445 Ross Avenue, Suite 3200
Dallas, TX 75202-2799
(Co-counsel for Bank of America)
*First Class Mail*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GARDEN RIDGE CORPORATION, *et al.*, | ) | Case No. 04-10324 (KJC) |
| | ) | |
| Debtors. | ) | |
| | ) | (Jointly Administered) |
| | ) | |
| _____ | ) | |
| | ) | |
| GARDEN RIDGE, L.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06-516 (GMS) |
| | ) | |
| DANIEL FERGUSON, | ) | |
| | ) | |
| Defendant. | ) | |

### CERTIFICATE OF SERVICE

I, William D. Sullivan, Esquire, do hereby certify that a true and correct copy of the *Defendant's Answering Brief in Opposition to Plaintiff's Motion for Partial Summary Judgment* was served upon the following via hand-delivery:

Joseph Michael Barry, Esquire
Young Conaway Stargatt & Taylor LLP
1000 West Street, 17th Floor
Wilmington, DE 19801

Date:    December 7, 2006

*/s/ William D. Sullivan*
William D. Sullivan