IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GARDEN RIDGE CORPORATION, *et al.*, | ) | Case No. 04-10324 (KJC) |
| | ) | |
| Debtors. | ) | |
| | ) | (Jointly Administered) |
| | ) | |
| _____ | ) | |
| GARDEN RIDGE, L.P., | ) | |
| | ) | Civil Action No. 06-516 (GMS) |
| Plaintiff, | ) | |
| | ) | |
| -against- | ) | |
| | ) | |
| DANIEL FERGUSON, | ) | |
| | ) | |
| Defendant. | ) | |

**SUPPLEMENTAL AFFIDAVIT OF JOSEPH M. BARRY IN SUPPORT OF PLAINTIFF
GARDEN RIDGE, L.P.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | ss: |
| COUNTY OF NEW CASTLE | ) | |

Joseph M. Barry, being duly sworn, deposes and says:

1.    I am an associate with the firm Young Conaway Stargatt & Taylor, LLP, counsel for the plaintiff Garden Ridge, L.P. (the "Plaintiff") in the above-captioned action. This supplemental affidavit is submitted in support of the Plaintiff's *Reply Brief in Support of Plaintiff's Motion for Partial Summary Judgment* filed contemporaneously herewith.

2.    Annexed hereto are true and correct copies of the following documents:

Exhibit L:    *Reply of Daniel Ferguson in Support of His Motion for Relief from the Automatic Stay Under § 362(d)(1) of the Bankruptcy Code to the Extent Necessary to Set Off Mutual Debts* (without exhibits) filed in the Bankruptcy Court[1] by Daniel Ferguson on June 22, 2005;

_____

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plaintiff's Opening Brief in Support of Plaintiff's Motion for Partial Summary Judgment filed on November 17, 2006.

Exhibit M:    *Movant Daniel Ferguson's Post-Hearing Brief* filed in the Bankruptcy Court[2] by Daniel Ferguson on November 30, 2005.

Dated: December 14, 2006
       Wilmington, Delaware

Joseph M. Barry

Sworn to before me
this 14th day of December, 2006

ANGELA M. COLSON
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires Aug. 31, 2007

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plaintiff's Opening Brief in Support of Plaintiff's Motion for Partial Summary Judgment filed on November 17, 2006.

2

# Exhibit L

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | |
| | : | **Chapter 11** |
| | : | |
| **GARDEN RIDGE CORPORATION** | : | **Case No. 04-10324 (DDS)** |
| et al., | : | |
| | : | **Jointly Administered** |
| | : | |
| **Debtors.** | : | **Hearing Date:  TBD** |
| | : | |

**REPLY OF DANIEL FERGUSON IN SUPPORT OF HIS MOTION FOR RELIEF
FROM THE AUTOMATIC STAY UNDER §362(d)(1) OF THE BANKRUPTCY CODE
TO THE EXTENT NECESSARY TO SET OFF MUTUAL DEBTS**

Daniel Ferguson (hereafter, "Ferguson") hereby replies to the Reorganized Debtors'

Objection To Motion Of Daniel Ferguson For Relief From The Automatic Stay Under §

362(d)(1) Of The Bankruptcy Code To The Extent Necessary To Set Off Mutual Debts [D.I.

1735] ("Objection"), and avers as follows:

## BACKGROUND

1.      On April 13, 2005, Mr. Ferguson filed the Motion Of Daniel Ferguson For Relief

From The Automatic Stay Under §362(d)(1) Of The Bankruptcy Code To The Extent Necessary

To Set Off Mutual Debts [D.I. 1518] ("Motion").  The Motion requests that the Court grant him

relief from the stay to the extent necessary to accomplish a set-off of the claims he holds against

the above-captioned consolidated debtors ("Debtors") under an employment agreement against

an outstanding note made to the Debtors, also arising in relation to his employment agreement.

2.      Prior to the petition date, Mr. Ferguson was employed as the Debtors' "Senior

Vice-President - Supply Chain" pursuant to a letter agreement ("Agreement") setting out the

terms of Mr. Ferguson's employment and the various benefits to which he was to be entitled.

(The Agreement is part of Exhibit A to the Motion.)  Mr. Ferguson's employment was terminated

on September 12, 2003.[1]  Mr. Ferguson has asserted a $310,000.00 claim against the Debtors. (Motion, Ex. A)  The claim seeks payment of relocation costs, including up to a 6% real estate commission on the sale of Mr. Ferguson's existing home ($60,000), as well as a year of base salary ($250,000) due as a termination benefit under the Agreement.

      3.     In connection with his relocation to Houston, and as a result of delays in the sale of his home not anticipated when the Agreement was executed, the Debtors advanced $250,000 to Mr. Ferguson ("Loan"), secured by a note ("Note") to permit him to purchase a home in Houston.  The Note, by its terms, was payable 30 days after the closing of the sale of his Michigan residence, or at the end of the calendar year.  Given that Mr. Ferguson's residence in Michigan remained unsold, the Note was renewed annually prior to the petition date.

      4.     On June 10, 2005, the Debtors filed their Objection to the Motion.  The Objection asserts primarily that the relief requested by Mr. Ferguson would constitute an impermissible triangular setoff because, according to the Debtors, Mr. Ferguson was employed by Debtor Garden Ridge Management, Inc. ("GRM") but executed the Note in favor of Debtor Garden Ridge, L.P. ("LP")

      5.     The Debtors' analysis of these transactions is incorrect, and should be overruled, for the following reasons.  (1) No triangular setoff exists in this case because GRM alone was not Mr. Ferguson's employer: rather, the Debtors acted as a single entity in employing him.  (2) Even were the Debtors correct that GRM was Mr. Ferguson's employer, the substantive consolidation provisions of their confirmed plan clearly act to "unify" Ferguson's claims and liabilities in relation to the Debtors.  (3) Finally, even if Mr. Ferguson was requesting a triangular setoff, such a setoff in this situation is permissible under a recognized exception applicable where the parties

---

[1] The parties to this contested matter disagree on the issue of whether Mr. Ferguson's termination was for cause, an issue that they have agreed to address separately once the right to set-off is determined.

contemporaneously agree to treat separate entities as one and the same. The Court should, therefore, overrule the Debtors' Objection and enter an order allowing Mr. Ferguson set-off and a deficiency claim.

## I.    NO TRIANGULAR SETOFF EXISTS

6.    In order to establish entitlement to set off, the proponent must establish that the claim and the debt are "mutual": that is, between the same parties. *Pardo v. Pacificare of Texas, et al. [In re APF Co.]*, 264 B.R. 344, 354 (Walsh, C.J., Bankr.D.Del. 2001). If a creditor attempts to set off another party's claim against the debtor against the creditor's own liability to that debtor, it is said that the lack of *mutuality* in such a three-party or "triangular" situation will defeat an attempted set-off. *Id.*

7.    The Debtors maintain there was no mutuality in the debts Mr. Ferguson seeks to set off because, while the Note was made to Debtor LP, Mr. Ferguson was employed by the separate Debtor GRM. The sole support for the contention as to Mr. Ferguson's employment is the copy of a paycheck which bears the name "Garden Ridge Management, Inc." However, the Debtors' statement is inconsistent with both the circumstances of Mr. Ferguson's employment and the Debtors' operation of their business. The Agreement nowhere refers to GRM by name, but generally identifies "Garden Ridge" as the employer. Equally, the Agreement refers generally to "Garden Ridge's" obligations with respect to moving and closing-cost reimbursement, and contains no indication that these benefits were payable *only* by GRM. Nothing else in the Agreement suggest that Mr. Ferguson's duties as a supply-chain manager (or his benefit entitlements) were limited to the property or operations of GRM. It is simply a mis-statement of the Agreement's content to suggest, as Debtors do, that the Agreement made Mr. Ferguson an employee of GRM or of GRM alone.

8.    The Debtors also acknowledge throughout the pleadings filed in the Bankruptcy Court that they operated jointly as a single enterprise.  They used a centralized accounting and cash-management system and did not have separate officers for each entity.  Mr. Ferguson was not instructed to and did not treat himself as an employee of GRM alone, but like the other officers and directors of the Garden Ridge companies, treated the Debtors as a single enterprise.

9.    The Debtors' contention that Mr. Ferguson was employed solely by GRM ignores the business reality of the Debtors' operations.  Mr. Ferguson understands that the Debtors' complicated structure of partnerships and holding companies was adopted for specific Texas tax reasons, and adhered to in practice only for purposes of filing the Debtors' tax returns.  Indeed, *only* the Debtors' tax returns were filed on an individual-entity basis:  the Debtors' 10-K and 10-Q filings (while it was a public entity), along with internal financials, were all calculated on a consolidated basis.  The overwhelming majority of the Debtors' assets were held by LP, a limited partnership, because Texas law gave advantageous tax treatment to partnership assets.  Although the Objection relies on a copy of a check issued to Mr. Ferguson ostensibly from GRM to prove that GRM employed him, in fact, any payments made by GRM were necessarily from funds transferred by LP for this purpose without any meaningful accounting for intercompany debt.  The existence of a paycheck or paychecks in GRM's name does not come close to negating either the language of the Agreement or the evident fact that neither Mr. Ferguson, nor the Debtors' officers and directors, acted as employees of GRM alone.

