YOUNG CONAWAY STARGATT & TAYLOR, LLP

BEN T. CASTLE
SHELDON N. SANDLER
RICHARD A. LEVINE
RICHARD A. ZAPPA
FREDERICK W. IOBST
RICHARD H. MORSE
DAVID C. MCBRIDE
JOSEPH M. NICHOLSON
CRAIG A. KARSNITZ
BARRY M. WILLOUGHBY
JOSY W. INGERSOLL
ANTHONY G. FLYNN
JEROME K. GROSSMAN
EUGENE A. DIPRINZIO
JAMES L. PATTON, JR.
ROBERT L. THOMAS
WILLIAM D. JOHNSTON
TIMOTHY J. SNYDER
BRUCE L. SILVERSTEIN
WILLIAM W. BOWSER
LARRY J. TARABICOS
RICHARD A. DILIBERTO, JR.
MELANIE K. SHARP
CASSANDRA F. ROBERTS
RICHARD J.A. POPPER
TERESA A. CHEEK
NEILLI MULLEN WALSH
JANET Z. CHARLTON
ROBERT S. BRADY
JOEL A. WAITE
BRENT C. SHAFFER
DANIEL P. JOHNSON
CRAIG D. GREAR
TIMOTHY JAY HOUSEAL
MARTIN S. LESSNER
PAULINE K. MORGAN
C. BARR FLINN
NATALIE WOLF
LISA B. GOODMAN
JOHN W. SHAW
JAMES P. HUGHES, JR.
EDWIN J. HARRON
MICHAEL R. NESTOR
MAUREEN D. LUKE
ROLIN P. BISSELL
SCOTT A. HOLT
JOHN T. DORSEY
M. BLAKE CLEARY
CHRISTIAN DOUGLAS WRIGHT
DANIELLE GIBBS
JOHN J. PASCHETTO
NORMAN M. POWELL
ELENA C. NORMAN

THE BRANDYWINE BUILDING
1000 WEST STREET, 17TH FLOOR
WILMINGTON, DELAWARE 19801

P.O. BOX 391
WILMINGTON, DELAWARE 19899-0391

(302) 571-6600
(800) 253-2234 (DE ONLY)
FAX: (302) 571-1253

110 WEST PINE STREET
P.O. BOX 594
GEORGETOWN, DELAWARE 19947
(302) 856-3571
(800) 255-2234 (DE ONLY)
FAX: (302) 856-9338

WWW.YOUNGCONAWAY.COM

DIRECT DIAL: 302-571-6705
DIRECT FAX: 302-576-3280
jbarry@ycst.com

JOSEPH M. BARRY
SEAN M. BEACH
SANJAY BHATNAGAR
DONALD J. BOWMAN, JR.
JEFFREY T. CASTELLANO
KARA HAMMOND COYLE
KRISTEN SALVATORE DEPALMA
MARGARET M. DIBIANCA
MARY F. DUGAN
ERIN EDWARDS
KENNETH J. ENOS
IAN S. FREDERICKS
JAMES J. GALLAGHER
SEAN T. GREECHER
STEPHANIE L. HANSEN
DAWN M. JONES
KAREN E. KELLER
JENNIFER M. KINKUS
EDWARD J. KOSMOWSKI
JOHN C. KUFFEL
KAREN LANTZ
TIMOTHY E. LENGKEEK
ANDREW A. LUNDGREN

SPECIAL COUNSEL
JOHN D. MCLAUGHLIN, JR.
KAREN L. PASCALE
PATRICIA A. WIDDOSS

MATTHEW B. LUNN
JOSEPH A. MALFITANO
ADRIA B. MARTINELLI
MICHAEL W. MCDERMOTT
TAMMY L. MERCER
MARIBETH L. MINELLA
EDMON L. MORTON
D. FON MUTTAMARA-WALKER
JENNIFER R. NOEL
ADAM W. POFF
SETH J. REIDENBERG
SARA BETH A. REYBURN
CHERYL A. SANTANIELLO (NJ & PA ONLY)
MICHELE SHERRETTA
MONTÉ T. SQUIRE
MICHAEL P. STAFFORD
CHAD S.C. STOVER
JOHN E. TRACEY
TRAVIS N. TURNER
MARGARET B. WHITEMAN
SHARON M. ZIEG

SENIOR COUNSEL
CURTIS J. CROWTHER

OF COUNSEL
BRUCE M. STARGATT
STUART B. YOUNG
EDWARD B. MAXWELL, 2ND

April 26, 2007

**VIA HAND DELIVERY**

The Honorable Gregory M. Sleet
United States District Court
for the District of Delaware
J. Caleb Boggs Federal Building
844 King Street
Wilmington, DE 19801

Re: *Garden Ridge, L.P. v. Daniel Ferguson,* Case No. 06-CV-00516 (GMS) (D. Del. 2006).