10.    Texas law is clear that the economic reality of the parties' relationships is controlling, not documents that may have been created to disguise that reality.  Thus, according to the Supreme Court of Texas:

4

> It has been definitely established that a form of written agreement will not prevent the existence of a master-servant relationship when such contract is a mere sham or a cloak designed to conceal the true legal relationship between the parties.

*Newspapers, Inc. v. Love*, 380 S.W.2d 582, 590 (Tex.1964).

11.    In light of the nature of the Agreement and the facts of Mr. Ferguson's day-to-day employment, Texas law supports the proposition that Mr. Ferguson was employed by the Debtor enterprise collectively and not only by GRM.  Under Texas law, the test to determine whether an individual is an employee is the purported employer's right to control the details of that individual's work, determined by all the facts and circumstances surrounding his work at that time.  *Love*, 380 S.W.2d at 592; *and see Coronado v. Schoenmann Produce Co.*, 99 S.W.3d 741, 746 (Tex.App. 2003).  Although the Debtors wish to contradict the plain language of the Agreement and have the Court rule that Mr. Ferguson was only an employee of GRM, they have produced no evidence to show that *only* GRM controlled the details of Mr. Ferguson's work.  *Id.*

12.    There is, therefore, no meaningful basis on which to contradict the language of the Agreement.  As is clear from the face of the document, Mr. Ferguson was employed by the Debtors collectively and was responsible for the supply chain of the Garden Ridge enterprise as a whole, not narrowly that of GRM.  Indeed, this was necessarily so, since GRM was in essence a shell whose function was to hold management-related assets and liabilities, and which was almost completely funded by LP.  Given that is impossible to maintain a business or even a balance-sheet distinction between these two entities -- except for the narrow purpose of Texas corporate tax -- it is clear that sufficient mutuality of obligation existed.  For all operative purposes relevant to Mr. Ferguson's employment, the Debtors, including LP and GRM, were one entity.

5

## II.    DEBTORS' SUBSTANTIVE CONSOLIDATION PERMITS SET OFF

13.    The mutuality requirement for set-off with respect to Mr. Ferguson's claim is, in fact, conclusively established by the terms of the Debtors' own plan of reorganization. The Debtors' confirmed plan clearly states that claims and liabilities have been substantively consolidated, such that a claim against one Debtor is a claim against all. Thus, by the clear language of the confirmed plan, only two real parties were involved -- Mr. Ferguson and the collective Debtors. The plan provides, in pertinent part:

> On the Confirmation Date, the Chapter 11 Cases of all of the Debtors shall be substantively consolidated for all purposes related to the Plan, including, without limitation, for purposes of voting, confirmation, and distributions. Subject to the occurrence of the Effective Date, *(i) all assets and liabilities of Garden Holdings, Inc., Garden Ridge Corporation, Garden Ridge Investments, Inc., Garden Ridge Management, Inc., and Garden Ridge Finance Corporation shall be deemed or treated as though they were merged into and with the assets of Garden Ridge, L.P.*
>
> ...
>
> *(iv)   each and every claim filed or to be filed in the Chapter 11 Case of any of the Consolidated Debtors shall be deemed filed against the Consolidated Debtors, and shall be deemed one claim against and obligation of the Consolidated Debtors.*

*Debtors' First Amended Joint Plan of Reorganization (Corrected) Under Chapter 11 of the Bankruptcy Code* ("Plan"), p. 25. [Emphasis added.] [D.I. 1467].[2]

14.    Thus, this Court need not even review the factual issues raised in the Objection. The terms of Section VI of the Plan clearly state that each claim "shall be deemed one ... obligation of the Consolidated Debtors", and "all assets and liabilities of ... Garden Ridge Management, Inc. ... shall be deemed or treated as though they were merged into and with the

---

[2] *See also* Findings Of Fact, Conclusions Of Law, And Order Under Section 1129 Of The Bankruptcy Code And Rule 3020 Of The Bankruptcy Rules Confirming Debtors' First Amended Joint Plan Of Reorganization (Corrected) Under Chapter 11 Of The Bankruptcy Code, Dated March 29, 2005, 13-14, entered April 28, 2005 [D.I. 1598].

assets of Garden Ridge, L.P.". Plan *at* p. 25. Mr. Ferguson has a timely-filed claim against these Debtors based on the obligations created by the Agreement, as set forth in the Motion. The Plan conclusively establishes the required mutuality of obligation, in that it mandates that the obligations of one Debtor are the obligations of all. Debtors, and not Mr. Ferguson, were the drafters of this language, and they should not be suffered to complain now that the Court is asked to enforce the Plan's plain language.

15.    The Debtors incorrectly argue (in a footnote) that substantive consolidation does not alter the parties' rights to set-off as a matter of law on the basis of *In re Sentinel Prods. Corp.*, 192 B.R. 41, 46 (N.D.N.Y. 1996). Although *Sentinel* is not binding precedent for this Court, the basis on which the Sentinel Court denied set-off is inapplicable here. The Court specifically stated in *Sentinel* that set-off was denied because the substantive consolidation language in Sentinel's plan was limited to the treatment of *claims*, and the creditor seeking set-off had *never participated* in the bankruptcy. In contrast, it is indisputable that Mr. Ferguson has filed a claim against these Debtors, and the holding of *Sentinel* is, therefore, inapposite.

### III.    TRIANGULAR SET-OFF WOULD BE PERMISSIBLE IN THESE CIRCUMSTANCES

16.    Even if the Motion had requested a "triangular" set-off between related Garden Ridge entities, the circumstances described in the Motion fall within a recognized exception permitting such set-offs when it is established that the debtors agreed to treat two of three nominally independent parties involved as one entity for purposes of the transaction at issue.

17.    Specifically, it is said that an exception to the strict mutuality requirement arises where, although two parties are separate and distinct, the debtor agrees to treat them as one. *Equibank v. Lang Machinery [In re Lang Machinery Corp.]*, 1988 WL 110429, *5 (Fitzgerald, J., Bankr.W.D.Pa. October 19, 1988); *see also Depositors Trust Co. v. Frati Enters.*, 590 F.2d

7

377, 379 (1st Cir., 1979) ("[a]lthough Bangor and Augusta are basically the same bank, we cannot treat them as such, in the absence of an agreement by the bankrupt to treat the two banks as one.").[3]  Case law from this circuit contemplates that testimony regarding a contemporaneous oral agreement can be sufficient for a creditor to establish evidence of such an agreement thereby proving the intended mutuality. *Lang*, 1988 WL 110429 at *5.

18.    In this case, the Loan was made to Ferguson and the corresponding Note issued to LP with the intent of all parties that the Loan was issued in connection with the relocation assistance provided under the Agreement.  Clearly, the parties intended that the obligations of the Note to *LP* would compensate GRM[4] for making the Loan, given the contemporaneousness of the Note and the identical amount of the Note principal and the Loan.  The Objection does not advance any evidence to suggest that these were, in fact, circumstantially independent obligations.  It does not suggest, for example, that one Debtor gratuitously paid Mr. Ferguson $250,000, and that Mr. Ferguson in an unconnected transaction gratuitously issued a $250,000 Note to another Debtor.  Such a proposition being patently absurd, it is indisputable that the Loan and Note were intended by the respective Debtor entities to be offsetting obligations at the outset, and thus a set-off in bankruptcy involving these entities is appropriate.  *Id.*

---

[3]  Permission to conduct a facially "triangular" setoff on this basis has also been characterized as a matter of equitable estoppel. *Inland Steel v. Berger Steel Co. [In re Berger Steel Co., Inc.]*, 327 F.2d 401, 404 (7th Cir., 1964) (Considering argument under Bankruptcy Act that where debtor treated two entities as one for purposes of incurring debt it was equitably estopped from later asserting that they were separate for purposes of avoiding set-off).

[4]  Mr. Ferguson will assume, for the sake of argument, that GRM was actually the entity that made the Loan payment, since Debtors assert GRM was his employer.

WHEREFORE, Daniel Ferguson respectfully renews his requests that the Court enter an order granting relief from the automatic stay to allow him to set off the Debtors' outstanding pre-petition debts to him under the Agreement against the balance of the Loan, allow him an unsecured deficiency claim in the amount of $60,000 for the deficiency outstanding, and grant him such other and further relief as the Court deems just and equitable.