Dear Judge Sleet:

This Firm represents the plaintiff in the above-referenced civil action (the "Civil Action"). Pursuant to D. Del. LR 7.1.2(c), I write to call to the Court's attention the recent decision of the United States Supreme Court in *Travelers Casualty and Surety Company of America v. Pacific Gas and Electric Company*, 127 S. Ct. 1199 (March 20, 2007) ("*Travelers*"), a copy of which is enclosed herewith. In *Travelers*, the Court struck down the Ninth Circuit's "*Fobian* Rule," which held that "where the litigated issues involve not basic contract enforcement questions, but issues peculiar to federal bankruptcy law, attorney's fees will not be awarded absent bad faith or harassment by the losing party." *Fobian v. West Farm Credit Bank (In re Fobian)*, 951 F.2d 1149, 1153 (9th Cir. 1991). The Supreme Court in *Travelers* found that this rule has "no support in the Bankruptcy Code..." (*Travelers*, 127 S. Ct. at 1205) and "cannot stand." *Id.* at 1206.

Currently *sub judice* is the plaintiff's motion for partial summary judgment in the Civil Action (Docket No. 8 & 9) wherein the plaintiff seeks summary judgment with respect to, among other things, its claim for attorneys' fees for litigating issues before the United States Bankruptcy Court for the District of Delaware. In response thereto, the defendant has argued, in part, that "[a]bsent bad faith or harassment, attorneys' fees are not available for the litigation of federal bankruptcy issues under a contract which provides for attorneys' fees for enforcement of the contract." *Defendant's Answering Brief in Opposition to Plaintiff's Motion for Partial Summary Judgment*, Docket No. 11, at p. 12. Although the defendant does not cite the *Fobian* Rule, his argument in this regard is in reliance upon the general statement of law that is the *Fobian* Rule, which was struck down in *Travelers.*

As always, counsel are available should Your Honor have any questions or comments concerning the foregoing.

Respectfully submitted,

Joseph M. Barry

Enclosure

cc: Clerk of the United States District Court
Pauline K. Morgan, Esquire
John T. Dorsey, Esquire
William D. Sullivan, Esquire

LEXSEE 127 S CT 1199

Caution
As of: Apr 26, 2007

**TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, PETITIONER v. PACIFIC GAS AND ELECTRIC COMPANY**

**No. 05-1429.**

**SUPREME COURT OF THE UNITED STATES**

***127 S. Ct. 1199; 167 L. Ed. 2d 178; 2007 U.S. LEXIS 3566; 75 U.S.L.W. 4131; Bankr. L. Rep. (CCH) P80,880; 47 Bankr. Ct. Dec. 265***

**January 16, 2007, Argued**
**March 20, 2007, Decided**

**NOTICE:** **[***1]** The LEXIS pagination of this document is subject to change pending release of the final published version.

**PRIOR HISTORY:** ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT. *Travelers Cas. & Sur. Co. v. Pac. Gas & Elec. Co., 167 Fed. Appx. 593, 2006 U.S. App. LEXIS 2944 (9th Cir. Cal., 2006)*

**DISPOSITION:** Vacated and remanded.

Case in Brief **( $ )**

**SYLLABUS:** After respondent (PG&E) filed for Chapter 11 bankruptcy, petitioner (Travelers), which had previously issued a surety bond to guarantee PG&E's payment of state workers' compensation benefits, asserted a claim in the bankruptcy action to protect itself should PG&E default on the benefits. With the Bankruptcy Court's approval, PG&E agreed to insert language into its reorganization plan and disclosure statement to protect Travelers in case of such a default. Additional litigation over the negotiated language nevertheless ensued and was ultimately resolved by a court-approved stipulation stating, *inter alia,* that Travelers **[***2]** could assert a general unsecured claim for attorney's fees, which were authorized in the parties' original indemnity agreements. When Travelers filed an amended claim for such fees, PG&E objected based on the rule the Ninth Circuit adopted in its prior *Fobian* decision that where the litigated issues involve not basic contract enforcement questions, but issues peculiar to federal bankruptcy law, attorney's fees generally will not be awarded. The Bankruptcy Court rejected Travelers' claim on that basis, and the District Court and the Ninth Circuit affirmed.