Dated: June 22, 2005
Wilmington, Delaware

BUCHANAN INGERSOLL PC

/s/      William D. Sullivan
William D. Sullivan (#2820)
1007 N. Orange St., Suite 1110
Wilmington, DE 19801
(302) 428-5500
(302) 428-3996 (fax)

Counsel for Daniel Ferguson

# Exhibit M

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

IN RE GARDEN RIDGE CORPORATION, *et al.*, )
                                           )
        Debtors.                          )
                                           )
_____)

Chapter 11
Case No. 04-10324 (RB)
Jointly Administered

**DANIEL FERGUSON,**

**Movant,**

v.

**GARDEN RIDGE CORPORATION,** *et al.*

**Debtors.**

---

## MOVANT DANIEL FERGUSON'S POST-HEARING BRIEF

---

**BUCHANAN INGERSOLL PC**
William D. Sullivan, Esquire (#2820)
The Nemours Building
1007 N. Orange Street, Suite 1110
Wilmington, DE 19801
Tel: (302) 428-5500
Fax: (302) 428-3996

Dated: November 30, 2005

*Counsel for Movant*
*Daniel Ferguson*

## TABLE OF CONTENTS

I.  STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING ..............1

II.  STATEMENT OF FACTS ...........................................................................................1

III.  SUMMARY OF ARGUMENT ...................................................................................3

IV.  ARGUMENT..............................................................................................................6

    A.  The Debtors' Confirmation Order Conclusively Established Mutuality
        Because Substantive Consolidation Provisions Merged All Claims and
        Obligations Owed to Or Against Them ..................................................................7

    B.  There Is No Lack of Mutuality" Because The Debtors Acted As One
        Entity For Purposes Including The Employment of Mr. Ferguson ......................11

        i.  The Debtors' Own Documents Prove Mr. Ferguson Was Not
            Employed By GRM Alone.........................................................................12

        ii.  The Debtors Paid all of their Employees through Garden Ridge,
            L.P.............................................................................................................14

        iii.  The Debtors Statements and Schedules Confirm that Executive
            Severance Pay Obligations were the Responsibility of Garden
            Ridge, L.P. ................................................................................................16

        iii.  The Debtors Admitted Prepetition That GRLP Was Ferguson's
            Employer...................................................................................................18

        iv.  No Principle Relating To Fiduciary Obligations Prevents Mr.
            Ferguson's Proposed Setoff......................................................................20

    C.  The Debtors Are Judicially Estopped From Denying That They Acted As
        A Single Entity By Virtue Of Their Many Statements To The Contrary
        During The Pendency Of This Case ....................................................................22

V.  CONCLUSION ........................................................................................................26

## TABLE OF AUTHORITIES

**Cases**

*Andrews v. Diamond, Rash, Leslie & Smith,*
   959 S.W.2d 646 (Tex.App.-El Paso, 1997) .................................................................. 23

*Bandy v. First State Bank,*
   835 S.W.2d 609 (Tx. 1992) ........................................................................................... 3

*Depositors Trust Co. v. Frati Enters.,*
   590 F.2d 377 (1st Cir., 1979)...................................................................................... 19

*Equibank v. Lang Machinery [In re Lang Machinery Corp.],*
   1988 WL 110429 (Fitzgerald, J., Bankr.W.D.Pa. October 19, 1988) ......................... 19

*FDIC v. Texas Bank of Garland,|*
   783 S.W.2d 604 (Tex.App.-Dallas,1989) .................................................................... 19

*In re Ameriserve Food Distr., Inc.,*
   315 B.R. 24 (Bankr.D.Del. 2004) ............................................................................ 4, 8

*In re Cooper,*
   147 B.R. 678 (Bankr.D.N.J. 1992) .................................................................. 4, 10, 11

*In re GEC Industries, Inc.,*
   128 B.R. 892 (Bankr. D. Del. 1991)......................................................................... 3, 6

*In re Nuclear Imaging Systems, Inc.,*
   260 B.R. 724 (Bankr.E.D.Pa. 2000) .......................................................................... 20

*In re Owens Corning,*
   419 F.3d 195 (3d.Cir. 2005) ........................................................................... 3, 10, 11

*In re Sentinel Prods. Corp.,*
   192 B.R. 41 (N.D.N.Y. 1996)....................................................................................... 9

*In re Summit Metals, Inc.,*
   2004 WL 1812700 (D.Del. 2004)............................................................................... 21

*In the Matter of the Estate of Robert E. Hoffman,*
   304 A.2d 721 (N.J., 1973) ......................................................................................... 21

*Inland Steel v. Berger Steel Co. [In re Berger Steel Co., Inc.],*
   327 F.2d 401 (7th Cir., 1964) .................................................................................... 19

*Montrose Medical Group Participating Savings Plan v. Bulger,*
   243 F.3d 773 (3d.Cir. 2001) ................................................................................. 23, 24

*Murray Indus., Inc. v. Dep't of Rev. [In re Murray Indus., Inc.],*
   125 B.R. 314 (Bankr.M.D.Fl. 1991) ........................................................... 10, 11

*Nedd v. UMWA,*
   556 F.2d 190 (3d.Cir., 1977) ..................................................................... 21

*Newspapers, Inc. v. Love,*
   380 S.W.2d 582 (Tex.1964)...................................................................... 4, 14

*Pardo v. Pacificare of Texas, et al. [In re APF Co.],*
   264 B.R. 344 (Walsh, C.J., Bankr.D.Del. 2001)..................................... 3, 6, 11

*Studley v. Boylston Nat'l Bank,*
   229 U.S. 523 (1913)................................................................................... 6

**Statutes**

11 U.S.C. § 553 ...................................................................................... 3, 6, 18, 26

11 U.S.C. §§ 362(a)(7)................................................................................... 6

8 Del. C. § 143 ............................................................................................. 22

**Treatises**

L. King, 5 Collier on Bankruptcy,
   ¶ 553.03[3][c] (15th ed.rev.1999)............................................................. 21

## I.    STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

On April 13, 2005, Mr. Ferguson filed the *Motion Of Daniel Ferguson For Relief From The Automatic Stay Under §362(d)(1) Of The Bankruptcy Code To The Extent Necessary To Set Off Mutual Debts* [D.I. 1518] ("Motion").

On June 10, 2005, the Debtors filed their *Objection To Motion Of Daniel Ferguson For Relief From The Automatic Stay Under § 362(d)(1) Of The Bankruptcy Code T1o The Extent Necessary To Set Off Mutual Debts* [D.I. 1735] ("Objection").

On June 22, 2005, Mr. Ferguson filed the *Reply Of Daniel Ferguson In Support Of His Motion For Relief From The Automatic Stay Under §362(d)(1) Of The Bankruptcy Code To The Extent Necessary To Set Off Mutual Debts* [D.I. 1753] ("Reply").

The Court held a hearing on the Motion on November 16, 2005 ("Hearing") and directed the preparation of post-hearing briefs from both parties, including appendices of relevant materials and evidence.[1]  This is Mr. Ferguson's post-hearing brief.

## II.    STATEMENT OF FACTS

1.    The parties do not dispute the existence of the mutual obligations at issue. Movant Daniel Ferguson ("Ferguson") is a former officer of the above-captioned pre-petition debtors and debtors in possession ("Debtors").  The parties agree that Mr. Ferguson was employed as the "Senior Vice President - Supply Chain" of the pre-petition Debtors, pursuant to a letter agreement (the "Agreement").  The Agreement promised certain severance and other benefits.

---

[1] Between the filing of the Motion, Objection, Reply and the Hearing, the parties engaged in limited discovery, including a deposition on each side. This discovery resulted in the production of certain documents which were not referenced previously, and which are referenced herein and reproduced in the Appendix.

2.      Mr. Ferguson's employment was terminated on September 12, 2003.  Mr. Ferguson has asserted a $310,000.00 claim against the Debtors.  *See* Appendix to Movant Daniel Ferguson's Post-Hearing Brief ("Appendix"), Exhibit 7 (hereinafter, "Ex. __").  The claim seeks payment of relocation costs, including up to a 6% real estate commission on the sale of Mr. Ferguson's existing home ($60,000), as well as a year of base salary ($250,000) due as a termination benefit under the Agreement.

3.      The parties agree that Mr. Ferguson received a loan relating to his relocation ("Loan"), secured by a note ("Note") payable to Debtor Garden Ridge, L.P. ("GRLP") which was renewed every year prior to his termination, and that neither the severance benefits promised under the letter agreement nor the obligations created by the Note have been paid.  The Note, by its terms, was payable 30 days after the closing of the sale of his Michigan residence, or at the end of the calendar year.  Given that Mr. Ferguson's residence in Michigan remained unsold, the Note was renewed annually prior to the petition date.  *See* Final Note, Ex. 4.