*Held:*

1. Federal bankruptcy law does not disallow contract-based claims for attorney's fees based solely on the fact that the fees were incurred litigating bankruptcy law issues. Because the *Fobian* rule finds no support in federal bankruptcy law, the Ninth Circuit erred in disallowing Travelers' claim. Pp. 4-12.

(a) The American rule that "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser," *Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 247, 95 S. Ct. 1612, 44 L. Ed. 2d 141*, may be overcome by, *inter alia,* an "enforceable contract" allocating such **[***3]** fees, *Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 717, 87 S. Ct. 1404, 18 L. Ed. 2d 475*. A contract allocating attorney's fees that is enforceable under substantive, nonbankruptcy law is allowable in bankruptcy except where the Bankruptcy Code provides otherwise. Cf. *Security Mortgage Co. v. Powers, 278 U.S. 149, 154, 49 S. Ct. 84, 73 L. Ed. 236*. The Code does not do so here. Pp. 4-5.

(b) Under the Bankruptcy Code, the bankruptcy court "shall allow" a creditor's claim "except to the extent that" the claim implicates any of nine enumerated exceptions.

*11 U.S.C. § 502(b)*. Because Travelers' attorney's fees claim has nothing to do with the exceptions set forth in *§§ 502(b)(2)-(9)*, it must be allowed unless it is unenforceable under *§ 502(b)(1)*, which disallows any claim that is "unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." Pp. 5-6.

(c) *Section 502(b)(1)* is most naturally understood to provide that, with limited exceptions, any defense to a claim that is available outside of the bankruptcy context is also available in bankruptcy. This reading **[***4]** is consistent not only with the plain statutory text, but also with the settled principle that "creditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code." *Raleigh v. Illinois Dep't of Revenue, 530 U.S. 15, 20, 120 S. Ct. 1951, 147 L. Ed. 2d 13*. That principle requires bankruptcy courts to consult state law in determining the validity of most claims. See *ibid.* Thus, when the Code uses the word "claim" -- *i.e.,* a "right to payment," *§ 101(5)(A)* -- it is usually referring to a right to payment recognized under state law, "unless some federal interest requires a different result," *Butner v. United States, 440 U.S. 48, 55, 99 S. Ct. 914, 59 L. Ed. 2d 136*. Pp. 6-7.

(d) The *Fobian* rule finds no support in *§ 502* or elsewhere in federal bankruptcy law. The *Fobian* court did not identify any Code provision as presenting such support, but instead cited three of its own prior decisions, none of which identified any basis for disallowing a contractual claim for attorney's fees. Nor did the court have occasion to do so; in each of those cases, the attorney's **[***5]** fees claim failed as a matter of state law. The absence of such textual support is fatal for the *Fobian* rule. See *FCC v. NextWave Personal Communications Inc., 537 U.S. 293, 302, 123 S. Ct. 832, 154 L. Ed. 2d 863*. In light of *§ 502(b)(1)*'s broad, permissive scope, and the Court's prior recognition that "the character of [a contractual] obligation to pay attorney's fees presents no obstacle to enforcing it in bankruptcy," it necessarily follows that the *Fobian* rule cannot stand. *Security Mortgage, supra, at 154, 49 S. Ct. 84, 73 L. Ed. 236*. Pp. 7-10.

2. The Court expresses no opinion as to PG&E's arguments that unsecured claims for contractual attorney's fees, such as Travelers', are categorically disallowed by *§ 506(b)*, which expressly authorizes such fees "to the extent that an allowed secured claim is secured by property [whose] value [exceeds] the amount of such claim," and that such disallowance is confirmed by the Bankruptcy Code's structure and purpose, as examined against the backdrop of pre-Code bankruptcy law. The Court ordinarily does not consider arguments, such as these, that were neither raised nor addressed below, *Cooper Industries, Inc. v. Aviall Services, Inc., 543 U.S. 157, 168-169, 125 S. Ct. 577, 160 L. Ed. 2d 548,* **[***6]** and PG&E has not identified any circumstances warranting an exception to that rule here. PG&E's insistence that its arguments are "fairly included" within the question presented in the certiorari petition is not persuasive. Pp. 10-12.