4.      The parties disagree materially on the issue of whether Mr. Ferguson was employed by Garden Ridge Management, Inc. ("GRM"), or by multiple Debtors including GRLP.  The Debtors contend that Mr. Ferguson was employed only by GRM but executed the Note in favor of GRLP, and therefore the *mutuality* requirement for set off of the parties' obligations has not been met.  Mr. Ferguson contends that the issue of his employer's identity is mooted by the substantive consolidation provisions of the Debtors' plan (*See* Ex. 14) that merge all assets and liabilities of these Debtors.  However, to the extent substantive consolidation does not control, Mr. Ferguson contends it is clear that GRLP was his employer at all material times.

### III.    SUMMARY OF ARGUMENT

5.    Setoff of mutual debts between two parties is permissible in bankruptcy pursuant to 11 U.S.C. § 553 and pursuant to applicable state law.  11 U.S.C. § 553; *In re GEC Industries, Inc.*, 128 B.R. 892, 899-900 (Bankr. D. Del. 1991); *Bandy v. First State Bank*, 835 S.W.2d 609, 618 (Tex. 1992).

6.    Setoff is permissible in this case under Section 553 because the debts to be set off both arose pre-petition, are valid and enforceable[2], and are "mutual" -- that is, they arose between the same parties and in the same capacity.  *Pardo v. Pacificare of Texas, et al. [In re APF Co.]*, 264 B.R. 344, 354 (Walsh, C.J., Bankr.D.Del. 2001).  The parties do not contest the pre-petition nature of their respective asserted obligations.

7.    Mutuality exists because the substantive consolidation provisions of the Debtors' confirmed plan clearly state that the Debtors are to be treated as one entity for purposes of the Plan, including for claims resolution purposes.  Plan, Ex. 14.  Mr. Ferguson's Motion was based on his unsecured pre-petition claim against these Debtors and sought both the allowance of these claims and their set-off against any pre-petition obligations owed to any Debtor.  *See* Proof of Claim, Ex. 7.  The allowance and set off of the parties' claims is, therefore subject to the substantive consolidation provisions of the Plan.  *See* Ex. 14.

8.    Settled law in this judicial circuit regarding substantive consolidation acknowledges that consolidation is an extraordinary remedy that can and does affect parties' substantive rights.  *In re Owens Corning*, 419 F.3d 195, 211-212 (3d.Cir. 2005).  There is no constitutional or other prohibition recognized in this circuit against modification of pre-

---

[2] The parties have agreed to separately litigate issues of the validity of Mr. Ferguson's claims under his employment Agreement and the validity of the Note and Loan.  For the purposes of the Motion, validity and enforceability may be assumed, or are not yet in issue.

consolidation rights or defenses, including those based on separateness of corporate identity. *In re Cooper*, 147 B.R. 678, 682 (Bankr.D.N.J. 1992).

9.      The Court's Order permitting plan confirmation (and substantive consolidation) is "law of the case", and the Debtors, having fought for and obtained substantive consolidation, must not be permitted to ignore the relevant language of the Plan simply because it has become inconvenient. *In re Ameriserve Food Distr., Inc.*, 315 B.R. 24, 26 (Bankr.D.Del. 2004).

10.     Even if the substantive consolidation language of the confirmed Plan is disregarded, the proposed setoff would not be impermissible because the pre-petition Debtors as a whole were Mr. Ferguson's employers. *See* Employment Agreement, Ex. 1; Agreement and General Release, Ex. 5; COBRA Notice, Ex. 6. The Debtors acted as a single entity in employing Mr. Ferguson and therefore the proposed set-off does not lack mutuality. *See* Plan, Ex. 14; Disclosure Statement, Ex. 15; Memorandum in Support of Confirmation of Plan, Ex. 16; Declaration of Donald Martin in Support of Plan Confirmation, Ex. 19; Deposition of Holly Shafer, Ex. 21.

11.     To the extent that GRM's name appears on some of Mr. Ferguson's pay checks or his W2 forms, they do not demonstrate that Mr. Ferguson was employed or employed *exclusively* by GRM. Applicable state law recognizes that in determining the identity of an employer, substance prevails over form, and thus employers may not rely on sham writings to hide the existence of an employment relationship. *Newspapers, Inc. v. Love*, 380 S.W.2d 582, 590 (Tex.1964). Thus, use of the GRM name on Mr. Ferguson's paychecks does not permit the Debtors to ignore the reality of the parties' relationship

12.     Mutuality of obligation exists because "GRM's" payroll account was not only entirely funded, but actually controlled by the Debtor's operating company and the entity to

- 4 -

which the Note is owing, Garden Ridge, L.P. ("GRLP") *See* Debtors' Monthly Operating Report

for February 2004, Ex. 9; *see also* Motion to Continue Cash Management System, Ex. 18.

13.     Mutuality of obligation exists without regard to substantive consolidation because

the Debtors' respective statements and schedules shows that GRLP, and not GRM, paid

severance obligations to other executives identical to those claimed by Mr. Ferguson.

14.     Further, the Debtors have conclusively admitted, in a document executed by their

CFO and Mr. Ferguson contemporaneously with the Note, that Mr. Ferguson *was* an employee

of GRLP and that the Loan and Note were made in contemplation of that relationship. *See* Loan

Agreement, Ex. 2. By itself, this single document establishes the requisite mutuality to set off

the Note and severance obligations.

15.     Finally, the Debtors are judicially estopped from altering their position with

regard to the separateness of the Debtor entities because, during the pendency of these cases, the

Debtors have unequivocally maintained that they operated as a single entity.  The Court should

therefore hold them estopped from denying that they operated as such. *See* Plan, Ex. 14;

Disclosure Statement, Ex. 15; Memorandum in Support of Confirmation of Plan, Ex. 16;

Declaration of Donald Martin in Support of Plan Confirmation, Ex. 19; Declaration of Donald

Martin in Support of First Day Applications and Motions, Ex. 20; Motion to Continue Cash

Management System, Ex. 18.

## IV.  ARGUMENT

Section 553 of the Bankruptcy Code preserves in bankruptcy the equitable right of setoff available at common law, which permits parties that owe mutual debts to each other to state the accounts between them, subtract one from the other, and pay only the balance remaining.  This is a rule grounded on the absurdity of "making A pay B when B owes A."  *In re GEC Industries, Inc.*, 128 B.R. 892, 899-900 (Bankr. D. Del. 1991), *citing Studley v. Boylston Nat'l Bank*, 229 U.S. 523, 528 (1913).  The Bankruptcy Code expressly preserves rights of setoff, albeit subject to the automatic stay.  *See* 11 U.S.C. §§ 362(a)(7), 553.  The applicable state law of Texas recognizes the common-law right of set-off, preserved in bankruptcy by Section 553.  *Bandy v. First State Bank*, 835 S.W.2d 609, 618 (Tex. 1992), *also citing Studley*, 229 U.S. 523.  (Ancient doctrine of setoff has roots in English bankruptcy law and "has continuing vitality today").

In order to establish entitlement to set off under Section 553, four conditions must exist: "(1) the creditor holds a 'claim' against the debtor that arose before the commencement of the case; (2) the creditor owes a 'debt' to the debtor that also arose before the commencement of the case; (3) the claim and debt are 'mutual'; and (4) the claim and debt are each valid and enforceable."  *Pardo v. Pacificare of Texas, et al. [In re APF Co.]*, 264 B.R. 344, 354 (Walsh, C.J., Bankr.D.Del. 2001).

In this case, the parties do not contest that Mr. Ferguson asserts a claim against the Debtor for severance pay and certain transfer expenses, pursuant to his employment Agreement, that arose before the petition date, nor do they contest that the Note obligations arose before the petition date.  *Id.*[3]  Therefore, the only contested issue before the Court at the Hearing and on the post-hearing briefs is that of the *mutuality* of the debts:  that is, whether the Note obligation and

---

[3] The parties have agreed to separately address the issue of Mr. Ferguson's right to severance benefits after the set-off motion is resolved.

severance obligations arose between the same parties in the same capacity.  *Id.*  The Debtors

contend that the Note and severance obligations lack the requisite mutuality because the Note

obligation is owed to Debtor GRLP alone whereas the severance obligations are owed by Debtor

GRM alone, which the Debtors contend was Mr. Ferguson's only employer at all material times.

The Debtors' contention is belied by the prior orders of this Court, the Debtors' prior

statements in this case, and the relevant documents submitted with this brief.  Accordingly, the

Debtors' objection should be overruled and the set-off requested in the motion should be

permitted.

A.    **The Debtors' Confirmation Order Conclusively Established Mutuality
Because Substantive Consolidation Provisions Merged All Claims and
Obligations Owed to Or Against Them**

This Court's Order confirming these Debtors' first amended plan of reorganization[4]

conclusively establishes the requisite mutuality of the Note and severance obligations for

purposes of permitting set-off on Mr. Ferguson's claim regardless of whether they were

originally obligations of separate Debtors.

The Confirmation Order, entered on April 28, 2005, provided for the substantive

consolidation of all the Debtors into GRLP.  This substantive consolidation merged all claims

and obligations so that claims against one Debtor are claims against all, and the obligations of

one Debtor may be satisfied by the assets of all the Debtors.  Ex. 17 at 13-14, A402-A403.