*167 Fed. Appx. 593*, vacated and remanded.

**COUNSEL: G. Eric Brunstad, Jr.**, argued the cause for petitioner.
**E. Joshua Rosenkranz** argued the cause for respondent.

**JUDGES:** ALITO, J., delivered the opinion for a unanimous Court.

**OPINION BY:** ALITO

**OPINION:**

**[*1202]** **[**183]** JUSTICE ALITO delivered the opinion of the Court.

We are asked to consider whether federal bankruptcy law precludes an unsecured creditor from recovering attorney's fees authorized by a prepetition contract and incurred in postpetition litigation. The Court of Appeals for the Ninth Circuit held, based on a rule previously adopted by that court, that such fees are categorically prohibited -- even where the contractual allocation of attorney's fees would be enforceable under applicable nonbankruptcy law -- to the extent the litigation involves issues of federal bankruptcy law. Because that rule finds no support in the Bankruptcy Code, we vacate and remand.

I

Respondent Pacific Gas and Electric Company (PG&E) filed a voluntary Chapter 11 bankruptcy petition in April 2001, *11 U.S.C. § 1101 et seq.*, **[***7]** and continued thereafter to operate its business as a "debtor in possession." *§§ 1107(a), 1108*. The bankruptcy filing caught the attention of petitioner Travelers Casualty & Surety Company (Travelers), which had previously issued a $ 100 million surety bond on PG&E's behalf to the California Department of Industrial Relations, guaranteeing PG&E's payment of state workers' compensation benefits to injured employees. n1 In connection with the bond, PG&E executed a series of indemnity agreements in favor of Travelers. The **[**184]** indemnity agreements provide that PG&E will be responsible for any loss Travelers might incur in connection with the bonds, including any attorney's fees incurred in pursuing,

protecting, or litigating Travelers' rights in connection with those bonds.

n1 California law required PG&E to provide workers' compensation benefits for its employees by either (1) purchasing workers' compensation insurance from a licensed provider of such insurance or (2) adopting a plan, with the State's approval, to self-insure. PG&E chose the latter option, and was therefore required to post security with the State to ensure ongoing payment of mandatory workers' compensation benefits. See *Cal. Lab. Code Ann. §§ 3700*, *3701* (West 2003). Travelers posted the required security by issuing a bond on PG&E's behalf. The bond makes Travelers liable, up to $ 100 million, for workers' compensation benefits in the event of a default by PG&E.

**[***8]**

Although no default occurred, Travelers asserted a claim in the bankruptcy action to protect itself in case PG&E defaulted on its workers' compensation benefits at some point in the future, requiring Travelers to make payments under its bond. In response to Travelers' claim, and with the knowledge and approval of the Bankruptcy Court, PG&E agreed to insert language into its reorganization plan and disclosure statement to protect Travelers' right to indemnity and subrogation in the event of a default by PG&E.

Travelers claims, however, that PG&E then unilaterally altered the negotiated language in a way that substantially diminished the protection it had been seeking. According to Travelers, that development resulted in additional litigation, but Travelers and PG&E ultimately resolved the dispute by entering into a stipulation that was later approved by the Bankruptcy Court. In addition to accommodating Travelers' substantive concerns, the stipulation stated that Travelers "may assert its **[*1203]** claim for attorneys' fees under the indemnity agreements" (subject to PG&E's right to object) as a general unsecured claim against PG&E. Brief for Petitioner 17.

Travelers subsequently filed an **[***9]** amended proof of claim seeking to recover the attorney's fees it incurred in connection with PG&E's bankruptcy proceedings. PG&E objected, arguing that Travelers could not recover attorney's fees incurred while litigating issues of bankruptcy law.

The Bankruptcy Court agreed and rejected Travelers' claim on that basis. App. to Pet. for Cert. 23a-25a. Travelers appealed that ruling to the District Court. The District Court affirmed, relying on *In re Fobian, 951 F.2d 1149 (CA9 1991)*, which held that "where the litigated issues involve not basic contract enforcement questions, but issues peculiar to federal bankruptcy law, attorney's fees will not be awarded absent bad faith or harassment by the losing party," *id., at 1153*. See App. to Pet. for Cert. 10a, 17a.