Therefore, the arguments presented by the Debtors in the Objection and at the Hearing that Mr.

Ferguson is attempting to set off an obligation to one of the Debtors against another's obligation

---

[4]  *Findings of Fact, Conclusions of Law, and Order Under Section 1129 of the Bankruptcy Code
and Rule 3020 of the Bankruptcy Rules Confirming Debtors' First Amended Joint Plan of
Reorganization (Corrected) Under Chapter 11 of the Bankruptcy Code, Dated March 29, 2005*
("Confirmation Order") [D.I. 1598], Ex. 17.

to him are simply irrelevant: the provisions of the confirmed plan mean that Mr. Ferguson's obligations under the Note are obligations to all the Debtors, and that the Debtors' severance obligations to Mr. Ferguson will similarly be satisfied out of all the Debtors' assets.

The substantive consolidation provisions of the Debtors' First Amended Plan of reorganization clearly provide that *both* assets and liabilities of all debtors are merged into and are claims against Garden Ridge, L.P., the holder of the Note:

> On the Confirmation Date, the Chapter 11 Cases of all of the Debtors shall be substantively consolidated for all purposes related to the Plan, including, without limitation, for purposes of voting, confirmation, and distributions. Subject to the occurrence of the Effective Date, *(i) all assets and liabilities of Garden Holdings, Inc., Garden Ridge Corporation, Garden Ridge Investments, Inc., Garden Ridge Management, Inc., and Garden Ridge Finance Corporation shall be deemed or treated as though they were merged into and with the assets of Garden Ridge, L.P.*

Debtors' First Amended Joint Plan of Reorganization (Corrected) Under Chapter 11 of the Bankruptcy Code ("Plan"), p. 25. [Emphasis added.] [D.I. 1467] Ex. 14 at A377.

The language of the Plan and Confirmation Order controls on the issue of mutuality and cannot be disregarded here. The Plan plainly makes each claim an "obligation of the Consolidated Debtors". *Id.* The obligations created by the Plan are binding upon the Debtors pursuant to the Confirmation Order: the Confirmation Order provides that "the provisions of the Plan (including the exhibits to, and all documents and agreements executed pursuant to, the Plan) and the Confirmation Order shall be binding on (i) the Debtors, ... (iii) all holders of Claims against and Interest in the Debtors". Ex. 17 at 15-16, ¶ 30 A404-A405. Furthermore, the findings made in the Confirmation Order as to the substantive consolidation of these Debtors are law of the case, and should not be revisited by the Court. Under the law of the case doctrine, when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. *In re Ameriserve Food Distr., Inc.*, 315 B.R. 24, 26 (Bankr.D.Del. 2004). The Court having already determined that the assets and liabilities of the

Debtors are to be merged for Plan and claim-related purposes, it should not revisit its determination in the absence of new evidence or a change in supervening law. *Id.*

Despite the plain language of the Plan and Confirmation Order, the Debtors state in the Objection and maintained at the Hearing that substantive consolidation does not alter the parties' rights to set-off as a matter of law, citing *In re Sentinel Prods. Corp.*, 192 B.R. 41, 46 (N.D.N.Y. 1996). As noted in the Reply, the basis on which the Sentinel Court denied set-off was not in any way based on a finding regarding the effect of substantive consolidation on set off. *Sentinel* dealt with the obligations between a debtor and a pre-petition customer that did not participate in any way in the debtor's bankruptcy case, and did not file a proof of claim. 192 B.R. at 44. The customer, which owed the debtor money, had a separate patent infringement claim against a debtor affiliate. *Id.* Because the debtors' plan, like these Debtors', substantively consolidated cases only in relation to claims, the *Sentinel* court held that

> "[B]ecause *Dennison's setoff claim is not a claim under the plan*, Dennison cannot receive the benefit of substantive consolidation articulated in Section 6.1 of the consolidated plan. *Dennison's setoff claim must be considered outside the context of the consolidated plan, and in that context the debtors "continue to maintain their separate corporate existences"*.

*Sentinel,* 192 B.R. at 47. [Emphasis added].

Thus, the Court specifically stated that set-off was denied because the substantive consolidation language in Sentinel's plan was limited to the treatment of claims, and the creditor seeking set-off had never participated in the bankruptcy. *Id.* In contrast, it is indisputable that Mr. Ferguson has filed a claim against these Debtors which includes the obligations of the Debtors that are to be set off, and thus the holding of *Sentinel* is inapplicable. In fact, *Sentinel* lends support to Mr. Ferguson's proposition that substantive consolidation is effective for mutuality purposes if the obligations at issue are the subject of a proof of claim. If the *Sentinel*

Court believed that substantive consolidation had no bearing on the set off rights asserted, it could have said so, and easily disposed of the case on that basis. The language quoted above clearly implies that set off relating to a filed claim *would* have been appropriate based on the substantive consolidation provisions of the plan, since within the plan the Debtors no longer maintained separate corporate existences.

Similarly, the Debtors reliance at the Hearing on the *Murray Industries, Inc.* decision from the Middle District of Florida for the proposition that substantive consolidation does not affect rights and defenses existing prior to substantive consolidation appears to be misplaced. Tr. at 66 l. 11 - 67. l. 6. Although, as the Court noted, *Murray Industries* was not cited or discussed in the Objection, the Debtors appear to be referring to *Murray Indus., Inc. v. Dep't of Rev. [In re Murray Indus., Inc.]*, 125 B.R. 314 (Bankr.M.D.Fl. 1991). The *Murray* decision dealt with the issue of whether the State of Florida, which waived sovereign immunity under Section 106 when it filed claims against one debtor, also waived immunity against another debtor when the two debtors' cases were substantively consolidated. 125 B.R. at 316.

Without regard to the applicability of the *Murray* decision to the case at bar, the Debtors' premise that their consolidation cannot modify a defense based on separateness must be rejected because it is settled law in this circuit that substantive consolidation can (and generally does) modify pre-consolidation substantive rights. *In re Owens Corning,* 419 F.3d 195 (3d Cir. 2005); *In re Cooper*, 147 B.R. 678, 682 (Bankr.D.N.J. 1992) ("Joint administration" aims to ease administrative burden without affecting substantive rights, but "substantive consolidation" aims to ensure equitable treatment of all creditors). In fact, the Debtors' suggestion that pre-consolidation substantive rights cannot be altered is completely at odds with this circuit's articulation of the basic guidelines for substantive consolidation, which clearly permit

- 10 -

modification of substantive rights where the equities so justify. Thus, the Third Circuit's recent comprehensive review of the law of substantive consolidation in *In re Owens Corning* takes as a given that consolidation "may affect profoundly creditors' rights and recoveries" 419 F.3d at 211-212, which is why *Owens Corning* confirms that substantive consolidation is an extraordinary remedy". 419 F.3d at 199-200.

The *Cooper* decision itself demonstrates the incorrectness or inapplicability of *Murray* and similar cases. 147 B.R. at 682. The Court in *Cooper* held that an IRS tax lien against one entity pre-dating the substantive consolidation order was extended, by virtue of that consolidation, to a lien against *all the debtors*. *Id*. In short, and without belaboring the issue, the *Cooper* Court did exactly what the Debtors claim *Murray* holds to be impermissible - removing the pre-consolidation substantive defenses of the Debtors based on corporate separateness and treating them as one entity. *Id*.

B. **There Is No Lack of Mutuality" Because The Debtors Acted As One Entity For Purposes Including The Employment of Mr. Ferguson**

Even if the Court ignores the impact of the Debtors' substantive consolidation, setoff in this case does not fail for lack of mutuality because the Debtors collectively, and not GRM exclusively, were Mr. Ferguson's employer. *See Pardo v. Pacificare of Texas, et al. [In re APF Co.]*, 264 B.R. 344, 354 (Bankr.D.Del. 2001) (Triangular setoff generally impermissible because debts are not mutual). Almost without exception, the Debtors' own pleadings prior to the filing of the Motion and the documents produced to Mr. Ferguson during pre-trial discovery demonstrate that the Debtors operated and employed employees on a consolidated basis. If any single entity is deemed to be his employer, it would have to be GRLP, as GRLP was the only entity which individually signed a document stating it was his employer, and GRLP was the entity which paid him.

      i.     **The Debtors' Own Documents Prove Mr. Ferguson Was Not Employed By GRM Alone**

The Debtors have adopted an unsupportable position that Mr. Ferguson was employed solely by GRM in a transparent attempt to deny Mr. Ferguson the common-law set off rights preserved under the Code. The Debtors, while conceding that Mr. Ferguson was a member of the collective Debtors' executive committee and the individual in charge of managing the Debtors' supply chain, a function belonging to GRLP as the only operational entity, continue to argue that he was simultaneously an employee only of GRM. In fact, the only documentary evidence produced by the Debtors to establish any connection between Mr. Ferguson's employment and the GRM Debtor is a copy of his W-2 form and a copy of one of his paychecks. All the other documentary evidence, however, demonstrates that Mr. Ferguson was an employee of all the Debtors, and in particular, paid via an account not only funded, but controlled by, GRLP, the same entity he is obligated to under the Note.