Travelers appealed again, and the United States Court of Appeals for the Ninth Circuit affirmed. *167 Fed. Appx. 593 (2006)*. The panel acknowledged that, in at least some circumstances, a "'prevailing party in a bankruptcy proceeding may be entitled to an award of attorney fees in accordance with applicable state law . . . .'" *Id., at 594* (quoting *In re Baroff, 105 F.3d 439, 441 (CA9 1997))*. **[***10]** The panel nevertheless rejected Travelers' claim based on the *Fobian* rule, which it cited for the proposition that "attorney fees are not recoverable in bankruptcy for litigating issues 'peculiar to federal bankruptcy law.'" *167 Fed. Appx., at 594* (quoting *Fobian, supra, at 1153*). The panel explained that, because the fees claimed by Travelers were incurred litigating issues that were "governed entirely by federal bankruptcy law," Travelers' claim necessarily failed. n2 *167 Fed. Appx., at 594*.

n2 The Court of Appeals incorporated by reference the reasoning employed in *In re DeRoche, 434 F.3d 1188 (CA9 2006)*, which was decided by the same panel that decided this case. *167 Fed. Appx., at 593*. Although the *DeRoche* opinion is longer than its counterpart in this case, it adds very little to the panel's explanation of the *Fobian* rule. See *DeRoche, supra, at 1190-1192*.

Travelers sought review in this **[**185]** Court, noting a conflict **[***11]** among the Courts of Appeals regarding the validity of the *Fobian* rule. Compare *Fobian, supra, at 1153*, with *In re Shangra-La, Inc., 167 F.3d 843, 848-849 (CA4 1999)*. We granted certiorari to resolve that conflict, *549 U.S. ___, 127 S. Ct. 377, 166 L. Ed. 2d 265 (2006)*.

II

Under the American Rule, "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 247, 95 S. Ct. 1612, 44 L. Ed. 2d 141 (1975)*; see *Hauenstein v. Lynham, 100 U.S. 483, 490-491, 25 L. Ed. 628 (1880)*; *Arcambel v. Wiseman, 3 U.S. 306, 3 Dallas 306, 1 L. Ed. 613 (1796)*. This default rule can, of course, be overcome by statute. *Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 717, 87 S. Ct. 1404, 18 L. Ed. 2d 475 (1967)*. It can also be overcome by an "enforceable contract" allocating attorney's fees. *Ibid.*

In a case governed by the Bankruptcy Act of 1898, we observed that "the character of [a contractual] obligation to pay attorney's fees presents no obstacle to enforcing it in bankruptcy, either as a provable claim or by way of a lien upon specific property." *Security Mortgage Co. v. Powers, 278 U.S. 149, 154, 49 S. Ct. 84, 73 L. Ed. 236 (1928).* **[***12]** Similarly, under the terms of the current Bankruptcy Code, it **[*1204]** remains true that an otherwise enforceable contract allocating attorney's fees (*i.e.*, one that is enforceable under substantive, nonbankruptcy law) is allowable in bankruptcy except where the Bankruptcy Code provides otherwise. See 4 *Collier on Bankruptcy P 506.04[3][a]*, p. 506-118 (rev. 15th ed. 2006) (hereinafter Collier).

This case requires us to consider whether the Bankruptcy Code disallows contract-based claims for attorney's fees based solely on the fact that the fees at issue were incurred litigating issues of bankruptcy law. We conclude that it does not.

A

When a debtor declares bankruptcy, each of its creditors is entitled to file a proof of claim -- *i.e.* , a document providing proof of a "right to payment," *11 U.S.C. § 101(5)(A)* -- against the debtor's estate. Once a proof of claim has been filed, the court must determine whether the claim is "allowed" under *§ 502(a) of the Bankruptcy Code*: "A claim or interest, proof of which is filed under *section 501* . . . is deemed allowed, unless a party in interest . . . objects."