First, Mr. Ferguson's employment Agreement nowhere indicates that he will be an employee of GRM, but universally uses the term "Garden Ridge" to describe the employer. Indeed, the name "Garden Ridge Management, Inc." is *entirely absent* from the Agreement. See Ex. 1. Nor is there any indication that Mr. Ferguson's duties are to be confined to GRM's business. *Id.* Likewise, there is no discussion of the terms on which Mr. Ferguson's labor is to be divided between GRM and its "clients". *Id.* Garden Ridge Management, Inc. does not appear separately in any other document relating to his employment, including the proposed Termination Agreement that the Debtors submitted to Mr. Ferguson (but which he did not sign) [Ex. 5, A012-A017] or the COBRA notice he received after he left the Debtors' employment [Ex. 6, A018]. Given the Debtors' acknowledged joint management, the only reasonable inference

from the use of the name "Garden Ridge" in these documents is that it applied to all of the Garden Ridge entities.

Moreover, the Debtors' contention at the hearing that GRM was in the business of supplying labor to the other Debtors is rendered entirely specious by the numerous admissions of record in this case that the Debtors had *no* system for accounting for intercompany debts. *See e.g. Disclosure Statement[5], Ex. 15 at 29-30, § IX-D, A384-A385; See also Memorandum in Support of Confirmation,* Ex. 16 at 40-41, ¶ 96, A388-A389. With no such accounting, any "services" provided by GRM to GRLP were, thus, unremunerated. The reality of the Debtors operations is described in the sections of the *Memorandum in Support of Confirmation* dealing with the Debtors' request for substantive consolidation, wherein the Debtors strenuously argue that they should be treated as one single entity because, *inter alia*, their operations are conducted almost entirely by Garden Ridge L.P., they share common management, and they maintain no system of accounting for or reconciling intercompany debts. Memorandum, Ex. 16 at 40-41, ¶ 96, A388-A389. As such, the Debtors' position that Mr. Ferguson should be considered an employee of GRM only, despite the fact that his services were provided to other Debtors including GRLP without apportionment or differentiation, and without any accounting at all for the value of those services on an intercompany basis, is without merit.

Texas law is clear that the economic reality of the parties' relationships is controlling, not documents that may have been created to disguise that reality. Thus, according to the Supreme Court of Texas:

---

[5] *First Amended and Corrected Disclosure Statement for Debtors' First Amended Joint Plan of Reorganization (Corrected) Under Chapter 11 of the Bankruptcy Code* [D.I. 1458].

> It has been definitely established that a form of written agreement will not prevent the existence of a master-servant relationship when such contract is a mere sham or a cloak designed to conceal the true legal relationship between the parties.

*Newspapers, Inc. v. Love*, 380 S.W.2d 582, 590 (Tex.1964).

The Debtors' contention that Mr. Ferguson was a GRM employee is, therefore, based *solely* on the existence of GRM's name on Mr. Ferguson's paychecks and not on the Debtors' actual operations. However, even the Debtors' contention that Mr. Ferguson was paid by GRM turns out to be inaccurate and misleading.

### ii.    The Debtors Paid all of their Employees through Garden Ridge, L.P.

Initially, it is clear that even if the funds used to pay Mr. Ferguson's salary came from a GRM-controlled account, such funds were provided entirely by Garden Ridge, L.P. The mechanism for payment of payroll was described in detail in the Debtors' Cash Management Motion[6], [Ex 18, A427-A429], the accuracy of which was vouched for by John Martin. *See Declaration of John Martin in Support of First Day Motions* [Ex. 20, A484]. The Cash Management Motion states that the Debtors' payroll service provider, ADP, would inform Garden Ridge L.P. prior to payday of the total amount necessary to fund the payroll. Cash Management Motion, Ex. 18 at 8, ¶ 29, A428. The funds necessary to cover such requirements, including the payroll, would be transferred into a general operating account, controlled by Garden Ridge L.P. Ex. 18 at 8, ¶ 28, A428. From there, the Debtors would disburse payroll funds to a payroll account, *also* controlled by Garden Ridge L.P. *See* Cash Management Motion at Exhibit A - Bank Accounts, A439 (Showing payroll account no. 00480071323 as owned by Garden Ridge, L.P.). The Debtors used the payroll account to fund disbursements directly into

---

[6] *Motion for an Order (A) Authorizing Debtors to Continue Using Existing Centralized Cash Management System, Bank Accounts and Business Forms, (B) Granting an Interim Waiver of the Deposit Guidelines Set Forth in Section 345 of the Bankruptcy Code and (C) Granting Related Relief* [D.I. 11] ("Cash Management Motion").

the accounts of employees who did not receive paper checks, including Mr. Ferguson.  Cash

Management Motion at 8-9, ¶ 29, A428-A429.

This mechanism was confirmed by Holly Shafer, testifying on behalf of the Debtors.  *See*

Shafer Depo. Transcript, Ex.21, pp. 26-28, A496.  However, Ms. Shafer attempted to state that

the Cash Management Motion had an error where it identified the Payroll account as belonging

to Garden Ridge, L.P. [Ex. 21, p. 27, A496].  She asserted that her understanding was that the

Payroll Account was owned by GRM.[7]   While this contention is belied by the Debtors own

filings, as will be demonstrated below, it is clear that Mr. Ferguson was either paid by Garden

Ridge, L.P. on its own behalf, funded to a payroll account without regard to intercompany

obligations, or paid from a facility funded by Garden Ridge L.P.'s financing facilities

(guaranteed by GRM and the other Debtors) and effectively a collective obligation of all the

Debtors.

However, a review of the Debtors' monthly operating reports and their statements and

schedules demonstrates that the Debtors' contention regarding the Payroll Account is wrong.

The bank statements issued by Bank of America for the accounts in question clearly show that

the payroll account was, as stated in the Cash Management Motion, owned by Garden Ridge,

L.P. and not by GRM.  Therefore, not only is clear and ample evidence that GRLP was both the

'payor-in-fact' of the payroll and the nominal owner of the Payroll Account, there is also

conclusive evidence in the statements and schedules that there is no lack of mutuality between

severance obligations and any obligation under the Note.

---

[7] Debtors' responses to written interrogatories that were provided to Mr. Ferguson the day before
the Hearing also contend Exhibit A to the Cash Management Order incorrectly identifies the
payroll account as owned by Garden Ridge, L.P., when it was in fact owned by GRM.  Ex. 8 at
16, A047.

The Debtors' *Monthly Operating Report* for the period February 2004 ("MOR") contains actual bank statements from Bank of America for that month, the first month after the filing of these Debtors' petitions. The MOR also allows a reader to track the disbursement of funds into the Garden Ridge, L.P. "Operating Account" and the subsequent transfer of payroll monies by that Debtor into a "Payroll Account" for direct disbursement to individual employees. The MOR form for Garden Ridge, L.P., dated March 12, 2004 and signed by Donald Martin as CFO, states that copies of bank statements are attached for that GRLP [Ex. 9, A056]  whereas the MOR form for GRM clearly states that *no* bank statements are attached because "NO ACTIVITY" took place with respect to bank accounts. [Ex.9, A059.]

A review of the Bank of America statement for the "Operating Account" of Garden Ridge, L.P. (#0047 9782 7903) attached to the MOR, shows a debit of $1,100,000.00 on February 5, 2005, on page 9 of that statement, which is described as "Funds Transfer - Db / Payroll Funding". [Ex.9, A076].  A similar review of the Bank of America statement for the account labeled "Payroll Account" (#0004 8007 1323) attached to the MOR, shows the corresponding credit from the above transfer on February 5, 2005 on page 1 of that statement, in the amount of $1,100,000 as "Funds Transfer - Cr / Payroll Funding" [Ex. 9, A113].  Clearly printed on the address block of the very same page are the words "Garden Ridge, L.P. / Payroll Account / DIP Case# 04-10324 (LHK)" [Ex. 9, A113].  The MOR, therefore, makes clear that the Payroll Account was, in fact, controlled by Garden Ridge, L.P.

       iii.          **The Debtors Statements and Schedules Confirm that Executive Severance Pay Obligations were the Responsibility of Garden Ridge, L.P.**

The Debtors' Statements and Schedules for Garden Ridge L.P. and GRM, filed on February 16, 2005, confirm that the payroll account and the account receivable based on the Note are both property of Garden Ridge, L.P. Exs. 10, 12.  Garden Ridge L.P.'s Schedule B-2

- 16 -

lists the aforementioned Payroll Account as one of that Debtor's checking, savings or other financial accounts [Ex. 10, A127]. Schedule B-15 shows the Note receivable of $250,000 from "Dan Ferguson". [Ex.10, A131].[8] Notably, Garden Ridge, L.P.'s *Statement of Financial Affairs*, also filed on February 16, 2005, shows that Garden Ridge, L.P. was the Debtor responsible for severance pay disbursements to senior executives. Statement 23 requires a debtor corporation to list all withdrawals or distributions to insiders, including compensation in any form during one year immediately preceding the commencement of the case. Exhibit 23-1 responding to Statement 23 shows severance payments made to a number of the Debtors' former senior executives [Ex. 11, A294].[9] Separately, Exhibit 3-2 discloses payments of $14,729.99 made to Mr. Ferguson in 2003, eliminating any question that all payments to Mr. Ferguson went through GRM [Ex. 11, A282].