But even where a party in interest objects, the court **[***13]** "shall allow" the claim "except to the extent that" the claim implicates any of the nine exceptions enumerated in *§ 502(b). Ibid.* Those exceptions apply where the claim at issue is "unenforceable against the debtor . . . under any agreement or applicable law," *§ 502(b)(1)*; "is for unmatured interest," *§ 502(b)(2)*; "is for [property tax that] exceeds the value of the [estate's] interest" in the property, *§ 502(b)(3)*; "is for services of an insider or attorney of the debtor" and "exceeds the reasonable value of such services," *§ 502(b)(4)*; is for unmatured debt on certain alimony and child support obligations, *§ 502(b)(5)*; **[**186]** is for certain "damages resulting from the termination" of a lease or employment contract, *§§ 502(b)(6)* and *(7)*; "results from a reduction, due to late payment, in the amount of . . . credit available to the debtor in connection with an employment tax on wages, salaries, or commissions earned from the debtor," *§ 502(b)(8)*; or was brought to the court's attention through an untimely proof of claim, *§ 502(b)(9).*

Travelers' claim for attorney's fees has nothing to do with property tax, child support or alimony, services provided by an attorney of the **[***14]** debtor, damages resulting from the termination of a lease or employment contract, or the late payment of any employment tax. See *§§ 502(b)(2)-(8)*. Nor does it appear that the proof of claim was untimely. See *§ 502(b)(9)*. Thus, Travelers' claim must be allowed under *§ 502(b)* unless it is unenforceable within the meaning of *§ 502(b)(1)*.

B

*Section 502(b)(1)* disallows any claim that is "unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." This provision is most naturally understood to provide that, with limited exceptions, any defense to a claim that is available outside of the bankruptcy context is also available in bankruptcy. See 4 *Collier P 502.03[2][b]*, at 502-22 (explaining that *§ 502(b)(1)* is generally understood to "make available to the trustee any defense" available to the debtor "under applicable nonbankruptcy law" -- *i.e.*, any defense that the debtor "could have interposed, absent bankruptcy, in a suit on the [same substantive] claim by the creditor").

This reading of *§ 502(b)(1)* is consistent not only with the plain statutory **[***15]** text, but also with the settled principle that "creditors' **[*1205]** entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code." *Raleigh v. Illinois Dep't of Revenue, 530 U.S. 15, 20, 120 S. Ct. 1951, 147 L. Ed. 2d 13 (2000).* That principle requires bankruptcy courts to consult state law in determining the validity of most claims. See *ibid.*

Indeed, we have long recognized that the "'basic federal rule' in bankruptcy is that state law governs the substance of claims, Congress having 'generally left the determination of property rights in the assets of a bankrupt's estate to state law.'" *Ibid.* (quoting *Butner v. United States, 440 U.S. 48, 57, 54, 99 S. Ct. 914, 59 L. Ed. 2d 136 (1979)*; citation omitted). Accordingly, when the Bankruptcy Code uses the word "claim" -- which the Code itself defines as a "right to payment," *11 U.S.C. § 101(5)(A)* -- it is usually referring to a right to payment recognized under state law. As we stated in *Butner*, "property interests are created and defined by state law," and "unless some federal interest requires a different **[***16]** result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *440 U.S., at 55, 99 S. Ct. 914, 59 L. Ed. 2d 136*; accord, *Vanston Bondholders Protective Comm. v. Green, 329 U.S. 156, 161, 67 S. Ct. 237, 91 L. Ed. 162 (1946)* ("What claims of creditors are valid and subsisting obligations against the bankrupt at the time a **[**187]** petition in bankruptcy is filed is a question which, in the

absence of overruling federal law, is to be determined by reference to state law").

C

In rejecting Travelers' claim for contractual attorney's fees, the Court of Appeals did not conclude that the claim was "unenforceable" under *§ 502(b)(1)* as a matter of applicable nonbankruptcy law. Nor did it conclude that Travelers' claim was rendered unenforceable by any provision of the Bankruptcy Code. To the contrary, the court acknowledged that, in at least some circumstances, a "'prevailing party in a bankruptcy proceeding may be entitled to an award of attorney fees in accordance with applicable state law . . . .'" *167 Fed. Appx., at 594* (quoting *Baroff, 105 F.3d at 441*).

The court nevertheless rejected Travelers' claim **[***17]** based solely on a rule of that court's own creation -- the so-called *Fobian* rule -- which dictates that "attorney fees are not recoverable in bankruptcy for litigating issues 'peculiar to federal bankruptcy law.'" *167 Fed. Appx., at 594* (quoting *Fobian, 951 F.2d at 1153*). The court explained that, because the fees claimed by Travelers were incurred litigating issues that were "governed entirely by federal bankruptcy law," *167 Fed. Appx., at 594*, Travelers' claim necessarily failed.