Crucially, the information in the L.P. Statements and L.P. Schedules flatly contradicts the Debtors' position in the Objection and at the Hearing that a lack of mutuality prohibits Mr. Ferguson from setting off his severance claim against the Note obligation. The L.P. Statements make clear that it was GRLP that made severance payments to the Debtors' former executives (including individuals, such as Ms. Arbuthnot and Ms. Weiner, who are also listed under L.P. Schedule F-2 together with Mr. Ferguson and other former executives as having outstanding claims against GRLP) [Ex. 10, A175][10], and the L.P. Schedules make clear that it was GRLP that held the account receivable associated with the Note. The Debtors own filings are admissions

---

[8] Schedule F-2 also lists the claims of certain of the Debtors' former executives, including Mr. Ferguson, who are parties to a pending Texas state court action against the Debtors in which they sought to recover, *inter alia*, unpaid compensation and benefits.

[9] Mr. Ferguson is not listed on Exhibit 23-1 because he did not receive any portion of the severance payments to which he was entitled under the Agreement. These amounts are part of his proof of claim of record in these jointly-administered cases.

[10] GRM's *Statement of Financial Affairs* ("GRM Statements") states in response to Statement 23 that it made *no* transfers to insiders in the year before filing its petition.

that there was complete mutuality necessary for the set off with respect to Mr. Ferguson before this Court even considered substantive consolidation.

### iv.    The Debtors Admitted Prepetition That GRLP Was Ferguson's Employer

As noted above, the evidence from the Debtors' own pleadings and records is overwhelming that GRM was not in reality Mr. Ferguson's employer, and that even in the realms of legal fiction, GRM did not own or control the Payroll Account from which Mr. Ferguson was paid. However, the Court need not even make an inference from this evidence, because the Debtors have conclusively admitted, in a signed pre-petition writing executed by their Chief Financial Officer, that Mr. Ferguson was an employee of Garden Ridge, L.P. [Ex. 2, A004-A005]. As an employee of GRLP, there was unquestionable mutuality at all times between the obligations under the Note and the severance obligations of the employer under the Agreement. Setoff must therefore be permitted pursuant to Section 553.

Contemporaneously with the execution of the Note, the Debtors and Mr. Ferguson executed a loan and bonus agreement ("Loan Agreement"), produced by the Debtors as documents GR472 and GR473. *See* Loan Agreement, Ex. 2 at A004-A005. In pertinent part, the Loan Agreement provides:

> Contemporaneously with the execution of this letter, you are executing the Note, and **Garden Ridge, L.P. (the "Company")** is making the loan to you evidenced by the Note. **You are currently serving as an employee of the Company**.

Loan Agreement, Ex. 2, A004 (emphasis added).

The Loan Agreement, executed by the Debtors' own CFO and of unquestionable authenticity (since it was produced by the Debtors themselves to Mr. Ferguson), is sufficient by

itself to conclusively establish that Mr. Ferguson was an employee of Garden Ridge L.P.[11]  The execution of the Loan Agreement by Ms. Arbuthnot binds the Debtors (regardless of their present preference as to who should be accounted Mr. Ferguson's employer) because she possessed either actual or apparent authority, as the Debtors' CFO, to bind them.

The Loan Agreement on its face is sufficient evidence for the Court to conclude that Ms. Arbuthnot possessed actual or apparent authority to bind the Debtors  Under Texas law, a corporation may act only through agents, and is bound by the acts of its officers while acting in the scope of their authority, either actual or apparent. *FDIC v. Texas Bank of Garland*, 783 S.W.2d 604, 606 (Tex.App.-Dallas,1989).  Ms. Arbuthnot is the acknowledged former CFO of the Debtors, and the Debtors have never challenged that the Loan evidenced by the Note was not properly made.

The Loan Agreement clearly demonstrates the parties' contemporaneous intent at the time of execution of the Note to treat GRLP as Mr. Ferguson's employer.  As previously set forth in Mr. Ferguson's Reply, the case law on triangular setoff situations permits a setoff otherwise impermissible for lack of mutuality where, although two parties are separate and distinct, the debtor agrees to treat them as one. *Equibank v. Lang Machinery [In re Lang Machinery Corp.]*, 1988 WL 110429, *5 (Fitzgerald, J., Bankr.W.D.Pa. October 19, 1988); *Depositors Trust Co. v. Frati Enters.*, 590 F.2d 377, 379 (1st Cir., 1979).  This agreement as to mutuality cannot be undone after the fact.

Notably, as pointed out in the Reply, permitting setoff on this basis has been characterized as an issue of equitable estoppel. *Inland Steel v. Berger Steel Co. [In re Berger Steel Co., Inc.]*, 327 F.2d 401, 404 (7th Cir., 1964).  Even if the Court feels there is a potential

---

[11] The Loan Agreement was not made available to Mr. Ferguson until after the filing of the Reply, and therefore was not discussed in prior pleadings.

- 19 -

question as to whether GRLP can be treated as Mr. Ferguson's employer (or one of his 'employers'), equitable estoppel acts to prevent the Debtors disowning the Loan Agreement. By itself, the Loan Agreement compels the finding that Garden Ridge, L.P. is Mr. Ferguson's employer and gives mutuality with respect to repayment of the Note.

> v.    **No Principle Relating To Fiduciary Obligations Of A Corporate Officer Prevents Mr. Ferguson's Proposed Setoff**

At the November 16, 2005 Hearing, the Debtors raised for the first time a claim that as a member of the Debtors' executory committee, Mr. Ferguson's general fiduciary duties to the Debtors prohibit him, as a matter of law, from setting off his obligations under the Note against the Debtors' severance obligations to him. Transcript at 68. No case citations were provided in support of this argument, nor did it appear in the Debtors' Objection to the set off motion. Nevertheless, undersigned counsel's independent review of this general assertion indicates that the Debtors have substantially misconceived the state of the law and it has no application to Mr. Ferguson's set off rights.

With regard to Mr. Ferguson as an alleged fiduciary, no case was found that stands for the proposition that any person who is a fiduciary with respect to a corporation is barred from exercising *any* setoff rights with respect to obligations owed that person by the same corporation. Rather, the case law simply requires that for setoff to be permissible, the debts must be owed in the same *capacity*. A bankruptcy treatise, cited by a Court in this jurisdiction, explains the concept:

> As a general rule, the concept of capacity requires that the parties must each owe the other something in his or her own name, and not as a fiduciary.... [I]f A in his individual capacity owes $100 to B, but B owes $50 to A in A's capacity as a trustee of a trust, or as a fiduciary or agent for some other party, the obligations are not mutual because they are not owed between the parties acting in the same "capacity."

*In re Nuclear Imaging Systems, Inc.*, 260 B.R. 724, 735 (Bankr.E.D.Pa. 2000), *citing* L.

King, 5 Collier on Bankruptcy, ¶ 553.03[3][c] (15th ed.rev.1999).

Thus, while case law does exist for the proposition that any person who holds *a sum of money* in trust or as a fiduciary for another may not setoff personal obligations against such sums, such cases are inapplicable here. This "fiduciary exception" to set-off rights is intended to prevent a wrongdoer who misapplies the corpus of a trust to apply a credit he is 'personally' entitled to in order to cancel his fiduciary liability. On that basis, the Third Circuit Court of Appeals has stated that "[s]et-offs of trust funds are unavailable to trustees against their liability in another capacity". *Nedd v. UMWA*, 556 F.2d 190, 212 (3d.Cir., 1977). The Supreme Court of New Jersey has explained the function of this rule succinctly:

> Equity required 'mutuality' with respect to the claims to satisfy the concept of the justice underlying an equitable right to offset. In that regard, it is usually held that a fiduciary may not offset a demand he has as a nonfiduciary against the beneficiary. The reason for that limitation is readily understandable; a fiduciary should abide by his special trust, and if the beneficiary becomes insolvent, it would be inequitable to permit the fiduciary to gain an advantage over another creditor **through the vehicle of a trust obligation he had assumed**.

*In the Matter of the Estate of Robert E. Hoffman*, 304 A.2d 721, 728 (N.J., 1973) (emphasis added).