The *Fobian* rule finds no support in the Bankruptcy Code, either in *§ 502* or elsewhere. In *Fobian*, the court did not identify any provision of the Bankruptcy Code as providing support for the new rule. See *951 F.2d at 1153*. Instead, the court cited three of its own prior decisions, *In re Johnson, 756 F.2d 738 (1985)*; *In re Coast Trading Co., 744 F.2d 686 (1984)*; and *In re Fulwiler, 624 F.2d 908 (1980) (per curium)*. Significantly, in none of those cases did the court identify any basis for disallowing a contractual claim for attorney's fees incurred litigating issues of federal bankruptcy **[***18]** law. Nor did the court have occasion to do so; in each of those cases, the claim for attorney's fees failed as a matter of state law. See *Johnson, supra, at 741-742*; *Coast Trading, supra, at 693*; *Fulwiler, supra, at 910*. n3

N3 In *Johnson*, the debtor sought attorney's fees after the creditor unsuccessfully requested relief from the automatic stay under *11 U.S.C. § 362(d)(1)*. The debtor acknowledged that the contract between the parties entitled only the creditor to attorney's fees, but the debtor claimed that a California statute extended that entitlement to both parties. The court rejected that argument, noting that the statute applied only in the context of an "'action on a contract,'" and concluding that a request for relief from an automatic stay could not be considered an action on a contract. *756 F.2d at 741-742*. Both *Coast Trading* and *Fulwiler* involved claims for attorney's fees based on an Oregon statute similar to the statute at issue in *Johnson;* the court found the statute inapplicable in both cases. *Coast Trading, 744 F.2d at 693*; *Fulwiler, 624 F.2d at 909-910*.

**[***19]**

**[*1206]** The absence of textual support is fatal for the *Fobian* rule. Consistent with our prior statements regarding creditors' entitlements in bankruptcy, see, *e.g.*, *Raleigh, 530 U.S., at 20, 120 S. Ct. 1951, 147 L. Ed. 2d 13*, we generally presume that claims enforceable under applicable state law will be allowed in bankruptcy unless they are expressly disallowed. See *11 U.S.C. § 502(b)*. Neither the court below nor PG&E has offered any reason why the fact that the attorney's fees in this case were incurred litigating issues of federal bankruptcy law overcomes that presumption.

*Section 502(b)(4)* is instructive on this point. That provision expressly disallows claims for a particular category of attorney's fees -- those "for **[**188]** services of an . . . attorney of the debtor," to the extent the claimed fees "exceed the reasonable value of such services." The existence of that provision suggests that, in its absence, a claim for such fees would be allowed in bankruptcy to the extent enforceable under state law. The absence of an analogous provision excluding the category of fees covered by the *Fobian* rule likewise suggests that the Code does not categorically disallow them. See 4 Collier P 506. **[***20]** 04[3][a], at 506-118 (concluding that *Fobian* "inverts the proper analysis" by allowing attorney's fees only where they are expressly authorized by the Bankruptcy Code, and explaining that "a claim for attorney's fees arising in the context of litigating bankruptcy issues must be allowed if valid under applicable state law").

Congress, of course, has the power to amend the Bankruptcy Code by adding a provision expressly disallowing claims for attorney's fees incurred by creditors in the litigation of bankruptcy issues. But because no such provision exists, the Bankruptcy Code provides no basis for disallowing Travelers' claim on the grounds stated by the Ninth Circuit.

As we explained in *FCC v. NextWave Personal Communications Inc., 537 U.S. 293, 123 S. Ct. 832, 154 L. Ed. 2d 863 (2003)*, "where Congress has intended to provide . . . exceptions to provisions of the Bankruptcy Code, it has done so clearly and expressly." *Id., at 302, 123 S. Ct. 832, 154 L. Ed. 2d 863*. Here, the Bankruptcy Code does not "clearly and expressly" compel courts to follow the *Fobian* rule; on the contrary, the Code says *nothing* about unsecured claims for contractual attorney's fees incurred while litigating issues of bankruptcy

**[***21]** law. In light of the broad, permissive scope of *§ 502(b)(1)*, and our prior recognition that "the character of [a contractual] obligation to pay attorney's fees presents no obstacle to enforcing it in bankruptcy," it necessarily follows that the *Fobian* rule cannot stand. *Security Mortgage, 278 U.S., at 154, 49 S. Ct. 84, 73 L. Ed. 236*; see *Cohen v. de la Cruz, 523 U.S. 213, 221, 118 S. Ct. 1212, 140 L. Ed. 2d 341 (1998)* ("We . . . 'will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure'" **[*1207]** (quoting *Pennsylvania Dep't of Pub. Welfare v. Davenport, 495 U.S. 552, 563, 110 S. Ct. 2126, 109 L. Ed. 2d 588 (1990)*)).