The fiduciary setoff principles raised by the Debtor at the Hearing and discussed in the cases and treatises *infra* simply have no application here because Mr. Ferguson held no sum of money in a fiduciary or trust position for a beneficiary. While corporate officers and directors have the burden to show they dealt properly with corporate funds and other assets entrusted to their care, *see e.g. In re Summit Metals, Inc.*, 2004 WL 1812700, * 13 (D.Del. 2004), there is no allegation in this case and no factual basis to argue that the Loan and Note involve possession of corporate funds by Mr. Ferguson in a fiduciary capacity. Rather, the Loan proceeds were for the benefit solely of Mr. Ferguson to assist in his relocation to Houston upon becoming employed by the Debtors. He was under no trust or fiduciary obligation with respect to disbursement of such

- 21 -

funds.  Furthermore, there is no basis to suggest that Mr. Ferguson breached his officer's

fiduciary duty to his employer by receiving the Loan or executing the Note,[12] and no such

argument made at the hearing.  Finally, there was no suggestion that the Loan and Note were

cloaks for, or ratification of, a misuse of corporate assets by Mr. Ferguson.  When the Loan was

distributed to Mr. Ferguson, those funds were no longer corporate property and were not held for

the benefit of the Debtors, but for Mr. Ferguson's use.  Therefore, the Debtors' references to Mr.

Ferguson as a fiduciary of Garden Ridge have no relevance to the set off issues before this Court,

and should be ignored.

> C.    **The Debtors Are Judicially Estopped From Denying That They Acted
> As A Single Entity By Virtue Of Their Contrary Statements During
> The Pendency Of This Case**

The common-law principal of judicial estoppel bars these Debtors from now asserting

that Mr. Ferguson and other employees of these Debtors were employees only of GRM and not

of GRLP (the Debtor entity that conducted substantially all of these Debtors' pre-petition

business operations) or of the enterprise as a whole, the Debtors have made numerous statements

in pleadings and declarations to the effect that they did not maintain separate management

structures and did not account for intercompany debt.  In addition, John Martin, the Interim

Financial Officer for all of the Debtors, stated in his Declaration in support of first-day motions

that the Debtors' operations are conducted by GRLP, which is the lessee under the store leases

and the entity that pays the expenses and collects the receipts generated from daily store

operations.  Ex. 20, A480.  As noted above, the assertions in the Debtors' pleadings and

---

[12] 8 Del. C. § 143 specifically authorizes corporations to make loans to officers: "Any
corporation may lend money to, or guarantee any obligation of, or otherwise assist any officer or
other employee of the corporation or of its subsidiary, including any officer or employee who is
a director of the corporation or its subsidiary, whenever, in the judgment of the directors, such
loan, guaranty or assistance may reasonably be expected to benefit the corporation."

- 22 -

declarations, which this Court relied on to confirm the Debtors' Joint Plan of Reorganization, are irreconcilable with confining the employment relationship to GRM alone.

Judicial estoppel is a common law principle which precludes a party from asserting a position in a legal proceeding inconsistent with a position taken by that party in the same or a prior litigation. It most clearly applies where a party attempts to contradict its own sworn statements made in prior litigation. *Andrews v. Diamond, Rash, Leslie & Smith*, 959 S.W.2d 646, 649 (Tex.App.-El Paso 1997). The Third Circuit Court of Appeals has set forth three elements required to apply judicial estoppel. *Montrose Medical Group Participating Savings Plan v. Bulger*, 243 F.3d 773, 779-780 (3d.Cir. 2001). First, the party to be estopped must have taken two positions that are irreconcilably inconsistent; second, judicial estoppel is unwarranted unless the party changed his or her position "in bad faith--i.e., with intent to play fast and loose with the court"; and finally, Courts may not employ judicial estoppel unless it is tailored to address the harm identified and no lesser sanction would adequately remedy the damage done by the litigant's misconduct. *Id.*

The Debtors' position that GRM alone employed Mr. Ferguson (and, therefore, presumably all other employees, officers and directors who received their paychecks with GRM's name on top) is irreconcilably inconsistent with the Debtors' prior position that they operated as a single entity and with the evidence cited above that GRLP not only funded but controlled the Debtors' payroll. For example, in the Memorandum in Support of Confirmation submitted by the Debtors [Ex. 16][13], the Debtors argued to this Court that substantive consolidation is necessary because of the close-knit operations of the Debtors, including, *inter alia,* the fact that (i)the Debtors issued only consolidated financial statements and tax returns, (ii) the Debtors maintain a

---

[13] *Memorandum in Support of Confirmation of the Debtors' First Amended Joint Plan of Reorganization (Corrected) Under Chapter 11 of the Bankruptcy Code* [D.I. 1579].

- 23 -

consolidated cash-management system, consolidated risk management, insurance, payroll and benefits system, (iii) that the Debtors have overlapping officers and directors; (iv) *that overhead for the "consolidated entity" is booked and paid by GRLP without allocation to each entity*, and (v) that the Debtors' facility with Bank of America was a joint and several obligation of all the Debtors. *See* Memorandum, Ex. 16 at 40-41, ¶ 96, A388-A389. Moreover, in the "Confirmation Order",[14] the Court found explicitly that "[b]ased on the Martin Declaration, the Court finds that there is a **substantial identity and inseparable relationship between the Debtors** and that the benefits of consolidation outweigh any harm or prejudice to creditors." Confirmation Order, Ex. 17 at 14, ¶ 23, A403 [emphasis added]. Paragraph 83 of the Martin Declaration in support of the plan [Ex. 19]  recites that substantive consolidation is justified by a set of factors identical to those cited in the Memorandum, above [Ex. 19 at 30-32, A474-A476].

In contrast, the position the Debtors have taken before this Court in response to Mr. Ferguson's Set Off Motion has been to claim that the Debtors were not substantially identical, but were so separate that no mutuality of obligation can exist between them. The Debtors' change of position on the issue of the operation of their business rises to the level of bad faith meriting judicial estoppel. As outlined by the Third Circuit Court in *Bulger*, an inconsistency is in bad faith where the party in question behaves in a "culpable" manner, using  the inconsistency intentionally to obtain unfair advantage, and where that culpable behavior  involves representations to the Court. 243 F.3d at 781. Here, the Debtors are arguing an inconsistency for the sole purpose of trying to save money.

---

[14] *Findings of Fact, Conclusions of Law, and Order Under Section 1129 of the Bankruptcy Code and Rule 3020 of the Bankruptcy Rules Confirming Debtors' First Amended Joint Plan of Reorganization (Corrected) Under Chapter 11 of the Bankruptcy Code, Dated March 29, 2005* [D.I. 1598].

Based on the statements in the aforementioned Memorandum and the Martin Declaration that the Debtors constituted a single entity with shared management, the Debtors obtained the extraordinary relief of substantive consolidation. Confirmation Order, Ex. 17 at 14, ¶ 23, A403. For purposes of the Objection and the Hearing, however, the concept of a unitary entity of all the Debtors was discarded because it would permit Mr. Ferguson to offset the entire amount of a general unsecured claim (worth mere pennies-on-the-dollar) against a 'hundred-cent-dollar' account receivable. In an effort to advance this inconsistency, they filed an interrogatory response to Mr. Ferguson's discovery stating that their first-day motion to permit the continued use of their existing bank accounts was erroneous where it indicated that their payroll account was in the name of Garden Ridge, L.P. [Ex. 8, A046]. In fact, as discussed above, their own Monthly Operating Report, which attached the Debtors' actual bank statements from Bank of America, confirms the payroll account was a Garden Ridge, L.P. account [*See* Ex. 9].

Under the circumstances, judicial estoppel is an appropriate remedy to prevent the Debtors profiting from their attempt to take deliberately inconsistent positions before the Court. By forcing Mr. Ferguson to litigate the lack of mutuality issue in the face of (a) their own documentation submitted in the Monthly Operating Reports, (b) their own strenuous insistence before this court that they are a "consolidated entity", (c) the plain statements in the Martin Declaration, and (d) the evidence that GRLP in fact controlled both the source and disbursement of Mr. Ferguson's salary, the Debtors have forced the Court to expend its limit resources of time and attention considering arguments that should never have been made.

## V.    <u>CONCLUSION</u>

For the reasons given above, Mr. Ferguson respectfully submits that he has (a) met his

burden to establish grounds for relief from stay for cause by a preponderance of the evidence and

(b) established that setoff is proper under the common law and pursuant to 11 U.S.C. § 553, and

that therefore the Motion should be granted.

Dated: November 30, 2005
Wilmington, Delaware

**BUCHANAN INGERSOLL PC**

/s/    *William D. Sullivan*
William D. Sullivan (#2820)
The Nemours Building
1007 N. Orange Street, Suite 1110
Wilmington, DE  19801
Tel:  (302) 428-5500
Fax:  (302) 428-3996

Counsel for Movant
Daniel Ferguson