III

PG&E makes no effort to defend the *Fobian* rule. See Tr. of Oral Arg. 28 (conceding that PG&E does not defend the *Fobian* rule, and acknowledging that "the Fobian rule is wrong . . . as to the distinction that it draws between State law and Federal litigation"). Instead, PG&E argues that *§ 506(b)* categorically disallows unsecured claims for contractual attorney's fees and -- noting that Travelers' claim is unsecured -- asks us to affirm on that basis. *Section 506(b)* provides as follows:

> "To the extent that an allowed **[***22]** secured claim is secured by property the value of which . . . is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose." *11 U.S.C. A. § 506(b) (Supp. 2006)*.

According to PG&E, this provision authorizes claims for contractual attorney's **[**189]** fees to the extent the creditor is oversecured, but disallows such claims to the extent the creditor is either not oversecured or (like Travelers) completely unsecured. This reading of the Code, PG&E argues, "is not a matter of negative implication, but of explicit negation." Brief for Respondent 18. PG&E also argues that the structure and purpose of the Bankruptcy Code, examined against the backdrop of pre-Code bankruptcy law, confirm that Congress did not intend to allow unsecured creditors to recover attorney's fees. See *id.*, at 25-38.

PG&E did not raise these arguments below. Consequently, none of the lower courts had occasion to address them. Nor were these arguments presented in PG&E's brief in opposition to certiorari. PG&E nevertheless **[***23]** insists that we should address these arguments as though they were "fairly included" within the question presented in Travelers' petition for certiorari. See *id.*, at 41. That contention appears to be premised on the theory that "the Fobian rule reaches the correct conclusion in this case," but "doesn't go far enough in . . . preventing creditors from requiring other creditors to pay for their attorneys' fees." Tr. of Oral Arg. 25.

We are not persuaded. We granted certiorari to resolve a conflict among the lower courts regarding the *Fobian* rule, which is analytically distinct from, and fundamentally at odds with, PG&E's reading of *§ 506(b)*. n4

> n4 PG&E's new reading of the Code would prohibit *all* unsecured creditors from recovering contractual, postpetition attorney's fees in bankruptcy proceedings -- even if those fees were incurred while litigating issues of state law. See Brief for Respondent 17-19. The *Fobian* rule, by contrast, would allow such a recovery -- even by unsecured creditors -- so long as the litigation resulting in the claimed fees did not involve "issues peculiar to federal bankruptcy law." See *In re Fobian, 951 F.2d 1149, 1153 (CA9 1991)*.

**[***24]**

In any event, we ordinarily do not consider claims that were neither raised nor addressed below, *Cooper Industries, Inc. v. Aviall Services, Inc., 543 U.S. 157, 168-169, 125 S. Ct. 577, 160 L. Ed. 2d 548 (2004)*, and PG&E has failed to identify any circumstances that would warrant an exception to that rule in this case. We therefore will not consider these arguments. n5

> n5 For similar reasons, we will not address PG&E's argument that Travelers' claim should be denied based on the theory that the fees at issue were incurred in connection with activities that were not reasonably necessary to preserve Travelers' rights and, alternatively, were not authorized by Travelers' contract with PG&E. See Brief for Respondent 42-49. This argument was not addressed below, was not raised in PG&E's brief in opposition to certiorari, and bears no relation to the question presented. See this Court's Rule 14.1(a) ("Only the questions set out in the petition, or fairly included therein, will be considered by the Court").

Accordingly, we express **[***25]** no opinion with regard to whether, following the demise of **[*1208]** the *Fobian* rule, other principles of bankruptcy law might provide an independent basis for disallowing Travelers' claim for attorney's fees. We conclude only that the

Court of Appeals erred in disallowing that claim based on the fact that the fees at issue were incurred litigating issues of bankruptcy law.

* * *

The judgment of the United States Court of Appeals for the Ninth Circuit is therefore vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*